UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-00188-HYJ-RSK<br>Hon. Hala Y. Jarbou |
| Plaintiff, | |
| v. | **DEFENDANT MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, | |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

I.      THE PARTIES ................................................................................................... 1

II.     RELEVANT LIMITATIONS PERIOD............................................................. 2

III.    MR. SCHREIBER'S ALLEGATIONS ............................................................. 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.      THE COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT STATE A CLAIM FOR VIOLATION OF THE PPPA AGAINST MAYO THAT IS PLAUSIBLE ON ITS FACE ................................................................ 6

        A.     Mr. Schreiber Has Not Plausibly Alleged that Mayo Disclosed Protected Information ................................................................................. 6

        B.     Mr. Schreiber Has Not Plausibly Alleged that the Alleged Disclosures by Mayo Occurred During the Relevant Time Period ...................................... 9

        C.     Mr. Schreiber Has Not Plausibly Alleged the Disclosure of His Information ................................................................................................... 11

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Nashel v. New York Times Co.*,
   2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)............ 1, 6, 7, 8, 9, 10

*Krassick v. Archaeological Institute of America*,
   2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022)......................... 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007)................................................................................ 5, 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................ 5, 8

*League of United Latin Am. Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007) ........................................................................ 5

*Davis v. Hartford Life & Accident Ins. Co.*,
   980 F.3d 541 (6th Cir. 2020) ........................................................................ 6

*Lindke v. Tomlinson,*
   31 F.4th 487, 496 (6th Cir. 2022) ................................................................. 6

*Wheaton v. Apple Inc.*,
   C 19-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) .......................... 8

**Statutes**

Mich. Comp. Laws § 445.1711, *et seq*. (1989) ...................................... 2, 6, 9, 11

# INTRODUCTION

Plaintiff Jeffrey Schreiber's putative class action is one of several lawsuits filed by Plaintiff's counsel based on boilerplate allegations under Michigan's Preservation of Personal Privacy Act ("PPPA") to exploit a narrow extension of the statute of limitations created by COVID tolling orders. Weeks after Plaintiff filed this action, Judge Stephen J. Murphy, III of the Eastern District of Michigan dismissed a nearly identical Complaint for failure to plausibly allege a violation of the PPPA. *See Nashel v. New York Times Co.*, No. 2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022). Judge Murphy held that allegations based on third-party "data cards," conclusory statements, and large inferential leaps were not sufficient to sustain a claim under Rule 12. Because the Complaint in this case suffers from the same "gaping omissions"—and contains even less factual basis than the *Nashel* complaint—this Court should follow Judge Murphy's reasoning and dismiss Mr. Schreiber's Complaint.

# BACKGROUND

## I. THE PARTIES.

As alleged in the Complaint, Plaintiff Jeffrey Schreiber is a citizen of Michigan. (Dkt. 1, Compl. ¶ 10.)

Mayo Foundation for Medical Education and Research ("Mayo") is a Minnesota nonprofit corporation with its principal place of business in Rochester, Minnesota. (*Id.* ¶ 11.) The Complaint alleges that Mayo is the publisher of *Mayo Clinic Health Letter*. (*Id.*)

## II. RELEVANT LIMITATIONS PERIOD.

Mr. Schreiber brings this action under a since-amended version of the PPPA, which was in effect until July 31, 2016. (Compl. ¶ 1 n.1-2.) Under this version of the PPPA, a plaintiff may recover the greater of actual damages or $5,000 in statutory damages. Mich. Comp. Laws § 445.1715 (1989). After Mr. Schreiber's attorneys and others filed numerous putative class action lawsuits asserting statutory damages under the act, the Michigan Legislature amended the PPPA in 2016 to cure and clarify the statute. *See* 2016 Mich. Pub. Acts No. 92 (codified at Mich. Comp. Laws § 445.1711-.1715) (noting that the amendment is "curative and intended to clarify" the act). This amendment removed the $5,000 in statutory damages, and limited recovery to actual damages only. *Id.*; *see also* Mich. Comp. Laws § 445.1715(2). The amended version of the statute took effect on July 31, 2016. *See* 2016 Mich. Pub. Acts No. 92.

Mr. Schreiber alleges claims based exclusively on the pre-amendment version of the PPPA, during what he terms the "relevant pre-July 31, 2016 time period." (Compl. ¶ 1.) He also seeks to represent a class of "all Michigan residents who, at any point during the relevant pre-July 31, 2016 time period, had their Private Reading Information disclosed to third parties by [Mayo] without consent." (*Id.* ¶ 50.)

The "relevant pre-July 31, 2016 time period" is defined as the six-year statutory period for this action, plus the time period in which claims were tolled as a result of COVID Executive Orders, until July 31, 2016. (*Id.* ¶ 1 n.1-2.) Because July 30, 2016 is the last

day on which the pre-amendment version of the statute applied, the relevant time period is June 17, 2016 through July 30, 2016.[1] *See* 2016 Mich. Pub. Acts No. 92.

### III. MR. SCHREIBER'S ALLEGATIONS.

Mr. Schreiber's Complaint contains nearly identical allegations as the other Complaints filed by his counsel against other defendants on behalf of different individuals. In sweeping fashion, he alleges that Mayo "rented, exchanged, and/or otherwise disclosed detailed information" about his "Private Reading Information" to unidentified "data aggregators, data appenders, data cooperatives, and list brokers" without consent or notice, and those third parties then "disclosed his information to aggressive advertisers, political organizations, and non-profit companies" in violation of the PPPA. (Compl. ¶¶ 1, 2, 10.)

Mr. Schreiber alleges that there is "[d]ocumented evidence confirm[ing] these facts." (Compl. ¶ 2.) However, the only "documented evidence" he cites for this proposition in the entire 74-paragraph Complaint is Exhibit A, a single screenshot from a "list broker" named NextMark, Inc., allegedly "offer[ing] to provide renters access to the mailing list titled 'MAYO CLINIC HEALTH LETTER mailing list.'" (Compl. ¶ 2 and Ex. A.) While the screenshot is undated, it purports to offer for sale information regarding "active and recently expired U.S. subscribers" with "counts through 7/19/2022." (*Id.*) Mr. Schreiber then asserts—with no reference to "evidence" (documentary or otherwise) at

---

[1] Mayo recognizes that, in *Krassick v. Archaeological Institute of America*, No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022), this Court held that PPPA claims are subject to a six-year statute of limitations. Accordingly, Mayo does not move to dismiss the Complaint based on statute of limitations grounds. However, Mayo disputes whether the claim is timely and reserves the defense and all arguments that Plaintiff's claims are untimely should the matter proceed past the motion to dismiss stage.

all—that during the pre-July 31, 2016 time period, Mayo "publicly advertised" the "same or a substantially similar 'data card' as [Exhibit A] with the same or similar rates and advertised demographic and personal information about each U.S. based purchaser of a subscription." (*Id.*)

Exhibit A does not reflect the source of the information allegedly available, how NextMark obtained the information, or the individuals whose information is advertised.[2] Indeed, the Complaint does not allege any facts connecting the data allegedly advertised (by third parties or Mayo) to a sale or disclosure of data by Mayo. Yet based exclusively on Exhibit A and vague assertions regarding a "same or substantially similar 'data card,'" the Complaint makes the inferential leap that Mayo "was renting, selling, exchanging, and otherwise disclosing all of its customers' Personal Reading Information (including Plaintiff's and all Class members' Personal Reading Information) to third parties" during the relevant time period. (*Id.*)

With respect to the alleged sale of Mr. Schreiber's data, the Complaint is even more threadbare. The Complaint alleges that at some unidentified time prior to July 31, 2016, Mr. Schreiber was a subscriber to *Mayo Clinic Health Letter*. (*Id.* ¶ 10.) It does not allege when he was a subscriber, when he claims his data was sold by Mayo in violation of the statute, or who it was sold to. The only harm he alleges is that as a result of the alleged disclosures "during the relevant pre-July 31, 2016 time period, [he] saw a dramatic uptick

---

[2] It is not even clear whether Michigan residents' data is included.

of junk mail in his mailbox following his purchase of a subscription to *Mayo Clinic Health Letter* over the same time period." (*Id.* ¶ 3.)

## **LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("[F]actual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show <u>entitlement</u> to relief.") (emphasis in original).

A complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid

of further factual enhancement" does not suffice. *Id.* at 678 (citations and quotations omitted); *see also Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020) (noting that a court need not accept as true conclusory allegations, legal conclusions, or unwarranted factual inferences); *Lindke v. Tomlinson,* 31 F.4th 487, 496 (6th Cir. 2022) (affirming dismissal where complaint contained "allegations [that] are purely conclusory" and did not "factually describe the actions [the defendant] took" in violation of the law).

## ARGUMENT

I. **THE COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT STATE A CLAIM FOR VIOLATION OF THE PPPA AGAINST MAYO THAT IS PLAUSIBLE ON ITS FACE.**

Under the pre-amendment version of the PPPA applicable here:

> a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712 (1989).

To prevail on his claim, Mr. Schreiber must allege facts that, if proved, plausibly demonstrate that: (1) Mayo disclosed protected information; (2) during the relevant pre-July 31, 2016 time period; and (3) that identified Mr. Schreiber to the party receiving that information. *Id.* Because Mr. Schreiber has not plausibly alleged facts showing entitlement to relief based on these elements, the Complaint must be dismissed.

### A. Mr. Schreiber Has Not Plausibly Alleged that Mayo Disclosed Protected Information.

To sustain a claim under the PPPA, a plaintiff must establish that the named defendant engaged in the wrongful conduct. *Nashel*, 2022 WL 6775657, at *5. Here, the

only support Mr. Schreiber musters in his Complaint is a 2022 NextMark "data card" attached as Exhibit A, and vague assertions that the "same or a substantially similar" data card was publicly advertised by Mayo in 2016. However, as Judge Murphy explained in *Nashel*, such allegations do not sufficiently allege the central element of a PPPA claim—"that [Mayo] was the culpable actor." *See id.*

In *Nashel,* the plaintiff's Complaint[3] cited two screenshots of third-party list broker data cards (including a NextMark card), which "appeared to claim access to the private reading information of over a million active United States *The New York Times* subscribers." *Id.* at *5. But as Judge Murphy explained, the data cards suffer from a "gaping omission"—"nothing on the data cards explains how the list brokers received [the New York Times'] subscription list." *Id.* Therefore, the data cards failed to support the critical element of the plaintiff's case: that the New York Times violated the statute. *Id.* Judge Murphy rejected counsel's attempt to fill this gap by arguing that the data "necessarily originated" from the New York Times, holding that such a conclusion was a "large inferential leap" when the data card "only indirectly aimed blame at [the New York Times]." *Id.* Because the data card "failed to create a reasonable inference of [the New York Times'] culpability" and courts cannot "infer into existence the central element of a

---

[3] Plaintiffs in *Nashel* are represented by the same counsel as Mr. Schreiber.

PPPA claim," Judge Murphy rejected the data card as insufficient under Rule 12(b)(6).[4] *Id.*

Here—like in *Nashel*—Plaintiff relies on a nearly identical NextMark data card with the same "gaping omission": it does not identify the source of any information purportedly being made available by NextMark.[5] (*See* Compl. Ex. A.) Like in *Nashel*, Exhibit A makes no connection between the information advertised and any alleged conduct by Mayo. Moreover, Mr. Schreiber's allegation that Mayo "publicly advertised" the same or substantially similar "data card" during the relevant time period (*Id.* ¶ 2) does not cure this deficiency for two reasons. First, such an allegation is a pure legal conclusion, which need not be accepted as true. *See Iqbal*, 556 U.S. at 678; *Nashel*, 2022 WL 6775657, at *5. Second, and more importantly, such an allegation still fails to identify or allege the source

---

[4] Judge Murphy is not the only federal judge to conclude that Plaintiff's counsel's boilerplate allegations were not sufficient on a motion to dismiss. In *Wheaton v. Apple Inc.*, the Northern District of California dismissed a complaint citing the same type of "data card" because nothing established that the advertisement included names and addresses, or other personal identifying information provided by the defendant (Apple). *Wheaton v. Apple Inc.*, No. C 19-02883, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019).

[5] The *Nashel* Complaint alleged two other categories of information: (1) a privacy policy stating that the New York Times may exchange or rent name and mailing address and (2) a 2020 case study about Virginia Beach renting a New York Times subscriber list. *Id.* at *4-5. However, the Court held that these additional facts were likewise insufficient because they did not demonstrate that any information was plausibly disclosed by the defendant. *See, e.g., id.* at *5 (noting that the privacy policy "shows only that [the New York Times] might disclose information in the future, not that any information was plausibly disclosed"); *id.* (noting that allegations regarding the Virginia Beach case study "fail[] to clarify who was responsible for providing the subscriber list . . ."). Regardless, these additional categories of information are absent from the Complaint in this case.

of any information purportedly advertised, let alone that Mayo was the actual or ultimate source. As a result, Mr. Schreiber's allegations have the same fatal flaw as those in *Nashel*.

In short, Mr. Schreiber asks the Court to make the same improper "inferential leap" rejected by Judge Murphy in *Nashel*. For the same reasons, the Court should reject Mr. Schreiber's argument here.

### B. Mr. Schreiber Has Not Plausibly Alleged that the Alleged Disclosure by Mayo Occurred During the Relevant Time Period.

Even if Mr. Schreiber could connect any of the information alleged in the Complaint to conduct by Mayo, he has also failed to allege that such conduct occurred during the relevant time period. Mr. Schreiber concedes that the statute of limitations narrows his claim to the "relevant pre-July 31, 2016 time period"—a total of approximately six weeks in June and July of 2016. Therefore, if Mr. Schreiber cannot establish that Mayo disclosed his data to a third party during this window, he cannot sustain a claim. *See* Mich. Comp. Laws § 445.1712 (1989).

However, Mr. Schreiber does not sufficiently allege conduct by Mayo during the relevant time period. Again, the only "documented evidence" presented—the data card screenshot attached as Exhibit A—does not reference data or a sale in 2016. Rather, it purports to advertise data from 2022. (Compl. ¶ 2 and Ex. A.) As Judge Murphy explained in *Nashel*, alleged conduct from the 2020s is too far temporally removed to plausibly support claims based on alleged disclosures in 2016. 2022 WL 6775657, at *5 (holding that allegations regarding a 2020 case study purporting to relate to a sale of data by the

New York Times "misses the mark on timing"). Accordingly, Exhibit A is not sufficient to support Mr. Schreiber's allegation that Mayo engaged in prohibited conduct in 2016.

Nor is Mr. Schreiber's allegation—without any accompanying evidence—that the "same or a substantially similar" data card was advertised in 2016 sufficient to meet his pleading burden. (Compl. ¶ 2.) Indeed, Mr. Schreiber's attempt to use conclusory allegations to avoid this timing problem was already rejected by Judge Murphy in *Nashel*. In *Nashel*, the plaintiff and Mr. Schreiber's counsel had the reverse problem—instead of using a current data card, the Complaint contained a screenshot of old data cards from 2007 and 2008. 2022 WL 6775657, at *5. To connect this stale evidence to conduct in 2016, the Complaint alleged in a conclusory fashion that the New York Times continued to systematically engage in the same practices over the course of the next decade. *Id*. As Judge Murphy noted, such a "proposed cure for the timing issue thus relied on a legal-conclusion inference: that Defendants systematically violated the PPPA from 2007 onward." *Id.* Because such legal conclusions need not be presumed as true, Judge Murphy properly held that the outdated "data cards make the complaint's allegations merely <u>possible</u> rather than plausible" and were not sufficient to sustain a claim. *Id.*

Here, like in *Nashel*, Mr. Schreiber's conclusory assertions that the same or substantially same practices in 2022 also existed more than five years ago, in 2016, is a legal conclusion that the Court should not accept as true. As a result, Mr. Schreiber's allegations do not cross the line between possibility and plausibility, and the Complaint must be dismissed. *See Twombly*, 550 U.S. at 557.

### C. Mr. Schreiber Has Not Plausibly Alleged the Disclosure of His Information.

To sustain a claim under the PPPA, a plaintiff must also demonstrate that his or her own protected information was disclosed within the relevant time period. Mich. Comp. Laws § 445.1712 (1989). This requires allegations that Mr. Schreiber's data was actually disclosed during that window—allegations that are conspicuously absent from his Complaint.

As an initial matter, Mr. Schreiber has not alleged that his personal information was actually available through any data cards allegedly available during the relevant time period in 2016. Mr. Schreiber also has not made any factual allegations that his personal data was in fact disclosed as a result of the alleged data cards or through any other means. Indeed, an allegation that data was advertised as available for sale falls far short of an allegation that data about a specific individual was actually disclosed during the relevant time period.

Faced with the reality that he has no factual evidence of a disclosure, Mr. Schreiber attempts to buttress his claim by alleging that he saw a "dramatic uptick of junk mail in his mailbox following his purchase of a subscription to *Mayo Clinic Health Letter* over the same time period [pre-July 2016]." (Compl. ¶ 3.) This circumstantial allegation is not sufficient to establish that his data was disclosed during the relevant time period. It is important to remember the window of conduct at issue in this case is relatively narrow—a period of just six weeks. Because the Complaint does not allege that Mr. Schreiber's data was sold, when his data was allegedly sold, or who it was sold to or by, a vague "dramatic

uptick" of junk mail during the relevant time period is not evidence of any claim against Mayo.  Indeed, the Complaint does not plausibly explain how a sale of Mr. Schreiber's data at some unidentified point between June 17, 2016 through July 30, 2016 (the relevant time period) would have resulted in a "dramatic uptick" in junk mail from the entity or person to whom his information was allegedly sold in such a short window of time.

Simply put, Mr. Schreiber has no factual support for his allegation that his data was disclosed by Mayo during the relevant time period, let alone support that is sufficient to plausibly state a claim for relief.  Accordingly, the Complaint should be dismissed.

## CONCLUSION

For the reasons set forth above, Mayo respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety.

Dated:  December 13, 2022

By:/s/ *Christopher F. Allen*

**MCDONALD HOPKINS PLC**

Michael G. Latiff (P51263)
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
(248) 646-5070
mlatiff@mcdonaldhopkins.com

**MCDONALD HOPKINS LLC**

Christopher F. Allen
(Admitted USDC-MIWD 7/28/2022)
300 N. LaSalle, Suite 1400
Chicago, IL 60654
(312) 280-0111
callen@mcdonaldhopkins.com

**FREDRIKSON & BYRON, P.A.**

Gregory E. Karpenko (#0286473)
(*application for admission to be filed*)
Anupama D. Sreekanth (#0393417)
(*application for admission to be filed*)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402-1425
Telephone: 612.492.7000
Fax: 612.492.7077
gkarpenko@fredlaw.com
asreekanth@fredlaw.com

***Attorneys for Defendant***