UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

---

JEFFREY SCHREIBER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,

    Defendant.

Case No. 2:22-cv-00188-HYJ-RSK
Hon. Hala Y. Jarbou

**DEFENDANT MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

---

{11027855: }

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................... ii

INTRODUCTION ..................................................................................................1

ARGUMENT..........................................................................................................2

    I.      THE FIRST AMENDED COMPLAINT FAILS TO STATE A
           CLAIM AGAINST MAYO FOR VIOLATION OF THE PPPA...........2

           A.    *Nashel* was correctly decided and is not an outlier .....................2

           B.    Mr. Schreiber has failed to sufficiently allege a
                 violation of the PPPA....................................................................6

                 1.      Third-Party Data Cards from 2022 and 2006....................7

                 2.      HealthLetter.MayoClinic.Com Privacy Policy .................9

                 3.      RMI's Online Marketing................................................. 10

                 4.      "Dramatic Uptick of Junk Mail" .................................... 11

           C.    The Rule 12(b)(6) pleading standard requires factual
                 allegations that plausibly state a claim for relief rather
                 than speculation and conclusory assertions that permit
                 the court to infer only a possiblity of misconduct..................... 12

CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 3, 11, 12

*Associated Indem. Corp. v. Dow Chem. Co.*,
  248 F. Supp. 2d 629 (E.D. Mich. 2003) ............................................................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ......................................................................................... 3, 12

*Bishop v. Lucent Techs., Inc.*,
  520 F.3d 516 (6th Cir. 2008) ............................................................................ 13

*Boelter v. Advance Mag. Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) ............................................................... 4

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ............................................................... 4

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
  563 F. Supp. 3d 578 (W.D. La. 2021) ............................................................... 3

*Cain v. Redbox Automated Retail, LLC*,
  981 F. Supp. 2d 674 (E.D. Mich. 2013) ............................................................ 4

*City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*,
  963 F. Supp. 2d 1092 (E.D. Wash. 2013) ......................................................... 3

*Horton v. GameStop Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) ........................................................ 5, 6

*Moeller v. Am. Media Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017) ............................................................ 4

*Moreira v. Société Générale, S.A.*,
  573 F. Supp. 3d 921 (S.D.N.Y. 2021) ............................................................... 3

*Nashel v. New York Times Co.*,
  No. 2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ................. *passim*

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017)........................................................................... 4

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...................................................................................... 3

*U.S. v. Articles of Drug Consisting of 203 Paper Bags*,
    818 F.2d 569 (7th Cir. 1987) ....................................................................................... 5

*Wheaton v. Apple Inc.*,
    No. C 19-02883, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019)............................... 5, 6

## Other Authorities

Federal Rules of Civil Procedure Rule 12(b)(6)............................................ 1, 2, 11, 12, 13

## INTRODUCTION

Plaintiff Jeffrey Schreiber acknowledges that his claim under Michigan's Preservation of Personal Privacy Act ("PPPA") is limited to conduct that allegedly occurred during a six-week period between June 18, 2016 and July 30, 2016 (the relevant pre-July 31, 2016 time period).[1]  (ECF No. 30, PageID.1187 n.2.)  Mr. Schreiber also concedes that to prevail on his claim, he must establish that Mayo exchanged, sold, or disclosed information identifying Mr. Schreiber during this period.  (*Id.* PageID.1195.)  As Mayo explained in its opening brief, the FAC alleges no facts supporting a plausible inference that Mayo disclosed protected information during this period, or that any of the information allegedly disclosed identified Mr. Schreiber to the party receiving that information.  Instead, the FAC relies exclusively on internet sources that pre- and post-date the alleged conduct by years, and have no connection to Mr. Schreiber or his alleged personal information.  In response to Mayo's motion, Mr. Schreiber argues that this "timing issue" is of no consequence, and attempts to distinguish *Nashel v. New York Times Co.*, No.2:22-CV-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022)—a case which definitively rejects the same arguments Mr. Schreiber makes here.  However, Mr. Schreiber's arguments acknowledge that he has no facts showing that his personal reading information was disclosed during the relevant time period.  Instead, he relies on inferences

---

[1] Throughout his response, Mr. Schreiber incorrectly claims that Mayo conceded that a six-year statute of limitations and COVID-19 tolling orders extended the limitation period applicable to his claims.  (ECF No. 30, PageID.1194.)  This is not the case. Although Mayo has not asserted statute of limitations as grounds for this Rule 12(b)(6) motion, Mayo did not concede that Mr. Schreiber's claims are timely, and specifically reserved any statute of limitations defense.  (*See* ECF No. 25, PageID.1158 n.1.)

based on the same conclusory, untimely, and unsupported allegations as the FAC, which were rejected by *Nashel* and are inconsistent with federal pleading requirements. Accordingly, the FAC should be dismissed pursuant to Rule 12(b)(6).

## ARGUMENT

**I.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST MAYO FOR VIOLATION OF THE PPPA.**

Mr. Schreiber's response to Mayo's motion makes three primary arguments. First, Mr. Schreiber argues that *Nashel* was wrongly decided and is an "outlier." Second, he restates the same conclusory allegations in the FAC and argues that they are distinguishable from *Nashel* or otherwise cross the line from possible to plausible to survive a Rule 12 motion. Third, he argues that compliance with well-settled Rule 12(b)(6) caselaw would render the PPPA a "toothless tiger." None of these arguments have merit.

**A.    *Nashel* was correctly decided and is not an outlier.**

Mr. Schreiber's argument that *Nashel* was wrongly decided and is an outlier in PPPA jurisprudence should be rejected for several reasons.

In *Nashel*, the Court considered whether allegations of conduct that pre- and post-dated the narrow time period at issue in that case were sufficient to state a claim under the PPPA. *Nashel* properly held that "data cards," "privacy policies," and "case studies" not from the relevant time period could not be used to infer conduct by the defendant during the relevant time period, because conclusory allegations of the "same" or "systemic" practices were "legal-conclusion inferences," which need not be presumed as true. *Nashel*, 2022 WL 6775657, at *4-5 (rejecting PPPA claim based on "data cards" posted "years

before" the alleged conduct, a privacy policy "not moored by a time constraint," and a case study from years after the alleged relevant time period).

The "timing issue" identified by *Nashel* is not a theoretical defect, but rather the natural consequence of the *Twombly/Iqbal* pleading standard articulated by the Supreme Court and the Sixth Circuit. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (stating that a plaintiff's allegations must push claims "across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (affirming dismissal of claim when allegations did not "move the claim from possible and conceivable to plausible and cognizable").   Indeed, Courts routinely dismiss complaints based on allegations that do not align with the time period at issue. *See, e.g.*, *Moreira v. Société Générale, S.A.*, 573 F. Supp. 3d 921, 928-29 (S.D.N.Y. 2021) (dismissing complaint that alleged specific acts outside of the statute of limitations and relied on conclusory allegations of "continuing" conduct to establish timely claim); *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 563 F. Supp. 3d 578, 593-94 (W.D. La. 2021) (dismissing complaint when alleged statements showing antitrust activity were made years before the alleged antitrust violation and rejecting "inferential leaps" to connect those statements to alleged violation); *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1135 (E.D. Wash. 2013) (inference that pre-class-period practices continued during class period was "unsubstantiated speculation"). Accordingly, Mr. Schreiber's attempt to dismiss the "timing issue" that is central to *Nashel*'s holding must be rejected.

Further, *Nashel* is not an outlier among PPPA cases.  Mr. Schreiber cites to several

cases he claims addressed the sufficiency of allegations under the PPPA.  But none of the

cases address the central issue raised by this motion: whether a plaintiff's conclusory and

remote-in-time allegations were sufficient to state a plausible claim for relief under the

PPPA.  Instead, most of the cited cases considered other grounds for dismissal, including

but not limited to whether the plaintiffs had standing to assert a PPPA claim, the

constitutional validity of the PPPA, and whether an amendment to the PPPA was

retroactive.  *See Cain v. Redbox Automated Retail, LLC*, 981 F. Supp. 2d 674, 681-87 (E.D.

Mich. 2013) (addressing plaintiffs' standing and whether exceptions to PPPA applied to

the defendant); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 628-42 (E.D. Mich. 2017)

(addressing plaintiffs' standing and retroactivity of PPPA amendment); *Moeller v. Am.

Media Inc.*, 235 F. Supp. 3d 868, 872-75 (E.D. Mich. 2017) (addressing plaintiffs' standing

and retroactivity of PPPA amendment); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d

427, 437-54 (S.D.N.Y. 2016) (addressing plaintiffs' standing, constitutionality of the

PPPA, retroactivity of PPPA amendment, federal jurisdiction over PPPA class-action

claim, and whether PPPA applied to the defendant); *Boelter v. Advance Mag. Publishers

Inc.*, 210 F. Supp. 3d 579, 587-603 (S.D.N.Y. 2016) (addressing plaintiff's standing,

federal jurisdiction over PPPA class-action claim, retroactivity of PPPA amendment, and

the constitutionality of the PPPA).  Whether a plaintiff has standing to assert a PPPA claim

requires a different analysis, and is different, than whether a complaint contains sufficient

facts to plausibly allege a PPPA claim.[2]   Therefore, Mr. Schreiber's cited authority is

inapposite and does not provide a basis for this Court to reject *Nashel*.

Mr. Schreiber's reliance on *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682

(W.D. Mich. 2018), is similarly misplaced.  Although the Court in *Horton* denied a motion

to dismiss based on the sufficiency of the allegations, it was not asked to consider whether

allegations regarding advertisements and conduct that pre- or post-dated the relevant time

period by years, if not decades, could be used to state a claim for relief.  Nor did the Court

conclude that allegations from years before or after the relevant time period supported an

inference that the defendant disclosed "substantially identical" data during the relevant

period.  Accordingly, *Horton* is silent as to the dispositive issue in this case.[3]

Moreover, contrary to Mr. Schreiber's assertion that *Nashel* is the outlier case, the

Court in *Wheaton v. Apple, Inc.*, No. C 19-02883, 2019 WL 5536214, at *4 (N.D. Cal. Oct.

25, 2019), also considered a data card similar to those at issue in *Nashel* and *Horton* and

concluded that it was not sufficient to show that the defendant disclosed information in

---

[2] To determine whether the plaintiffs had Article III standing, the courts considered whether a well-pleaded PPPA claim constitutes an "actual injury" or whether the plaintiffs must plead some additional harm beyond the statutory violation itself.  Those courts did not, as the court did in *Nashel*, address whether the complaint adequately alleged a claim against the defendant under the PPPA.

[3] *Horton*, like *Nashel*, is not binding on this Court.  *See Associated Indem. Corp. v. Dow Chem. Co.*, 248 F. Supp. 2d 629, 647 (E.D. Mich. 2003) ("[P]recedent from other judges in this district is not binding on this Court."); *see also U.S. v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (stating that a single district court decision "has little precedential effect" and "is not binding on the circuit, or even on other district judges in the same district").  Because *Nashel* is the only case to fully and properly address the pleading deficiency at issue in this case, its analysis should be adopted over *Horton*'s.

violation of the PPPA.  Mr. Schreiber attempts to distinguish *Wheaton* by arguing that it involved music-file data as opposed to magazine subscriptions, noting that the defendant's briefing focused on that distinction.  (*See* ECF No. 30, PageID.1205.)  The *Wheaton* Court's opinion, however, did not rely on that distinction, and instead highlighted that the data cards could only be connected to the plaintiffs' claims by speculation, which fell short of plausibly showing that the defendant disclosed the plaintiffs' personal information. *Wheaton*, 2019 WL 5536214, at *4-5.  On the disputed issue of whether third-party data cards are sufficient to show that a defendant disclosed the plaintiff's personal information during the relevant time period, *Horton*—not *Nashel*—therefore is the outlier.

### B.     Mr. Schreiber has failed to sufficiently allege a violation of the PPPA.

Mr. Schreiber's remaining arguments in defense of his FAC merely restate, at greater length but with no added specificity or support, the insufficient allegations of the FAC that are identical to those present in *Nashel* and were properly rejected by that Court. Moreover, recognizing that the FAC contains no support for the conclusory allegations that Mr. Schreiber's data was actually disclosed during the relevant time period, Mr. Schreiber doubles down on yet another inferential leap: that during the relevant pre-July 31, 2016 period, Mayo continuously and at least as frequently as once a month, rented, exchanged, or otherwise disclosed all of its customers' personal reading information to various third parties.  (ECF 30, PageID.1187, 1193, 1195-96.)  None of Mr. Schreiber's purported

factual allegations support this inference, which Mr. Schreiber appears to concede is a threshold requirement for his claim to proceed.[4]

### 1.      Third-Party Data Cards from 2022 and 2006

Mr. Schreiber argues that two NextMark data cards, attached as Exhibits A and B to the FAC, establish that Mayo was continuously disclosing all of its customers' personal reading information to third parties.  But, as discussed in Mayo's opening brief, neither data card is from—or even close in time to—to the relevant pre-July 31, 2016 period. *Nashel* rejected this same argument based on similar data cards for those reasons. *See Nashel*, 2022 WL 6775657, at *4-5.  And setting aside *Nashel*, nothing about the 2006 or 2022 data cards suggests that Mr. Schreiber's data was available for sale—let alone actually sold—in the six-week relevant period in 2016.

Mr. Schreiber attempts to distinguish *Nashel* by arguing that, here, there are two data cards—one before the relevant period and one after it—as opposed to the single 2007 card in *Nashel*.  (ECF No. 30, PageID.1200-03.)  This is a distinction without a difference. Mr. Schreiber's argument still requires the same sweeping inferences that the Court rebuffed in *Nashel*: in order to show that Mayo disclosed Mr. Schreiber's information during a six-week period before July 31, 2016, Mr. Schreiber relies on a legal-conclusion inference that Mayo was systematically violating the PPPA by disclosing <u>all</u> of its

---

[4] The failure to allege facts specific to the alleged disclosure of Mr. Schreiber's personal reading information during the relevant time frame is fatal to the PPPA claim. Moreover, discovery has demonstrated that Mayo <u>did not</u> disclose all of its subscriber data, let alone the data of every Michigan subscriber, during the relevant period.  In fact, discovery has demonstrated that Mayo currently has <u>no evidence</u> that Mr. Schreiber's personal reading information was disclosed during the relevant time period.

customers' information every month from 2007 to 2022.  (*See* ECF 30, Page ID.1200.)

These legal conclusions and inferential leaps need not be presumed as true.  *See Nashel*,

2022 WL 6775657, at *5 (holding that data cards showing dates outside of the relevant

time period made the complaint's allegations "merely possible rather than plausible" and

were insufficient to state a PPPA claim).

Mr. Schreiber's argument that the 2022 data card is sufficient because the list

allegedly offered for sale is "cumulative" is similarly unavailing. (*See* ECF 30,

PageID.1207.)  Nothing about the phrase "COUNTS THROUGH 07/19/2022" suggests

that every subscriber, including past subscribers from 2016, would be part of the data set.

Even if that were the case, this does not mean that such information was disclosed before

July 31, 2016, which is the issue that Mr. Schreiber must plead with adequate factual

support in his FAC.  An allegation that customer data was advertised for sale six years later

does not amount to an allegation that Mr. Schreiber's data was actually disclosed during

the relevant time period.

As *Nashel* recognized, data cards that are remote in time and lack any suggestion

that the named plaintiff was among those whose data was available for sale, let alone

actually sold by the defendant, fall far short of showing entitlement to relief.[5]

---

[5] Mr. Schreiber's attempt to avoid the problem that the data cards do not identify Mayo as the source of the alleged data must fail, because it too is based on nothing but conclusions and inferences that are completely untethered from any facts alleged in the FAC.  *See Nashel*, 2022 WL 6775657, at *4-5 (rejecting the plaintiffs' argument that the data "necessarily originated" from the New York Times as a "large inferential leap" when the data card "only indirectly aimed blame at [the New York Times]").

2.      HealthLetter.MayoClinic.Com Privacy Policy

Recognizing that the data cards are insufficient to state a claim, Mr. Schreiber also argues that Exhibit E, an alleged copy of Mayo's privacy policy from its Health Letter Online Edition website, shows that Mayo disclosed customer information because it states that Mayo "regularly share[s] our postal mailing list with other organizations." (ECF No. 19-6, PageID.626.)  As explained in Mayo's opening brief, the court in *Nashel* rejected a similar argument on the grounds that such a policy, "not moored by a time constraint, shows only that [the defendant] might disclose information in the future, not that any information was plausibly disclosed." *See Nashel*, 2022 WL 6775657, at *5.  Mr. Schreiber attempts to distinguish *Nashel* by asserting that, unlike the policy in *Nashel*, which stated that the defendant "may" exchange a subscriber's information, Mayo "admitted to disclosing its customers' Private Reading Information to third parties" and that Mayo's privacy policy states "without any limitation" that it is "their *entire* 'postal mailing list' that it shares." (ECF No. 30, PageID.1198.)

Mr. Schreiber's argument fails for two reasons.  First, the alleged privacy policy does not state "without any limitation" that Mayo shares its entire postal mailing list of all of its customers.  The statement that Mr. Schreiber refers to is from the HealthLetter.MayoClinic.com website and follows a section describing the "Web privacy policy." (*See* ECF No. 19-6, PageID.626.)  The site states that, "[a]s a customer of The Mayo Clinic Health Letter Web site, you'll provide your name, mailing address, e-mail address, and purchase information." (*Id.* (emphasis added).)  It then states at the end of that paragraph: "[w]e regularly share our postal mailing list with other organizations." (*Id.*)

Read in context, the privacy policy refers to users of HealthLetter.MayoClinic.com.  Mr. Schreiber does not allege that he was ever a user of that website.

Second, the alleged privacy policy, even if it was on the website in 2016, does not establish that Mayo disclosed Mr. Schreiber's—or any other Michigan resident's— information during the relevant pre-July 31, 2016 time period.  Instead, as in *Nashel*, the privacy policy at most shows that Mayo may have disclosed <u>some</u> information at <u>some</u> point, not that <u>Mr. Schreiber's</u> information "was <u>plausibly</u> disclosed."  *See Nashel*, 2022 WL 6775657, at *5.

### 3.    RMI's Online Marketing

Having failed to state his claim based on the data cards and privacy policy, Mr. Schreiber repeats his conclusory allegations from the FAC that because Mayo and RMI had a relationship from 2005 to 2018, as allegedly evidenced by FAC Exhibits C and D, Mayo necessarily disclosed information about Mr. Schreiber and other class members on a continual and frequent basis.  In its opening brief, Mayo noted Mr. Schreiber's improper "inferential leap," which was squarely rejected by the Court in *Nashel*.  (*See* ECF No. 25, PageID.1168-69.)   Mr. Schreiber responds now by arguing—once again, without any factual basis—that such an inferential leap is proper here because "that is exactly how mailing lists work."  (ECF No. 30, PageID.1210.)  Mr. Schreiber thus responds to Mayo's challenge of his conclusory and unsupported allegation with another, equally conclusory and unsupported allegation.[6]  Again, these are precisely the type of allegations that the

---

[6] Mr. Schreiber incorrectly claims that Mayo "offers no denial" that it disclosed Mr. Schreiber's information to third parties without his consent.  (ECF No. 30, PageID.1210.)

court rejected in *Nashel*.  *See Nashel*, 2022 WL 6775657, at *5 (rejecting PPPA claim

where plaintiffs' evidence "only indirectly aimed blame at [the defendant], but the indirect

evidence failed to create a reasonable inference of [the defendant's] culpability").  Such

claims are insufficient to plausibly allege that Mayo disclosed Mr. Schreiber's information

in the relevant pre-July 31, 2016 time period.

        4.      "Dramatic Uptick of Junk Mail"

As Mayo noted in its opening brief, having failed to provide any factual allegations

in support of his conclusion that his personal reading information was disclosed during the

relevant time frame, Mr. Schreiber rests his argument on the conclusory and vague

allegation that he saw a "dramatic uptick" in junk mail as purported evidence of Mayo's

alleged statutory violation.  However, this boilerplate and non-specific allegation lends no

support for the proposition that the junk mail was the result of a PPPA violation, let alone

a violation by Mayo, during the relevant time period.  Because the FAC does not allege

that Mr. Schreiber's data was sold, when his data was allegedly sold, or who it was sold to

or by, a vague "dramatic uptick" of junk mail during the relevant time period is not

evidence of any claim against Mayo.  Indeed, the FAC does not plausibly explain how a

sale of Mr. Schreiber's data at some unidentified point between June 18, 2016 through July

30, 2016 (the relevant time period) would have resulted in a "dramatic uptick" in junk mail

---

However, on a Rule 12(b)(6) motion to dismiss, the moving party cannot deny an allegation
based on its falsity but must instead show that the allegations are insufficient as a matter
of law to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (noting tenet that a
court must accept the allegations in a complaint as true).  Moreover, discovery to date has
already demonstrated that Mayo has no evidence that Mr. Schreiber's personal reading
information was disclosed during the relevant time period.

{11027855: }                                11

from the entity or person to whom his information was allegedly sold in such a short window of time.

**C.**      **The Rule 12(b)(6) pleading standard requires factual allegations that plausibly state a claim for relief rather than speculation and conclusory assertions that permit the court to infer only a possibility of misconduct.**

The theme of Mr. Schreiber's opposition to Mayo's motion is that his case should be considered under a more liberal pleading requirement than set forth by the Supreme Court, because when that standard is applied properly, it turns the PPPA into a toothless tiger. But, as the court in *Nashel* recognized, a PPPA claim—like any other claim—must be pleaded according to the well-established standards of *Twombly,* 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678. *See Nashel*, 2022 WL 6775657, at \*4-5 (citing and quoting pleading standards from *Twombly* and *Iqbal* when considering a motion to dismiss a PPPA claim for failure to state a claim). Under the *Twombly*/*Iqbal* standard, a plaintiff must set forth adequate factual allegations that <u>plausibly</u> state a claim for relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although liberal, the Rule 8 pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Bare assertions that amount to "nothing more than a formulaic recitation of the elements" of a claim are "not entitled to be assumed true." *Id.* at 681. And when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader "has not show[n]" entitlement to relief. *Id.* at 679 (cleaned up).

To withstand a motion under Rule 12(b)(6), a plaintiff need not prove his or her case. But a plaintiff must allege facts sufficient to state a claim that is plausible on its face. The FAC lacks those required factual allegations. Instead, Mr. Schreiber's complaint provides nothing but a strained collection of speculative and unsubstantiated assertions and legal conclusions that, at most, permit an inference of only the mere <u>possibility</u> that Mayo violated the PPPA. The court in *Nashel* considered these same arguments less than a year ago and properly rejected them as creating "only suspicion as to whether [the defendant] violated the PPPA during the pre-July 31, 2016 period." 2022 WL 6775657, at \*4; *see also Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) ("A complaint containing a statement of facts that merely creates a <u>suspicion</u> of a legally cognizable right is insufficient."). The Court should come to the same conclusion in this case.

## CONCLUSION

For the reasons set forth above, Mayo respectfully requests that the Court grant its motion and dismiss the First Amended Complaint in its entirety.

Dated:  February 28, 2023                    By: /s/ Michael G. Latiff

**MCDONALD HOPKINS PLC**

Michael G. Latiff (P51263)
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
(248) 646-5070
mlatiff@mcdonaldhopkins.com

**FREDRIKSON & BYRON, P.A.**

Gregory E. Karpenko (#0286473)
(Admitted USDC-MIWD 1/19/2023)
Anupama D. Sreekanth (#0393417)
(Admitted USDC-MIWD 1/19/2023)
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone: 612.492.7000
Fax:  612.492.7077
gkarpenko@fredlaw.com
asreekanth@fredlaw.com

***Attorneys for Defendant***

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-00188-HYJ-RSK<br>Hon. Hala Y. Jarbou |
| Plaintiff, | |
| v. | **DEFENDANT MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, | |
| Defendant. | |

## LR 7.2(b) WORD COUNT CERTIFICATE OF COMPLIANCE

I certify that Defendant Mayo Foundation for Medical Education and Research's Reply in Support of Motion to Dismiss First Amended Class Action Complaint conforms to the requirements of LR 7.2(b) for a brief produced with a proportional font. The length of this brief is 3,702 words excluding those portions of the brief exempted. This brief and word count was prepared using Microsoft Word 2016, as applied specifically to include all text, including headings, footnotes, and quotations for word-count purposes.

By: /s/ Michael G. Latiff

*Attorney for Defendant*

{11027855: }

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-00188-HYJ-RSK<br>Hon. Hala Y. Jarbou |
| Plaintiff, | |
| v. | **DEFENDANT MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, | |
| Defendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February, 2023, I electronically filed the foregoing *Defendant Mayo Foundation for Medical Education and Research's Reply in Support of Motion to Dismiss First Amended Class Action Complaint*, *Certificate of Compliance* and this *Certificate of Service* with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

By: /s/ Michael G. Latiff

*Attorney for Defendant*

{11027855: }