# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER; RICHARD COLONY; and KAY VREDEVELD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>    Defendant. | Case No. 2:22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou |

**BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR LEAVE TO FILE THIRD AMENDED
COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a) & 16(b)**

## **<u>STATEMENT OF ISSUES PRESENTED</u>**

1.      Whether, pursuant to Federal Rules of Civil Procedure 16(b), 15(a)(2), and 23, Plaintiffs should be granted leave to file their proposed Third Amended Complaint for the limited purpose of adding Michael Surnow as a named Plaintiff to serve as an additional class representative, where Plaintiffs only recently (and belatedly) obtained the discovery necessitating the amendment (including a log file revealing the existence of a Mayo subscriber list transmitted to CRI during the class period, as well as a copy of the list itself), where Plaintiffs have not unduly delayed in seeking the proposed amendment or otherwise acted in bad faith or for any dilatory motive, and where Defendant will not suffer any undue prejudice from the proposed amendment?

**Plaintiffs' Answer**:      Yes

## **MOST CONTROLLING AUTHORITIES**

Fed. R. Civ. P. 16(b)

Fed. R. Civ. P. 15(a)(2)

*Foman v. Davis*, 371 U.S. 178 (1962)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................6

LEGAL STANDARD............................................................................................15

ARGUMENT ........................................................................................................16

    I.    The Addition of Mr. Surnow as a Named Plaintiff Will Protect the
        Interests of Putative Class Members ...................................................17

    II.    Good Cause Exists to Modify the Operative Scheduling Order
        Pursuant to Rule 16(b)......................................................................20

    III.    Justice Requires Granting Plaintiffs Leave to File the Proposed TAC
        Pursuant to Rule 15(a)(2) ..................................................................23

CONCLUSION ......................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*American Family Mut. Ins.*,
   705 F.3d 339 (8th Cir. 2013) .................................................................23
*Burris v. Versa Products, Inc.*,
   No. 07-3938, 2009 WL 3164783 (D. Minn. Sept. 29, 2009) .............................16
*Chu v. Wells Fargo Invs., LLC*,
   2009 WL 3061974 (N.D. Cal. Sept. 24, 2009)......................................17
*Cutsinger v. Humphrey*,
   2015 WL 6750786 (E.D. Mich. Nov. 5, 2015).....................................24
*Duggins v. Steak N' Shake, Inc.*,
   195 F.3d 828 (6th Cir. 1999) .................................................................16
*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F. 3d 1048 (9th Cir. 2003) .............................................................24
*Foman v. Davis*,
   371 U.S. 178 (1962)............................................................. 15, 23, 24, 27
*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2006 WL 1049352 (S.D.N.Y. Apr. 19, 2006) ......................................26
*Howard v. Kerr Glass Mfg. Co.*,
   699 F.2d 330 (6th Cir. 1983) .................................................................15
*Howey v. U.S.*,
   481 F.2d 1187 (9th Cir. 1973) ..............................................................24
*In re Gen. Motors Air Conditioning Marketing and Sales Practices Litig.*,
   2020 WL 3571716 (E.D. Mich. 2020).................................................18
*In re Gen. Motors LLC Ignition Switch Litig.*,
   2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017)....................... 18, 27, 29
*In re Nat'l Austl. Bank Sec. Litig.*,
   2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006)........................................18
*Kittle v. Am.'s Test Kitchen LP*,
   2019 WL 6496596 (E.D. Mich. Dec. 3, 2019) ................. 24, 25, 26, 29
*Lin v. Crain Comm. Inc.*,
   2020 WL2043527 (E.D. Mich. Apr. 27, 2020) ...................... 18, 25, 29
*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
   238 F.3d 363 (5th Cir. 2001) .................................................................24
*Louisiana School Emps.' Ret. Sys. v. Ernst & Young, LLP*,
   622 F.3d 471 (6th Cir. 2010) .................................................................15
*Lurschat v. General Bearing Corp.*,
   2007 WL 2080302 (E.D. Mich. Jul. 19, 2007)....................................24

*Mallak v. Aitkin Cty.*,
　　2015 WL 2250494 (D. Minn. Mar. 4, 2015) ........................................16
*Moore v. City of Paducah*,
　　790 F.2d 557 (6th Cir. 1986) .................................................... 16, 29
*Phillips v. Ford Motor Co.*,
　　435 F.3d 785 (7th Cir. 2006) ..........................................................18
*Roberson v. Hayti Police Dept.*,
　　241 F.3d 992 (8th Cir. 2011) ..........................................................15
*Shank v. Carleton College*,
　　329 F.R.D. 610 (D. Minn. 2019) ................................................ 15, 16
*Sherman v. Winco Foreworks, Inc.*,
　　532 F.3d 709 (8th Cir. 2008) ..........................................................15
*Smith v. Leis*,
　　2009 WL 1687945 (S.D. Ohio, June 12, 2009) ................................18
*Smith v. Martorello*,
　　2022 WL 2705510 (D. Or. June 8, 2022) .................................. 26, 29
*Tefft v. Seward*,
　　689 F.2d 637 (6th Cir. 1982) ..........................................................15
*Turrey v. Vervent, Inc.*,
　　2021 WL 5042120 (S.D. Cal. Oct. 28, 2021) ..................................18

## Rules

Fed. R. Civ. P. 15 ................................................................... passim
Fed. R. Civ. P. 15(a)(2) .................................................................15
Fed. R. Civ. P. 16(b) ............................................................... passim

## Treatises

Manual for Complex Litigation (Fourth) § 21.26)..........................17

# **INTRODUCTION**

The amendment requested in this Motion aims to ensure that all putative class members are adequately represented in this case. To that end, Plaintiffs' counsel are hopeful that this proposed amendment will help facilitate a resolution to this action at the Parties' upcoming sessions of mediation before Judge Rosen on December 11-12, 2023 in New York.

Plaintiffs recently obtained third-party discovery from SFG, LLC ("SFG"), an agent of Mayo Foundation for Medical Education and Research ("Mayo") who maintained Mayo's customer database and disclosed subscriber lists on Mayo's behalf, which indicates that SFG transmitted, on Mayo's behalf, a Mayo subscriber list to a company called Commerce Register, Inc. ("CRI") on June 23, 2016, squarely within the applicable class period. This discovery was spurred by SFG's production to Plaintiffs' counsel of a server log file that reflects the activity on SFG's server housing Mayo's data during the class period. Although Plaintiffs requested a copy of this log file in their subpoena issued to SFG on June 1, 2023, SFG consistently denied being in possession of a such a file for several months, including after multiple meet and confer efforts by Plaintiffs' counsel. In response to these denials, Plaintiffs' counsel served a subpoena for inspection of premises on SFG, setting a date for Plaintiffs' counsel and a digital forensics firm selected by Plaintiffs' counsel to inspect the actual server at SFG's headquarters in Big Sandy, Texas to locate the

server's log file that reflects the activity on the server during the class period. Shortly thereafter, on October 10, 2023, SFG's counsel notified Plaintiffs' counsel that it had located the log file, which had been in its possession all along, and produced the file to Plaintiffs' counsel. The log file reflects, *inter alia*, a transmission of a Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to CRI on June 23, 2016.

Following Plaintiffs' counsel's discovery of the June 23, 2016 transmission of a subscriber list to CRI, Plaintiffs' counsel diligently sought a copy of the transmitted list from both SFG and Mayo. The list was ultimately produced to Plaintiffs' counsel on October 26, 2023 by Mayo, after Mayo had received the list from SFG and redacted the names and addresses that appear on it. The redacted list produced to Plaintiffs' counsel did not redact the account numbers of the persons whose names and addresses appear on it.

Although the current Plaintiffs' Private Reading Information (as defined in the operative Second Amended Complaint ("SAC")) appears on other subscriber lists, including a list transmitted to the Salvation Army on June 20, 2016 which contains Plaintiff Vredeveld's Personal Reading Information, none of the current Plaintiffs' Personal Reading Information appears on the list that SFG transmitted to CRI on June 23, 2016. Thus, immediately after obtaining a copy of the list

2

transmitted to CRI on June 23, 2016, Plaintiffs' counsel worked diligently to investigate the potential claims of numerous other individuals in Michigan who had contacted them about this litigation, including persons in Michigan who had subscribed to Mayo's publication during the time period that would likely have resulted in their inclusion on the transmitted list. As a result of those efforts, Plaintiffs' counsel were recently retained by an individual named Michael Surnow, a Michigan resident whose Personal Reading Information appears in the file transmitted by CRI on June 23, 2016 (as confirmed by the inclusion of Mr. Surnow's account number on the list), to represent him as a plaintiff and additional putative class representative in this action. Thus, Plaintiffs now seek the Court's permission to file Plaintiffs' proposed Third Amended Complaint ("TAC") (attached hereto as **Composite Exhibit 1** (both a clean copy and a copy reflecting changes from the operative SAC in redline)), which adds Mr. Surnow as an additional Plaintiff and class representative in this case.

Permitting the filing of Plaintiffs' proposed TAC is appropriate and routine given the circumstances, and will not alter the nature of this action in any material way. The claims of the existing Plaintiffs, Mr. Surnow, and all other putative Class members arise from the same course of conduct and are based on the same legal theories already alleged in the operative SAC. And because the Court has already ruled on the legal sufficiency of Plaintiff Schreiber's claim, which arises from the

same allegations as the claim alleged by Mr. Surnow in the proposed TAC (as well as Mr. Colony's and Ms. Vredeveld's claims in the operative SAC), no additional motion to dismiss briefing will be necessary in response to the amended pleading if the requested amendment is permitted. In fact, the proposed amendment will not require modification of the discovery deadline, the class certification deadline, or any other deadline in the case set by the current case schedule (besides the deadline to amend pleadings, which Plaintiffs request be extended pursuant to Rule 16 to permit the amendment requested herein).[1]

Nor will Mr. Surnow's addition to the case materially expand the scope of discovery in the case. All of the materials that were sought in Plaintiff Schreiber's discovery requests are the same materials that would be discoverable with respect to Mr. Surnow's claim (other than the records pertaining specifically to Mr. Surnow's subscriptions and any still-unproduced materials concerning CRI's relationship with Mayo) – such that, if the proposed amendment is permitted, Mr. Surnow will not need to issue any requests that would be duplicative of those already issued by the other Plaintiffs (and instead, would only need to issue a single request for the records concerning him and his subscriptions and potentially any still-unproduced materials concerning the relationship between CRI and Mayo). Plaintiffs expect that

---

[1]    Defendant's opposition is based on merits issues and will not require an extension to the schedule.

Defendant is capable of readily locating and producing the same sort of materials concerning Mr. Surnow and his subscriptions as it previously located and produced regarding the other Plaintiffs and their subscriptions. Additionally, none of the numerous third parties that the current Plaintiffs have already subpoenaed in this case would need to be subpoenaed again by Mr. Surnow, as all of the materials that these third parties possess of potential relevance to Mr. Surnow's claim have already been sought by the current Plaintiffs.

Moreover, no depositions have occurred to date, so no depositions would need to be reopened if the proposed amendment is allowed. Should the Parties' mediation efforts fail, Plaintiffs intend to depose Defendant's corporate representative, as well as corporate representatives of third parties SFG, CRI, Experian Marketing Services, Inc., and Paradycz Matera, Inc., shortly following the parties' upcoming December 11-12 mediation before Judge Rosen (and Plaintiffs have requested that counsel for each of these entities obtain available dates for the depositions to occur). Defendant recently requested dates on which the current Plaintiffs are available for deposition after the mediation (if it is unsuccessful); Plaintiffs' counsel are communicating with their clients and will soon provide Defendant with their availability, including Mr. Surnow's availability, for deposition.

Defendant will suffer no prejudice if the amendment is allowed. Discovery does not close for over three months and the deadline for Plaintiffs to move for class

certification is over two months away. Defendant will thus have ample time to both issue written discovery requests to and depose Mr. Surnow if the requested amendment is permitted. Mr. Surnow is committed to quickly responding to Defendant's discovery requests and providing his availability for deposition prior to the close of discovery.

Plaintiffs' counsel do not foresee the need to request any further amendments in this case following the filing of the proposed TAC.

Accordingly, in order to protect the interests of the putative Class members whose Private Reading Information appears within the 2013 list transmitted to CRI during the class period, Plaintiffs respectfully seek the Court's permission to add Michael Surnow as an additional Plaintiff and putative class representative in this case, to serve alongside Plaintiffs Schreiber, Colony and Vredeveld.

## **BACKGROUND**

On January 17, 2023, the Court issued a scheduling order in this case, setting, *inter alia*, deadlines of April 6, 2023 to amend pleadings and March 1, 2024 to complete discovery. ECF No. 23 at 1. The court subsequently amended the scheduling order on September 28, 2023, leaving intact the deadline to amend pleadings and to complete discovery but setting new deadlines for Plaintiffs to move for class certification (now set for January 29, 2024), for Plaintiffs to make their

expert disclosures (now set for January 16, 2024), and for Defendant to make its expert disclosures (now set for February 16, 2024). ECF No. 52.

Discovery commenced immediately in this case. Plaintiffs served Defendant with Plaintiffs' First Set of Interrogatories ("ROGs") and First Set of Requests for Production ("RFPs") on January 11, 2023. *See* **Exhibit 2**, Declaration of E. Powell Miller ("Decl.") ¶ 4; **Exhibit 3** (Jan. 11, 2023 correspondence and attached ROGs and RFPs). Plaintiffs' First RFPs included requests for all information relevant to the claims raised by Plaintiffs here. Ex. 3. Specifically, the RFPs sought information related to the transmission of subscriber lists conveyed to third parties during the class period. *Id.* Plaintiffs' RFPs specifically defined Defendant to include its agents, such as SFG, so that Defendant was required to provide responsive documents to Plaintiffs after retrieving them from SFG. *See* Ex. 3, RFP Definition 3 ("The terms "DEFENDANT," "YOU," or "YOUR" refer to Mayo Foundation for Medical Education and Research and all of its affiliates, subsidiaries, predecessor and successor entities, together with all of its officers, agents, employees, directors, representatives, successors and assigns.). Plaintiffs' RFPs thus necessarily included a request for SFG server log files reflecting transmissions of subscriber lists to third parties and the 2013 subscriber file that was transmitted to CRI during the class period.

On February 10, 2023, Defendant served written responses to the discovery requests but did not produce any documents. *See* Decl. ¶ 7; **Exhibit 4** (Feb. 10, 2023 correspondence from Defendant with its written RFPs responses and ROGs responses). On February 23, 2023, Defendant served its Initial Disclosures. *See* Decl. ¶ 8; **Exhibit 5**. Later, on March 16, 2023, Defendant served its amended initial disclosures identifying SFG as a person likely to have discoverable information. Decl. ¶ 9; **Exhibit 6**. This was the first time that Plaintiffs had been provided any information as to SFG.[2] *Id.*

Defendant refused to produce any documents because it, in part, insisted on the entry of a protective order prior to any production. Decl. ¶ 10. Therefore, the Parties agreed to the parameters of ESI protocol and a proposed protective order and filed it with the Court on March 16, 2023. *See* ECF Nos. 36-38; Decl. ¶ 10. On March 21, 2023, Magistrate Judge Kent entered an order granting entry of the Protective Order. ECF Nos. 39-40. Following entry of the Protective Order, on April 7, 2023, Defendant finally provided some responsive materials to Plaintiffs' first request for production of documents.[3] *See* Decl. ¶ 11; **Exhibit 7** (Apr. 7, 2023 correspondence

---

[2]    And even if Plaintiffs had sent a subpoena to SFG on March 16, 2023, the day Defendant had sent its amended initial disclosures, it is extremely unlikely that Plaintiffs would have received a response, let alone the log file, by April 6, 2023, the deadline to join parties or amend pleadings.

[3]    Defendant produced its first responsive documents one day *after* the deadline to join parties or amend pleadings. Thus, Plaintiffs cannot reasonably have been

from Defendant with hyperlink to production). Defendant later provided its second set of responsive documents on June 19, 2023—and this production finally included Defendant's contract with SFG. Decl. ¶ 13; **Exhibit 8** (June 19, 2023 correspondence from Defendant with hyperlink to production). Throughout this period, Plaintiffs were diligent in reviewing the first party discovery provided by Defendant.

On June 1, 2023, Plaintiffs served a subpoena for documents, communications, and electronically stored information to SFG. Decl. ¶ 12. A copy of the subpoena to SFG is attached hereto as **Exhibit 9**. The subpoena to SFG requested the production of, *inter alia*, the following categories of materials:

> **Document Request No. 5**
> All documents, communications, and ESI (in original native format) exchanged between SFG and any other person, including without limitation Mayo, CRI and RMI, that contain the Private Reading Information of Jeffrey Schreiber and/or of any other Mayo customer(s) or subscriber(s) in Michigan.
> . . .
> **Document Request No. 16**
> All documents, communications, and ESI exchanged between SFG and CRI concerning the transmission, suppression, or receipt of the Private Reading Information of Jeffrey Schreiber and/or of any other Mayo customers or subscribers in Michigan, including but not limited to copies of such transmissions, suppressions, and/or receipts, as well as documents, communications, and ESI concerning when such transmissions, suppressions, and/or receipts occurred.
> . . .

---

required to amend their pleadings when Plaintiffs had yet to receive any responsive documents from Defendant.

**Document Request No. 18**

All documents, communications, and/or ESI concerning Mayo customers or subscribers, including without limitation monthly "rental files", .zip files, and/or any other type of files and/or data, that were "posted to", uploaded to, or other otherwise made accessible on any server used, operated, and/or maintained by SFG, including without limitation to the secure FTP server accessible at host name sfts.sfgnetwork.com and/or at the URL https://sfts.sfgnetwork.com/webclient/Login.xhtml, at any time between May 1, 2016 and July 30, 2016. By way of example and without limitation, the file titled mmvlr20160622.zip that was posted to SFG's secure FTP server in June 2016 is responsive to this request.

**Document Request No. 19**

All documents, communications, and/or ESI (regardless of date) concerning the materials responsive to Request No. 18 above, including without limitation all documents, communications, and ESI (including server log files) identifying any person, entity, and/or device who provided, uploaded, accessed, downloaded, received, transmitted, and/or sent each of the documents, communications, and/or ESI (including files and/or data) responsive to Request No. 18 above, as well as copies of all emails or other communications, documents, and/or ESI exchanged between SFG and any other person or entity concerning any of the materials responsive to Request No. 18 above. By way of example and without limitation, the e-mail sent by Eric Wilson of SFG to Gus Gonzalez and Bob Schweighardt of CRI and Gregory Shevlin of Mayo on June 22, 2016 is responsive to this request.

Ex. 9 at pp. 7, 10-12.

On July 21, 2023, SFG provided written responses and asserted written objections to the subpoena, along with a limited production of responsive materials. Decl. ¶ 14; a copy of SFG's responses and objections to the subpoena is attached hereto as **Exhibit 10**. In response to request numbers 5, 16, and 18-19 of Plaintiffs'

subpoena, SFG did not produce or disclose the existence of any server log files or the June 2013 subscriber file transmitted by SFG to CRI. *Id.*

Over the following several months, numerous meet and confer emails and telephone calls were exchanged between the parties concerning the subpoena to SFG and its responses and objections thereto. Although certain subscriber list transmission files responsive to request numbers 5, 16, and 18 of the subpoena were produced to Plaintiffs' counsel by SFG, SFG consistently denied being in possession of any server log files responsive to request numbers 16 and 18, including after several additional meet and confer efforts by Plaintiffs' counsel during this time. Decl. ¶ 15; copies of the relevant e-mail correspondence exchanged between Plaintiffs' counsel and SFG's counsel are attached hereto as **Composite Exhibit 11**.

On September 15, 2023, following discussions with a digital forensics firm, Plaintiffs' counsel served a subpoena for inspection of premises on SFG aimed at locating the server's log file that reflects the activity on the server during the class period. Decl. ¶ 16; **Exhibit 12**. The subpoena set a date for Plaintiffs' counsel and a digital forensics firm selected by Plaintiffs' counsel to inspect the server in question at SFG's headquarters in Big Sandy, Texas. *Id.* A copy of Plaintiffs' subpoena for inspection of premises directed to SFG is attached hereto as Ex. 12.

On October 10, 2023, SFG's counsel sent an e-mail to Plaintiffs' counsel indicating that, upon further searching, SFG had determined that log files for the

Mayo server did in fact exist and that SFG was in fact still in possession of those log files. Decl. ¶ 17; **Exhibit 13**. The e-mail from SFG's counsel also attached a copy of a server log file that reflects the activity on SFG's server that housed Mayo's data during the class period. *Id.* A copy of the e-mail from SFG's counsel to Plaintiffs' counsel dated October 10, 2023 is attached hereto as Ex. 13. The log file produced by SFG indicates that*, inter alia*, SFG (on Mayo's behalf) transmitted a June Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to a company called Commerce Register, Inc. ("CRI") on June 23, 2016, squarely within the applicable class period. Decl. ¶ 17; Ex. 13.

Upon receiving this log file, Plaintiffs' counsel immediately requested, by both telephone and e-mail, that SFG immediately produce a copy of the June 2013 subscriber file transmitted to CRI on June 23, 2016, as this transmission file is clearly responsive to request numbers 5, 16, and 18 of Plaintiffs' subpoena to SFG. Decl. ¶ 18; copies of the relevant e-mail correspondence exchanged between Plaintiffs' counsel and SFG's counsel are attached hereto as **Exhibit 14**.

On October 26, 2023, the day before the parties' first session of mediation before Judge Rosen, Mayo produced a redacted copy of the 2013 subscriber file to Plaintiffs' counsel, after Mayo had received the list from SFG and redacted the names and addresses that appear on it. Decl. ¶ 18. The redacted list produced to

Plaintiffs' counsel did not redact the account numbers of the persons whose names and addresses appear on it. *Id.* Although the current Plaintiffs' Private Reading Information (as defined in the operative SAC) appears on other subscriber lists, including a list transmitted to the Salvation Army on June 20, 2016 which contains Plaintiff Vredeveld's Personal Reading Information, none of the current Plaintiffs' Personal Reading Information appears on the list transmitted to CRI on June 23, 2016. Decl. ¶ 19.

Thus, immediately after obtaining a copy of the list transmitted to CRI on June 23, 2016, Plaintiffs' counsel worked diligently to investigate the potential claims of numerous other individuals in Michigan who had contacted them about this litigation, including persons in Michigan who had subscribed to Mayo's publication during the time period that would likely have resulted in their inclusion on the transmitted list. Decl. ¶ 20. As a result of those efforts, on November 6, 2023 Plaintiffs' counsel was retained by an individual named Michael Surnow, a Michigan resident whose Personal Reading Information appears in file transmitted by CRI on June 23, 2016 (as confirmed by the inclusion of Mr. Surnow's account number on the list), to represent him as a plaintiff and additional putative class representative in this action. *Id.*

Promptly after being retained by Mr. Surnow, Plaintiffs' counsel contacted the parties' mediator, the Hon. Gerald Rosen (Ret.), to request that Judge Rosen

13

facilitate a meet and confer between Plaintiffs' and Defendant's counsel concerning the filing of the proposed TAC (which adds Mr. Surnow as an additional plaintiff and class representative).[4] *Id.* Plaintiffs' counsel sent a copy of the proposed TAC, in clean and redlined versions, to Judge Rosen, who in turn transmitted those documents to Defendant's counsel. *Id.* Numerous meet and confers between Plaintiffs' counsel and Judge Rosen, Judge Rosen and Defendant's counsel, and Plaintiffs' counsel and Defendant's counsel then followed. *Id.*

Although Plaintiffs' counsel expected that Defendant would consent to the filing of the proposed TAC – particularly given that the facts necessitating the amendment had just recently been revealed to Plaintiffs' counsel, in a discovery production that Plaintiffs' counsel had belatedly received from SFG – Defendant's counsel nonetheless indicated that its client would not consent to the filing of the proposed TAC.

And on November 17, 2023, following a November 15, 2023 telephonic meet and confer during which Plaintiffs' counsel sought Defendant's concurrence in the instant Motion, Defendant's counsel indicated that it would oppose the instant motion for leave to file the proposed TAC. Decl. ¶ 22.

---

[4]     Plaintiffs' counsel contacted Judge Rosen to facilitate this meet and confer in an effort to avoid disrupting the parties' ongoing settlement discussions ahead of the parties' upcoming mediation (which is scheduled to occur on December 11-12, 2023 in New York),

## **LEGAL STANDARD**

A party seeking to amend the pleadings after the date set out by the scheduling order must satisfy the requirements of the Federal Rule of Civil Procedure 16, as well as Rule 15. *Sherman v. Winco Foreworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).

"Rule 15 requires the court to 'freely give leave' to amend 'when justice so requires.'" *Shank v. Carleton College*, 329 F.R.D. 610, 613 (D. Minn. 2019) (quoting Fed. R. Civ. P. 15(a)(2)). "Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Similarly, the Sixth Circuit has stated that Rule 15 "plainly embodies a liberal amendment policy," *Louisiana School Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010), and "[t]he thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982); *see also Howard v. Kerr Glass Mfg. Co.*, 699 F.2d 330, 333 (6th Cir. 1983) ("[A]mendments to pleadings, particularly where there is no surprise to the adversary party, are viewed with

liberality by the courts."). "To deny a motion to amend, a court must find at least some significant showing of prejudice to the opponent." *Duggins v. Steak N' Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

"[W]hen a Rule 15 motion is brought after the court-ordered deadline, the court must conduct a 'good cause' analysis under Rule 16 to determine if amendment of the scheduling order is appropriate." *Shank*, 329 F.R.D. at 613. "The 'good cause' standard requires a demonstration that the existing schedule 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Mallak v. Aitkin Cty.*, 2015 WL 2250494, at *6 (D. Minn. Mar. 4, 2015) (quoting *Burris v. Versa Products, Inc.*, 2009 WL 3164783, at *4 (D. Minn. Sept. 29, 2009)).

## ARGUMENT

As detailed below, Plaintiffs recently (and belatedly) obtained new, previously unavailable evidence during the discovery process in this case that necessitates adding Mr. Surnow as an additional Plaintiff and putative class representative in the proposed TAC. Given that this new evidence was withheld by Defendant[5] and its agent SFG for months, and only recently located and produced to Plaintiffs' counsel, justice requires affording Plaintiffs an opportunity to add Mr.

---

[5]    Including by failing to respond to Plaintiffs' RFPs during the time that Plaintiffs were permitted to amend their pleadings. Decl. ¶¶ 7, 9, 10, 13.

Surnow to the case in an amended pleading. This Motion is not the product of any bad faith or undue delay on the part of Plaintiffs,[6] the claim for relief that Mr. Surnow pleads is certainly not futile, and Defendant would suffer no prejudice if the amendment is allowed. The Court should therefore modify the operative schedule order pursuant to Rule 16(b) and grant Plaintiffs leave to file the proposed TAC pursuant to Rule 15.

## I.     The Addition of Mr. Surnow as a Named Plaintiff Will Protect the Interests of Putative Class Members.

As a threshold matter, the addition of Mr. Surnow as a named Plaintiff and putative class representative, to serve alongside Plaintiffs Schreiber, Colony, and Vredeveld, will protect the interests of all putative Class members and is appropriate under the circumstances of this case.

"In the context of class actions, courts have historically permitted the replacement or addition of class representatives simply by amending the complaint." *Chu v. Wells Fargo Invs., LLC*, 2009 WL 3061974, at *1 (N.D. Cal. Sept. 24, 2009) (citing, generally, MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.26). As a Michigan District Court has recognized, a "proposed amendment adding a new named plaintiff is 'a common and normally an unexceptional ('routine') feature

---

[6]     Rather, again, it was Defendant that withheld this information, failing to produce the contract with SFG until its second production of responsive documents on June 19, 2023. Decl. ¶ 13.

of class action litigation [ ] in federal courts.'" *In re Gen. Motors Air Conditioning Marketing and Sales Practices Litig.*, 2020 WL 3571716, at *2 (E.D. Mich. 2020) (quoting *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006) ("Substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ('routine') feature of class action litigation . . . in the federal courts[.]"). *See also Turrey v. Vervent, Inc.*, 2021 WL 5042120, at *2 (S.D. Cal. Oct. 28, 2021) ("[T]he substitution of named plaintiffs in class action cases is ordinary."); *Smith v. Leis*, 2009 WL 1687945, at *1-2 (S.D. Ohio, June 12, 2009) (granting plaintiffs' motion for leave to amend the complaint to add two plaintiffs).

Thus, "when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests." *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017); *see also id.* ("[C]ourts not only may, but *should*, respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative.") (quoting *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006)). *See also Lin v. Crain Comm. Inc.*, 2020 WL2043527, at *1 (E.D. Mich. Apr. 27, 2020) (same).

Plaintiffs Schreiber, Colony, and Vredeveld remain able and willing to represent putative Class members, but recently obtained third-party discovery has raised a question concerning their ability to represent certain putative Class members whose Private Reading Information was transmitted to CRI during the relevant time period. The current Plaintiffs and their counsel believe that the discovery process, by the time it completes, will ultimately reveal that all of Plaintiffs' information, and that of all other Michigan subscribers to Defendant's publications, was disclosed by Defendant to multiple third parties during the relevant time period. Nonetheless, to ensure that the interests of all putative Class members are adequately protected given recent developments, and in order to help facilitate a resolution to this action at the parties' upcoming mediation, Plaintiffs respectfully request that the Court permit Mr. Surnow to be added as an additional named Plaintiff and putative Class representative to serve alongside Plaintiffs Schreiber, Colony, and Vredeveld.

In keeping with the standards set forth in Rules 15 and 16, as discussed further below, permitting an amendment to add an additional named plaintiff and class representative is a common practice at this stage of the litigation – and, in this case in particular, permitting such an amendment will ensure the full and adequate protection of the putative Class.

## II.     Good Cause Exists to Modify the Operative Scheduling Order Pursuant to Rule 16(b)

From the start of this case, Plaintiff has been diligent in complying with the Court's scheduling order—engaging in discovery and actively prosecuting this matter from the outset.[7] Despite his best efforts, Plaintiff did not have sufficient information to request the amendment proposed in this Motion until after the deadline to amend the pleadings.[8]

Pursuant to the Court's scheduling order, the pleadings were to be amended by April 6, 2023. *See* ECF No. 23. Discovery commenced in January 2023, and a motion to dismiss was thereafter filed and briefed. *See* ECF Nos. 23-25, 30-31. While the motion to dismiss was pending, the Parties began to actively engage in the discovery process, and exchanged numerous written discovery requests. Plaintiffs also served subpoenas on numerous third parties identified in Defendant's document production to obtain the materials Defendant indicated it no longer possessed, as well as other relevant materials. *See, e.g.*, Decl. ¶¶ 12, 16; Exs. 9, 12.

---

[7]     For example, Plaintiffs issued their first set of discovery requests on January 11, 2023. Decl. ¶ 4.

[8]     Defendant first named SFG on its March 16, 2023 amended disclosures, which alone would not have permitted Plaintiffs enough time to issue a subpoena and have it due *prior* to the amended deadline. Decl. ¶ 10. Defendant finally provided its first responsive documents on April 7, 2023, *after* the deadline to amend pleadings. Decl. ¶ 11. And this set of documents failed to include the SFG contract. Decl. ¶ 13. Defendant failed to include the SFG contract, which it was required to provide, until its second production of documents on June 19, 2023, now months past the deadline to amend. *Id.*

One recipient of a subpoena was SFG, who on October 10, 2023, less than 45 days ago (after exhaustive meet and confer efforts between Plaintiffs' counsel and SFG's counsel), produced to Plaintiffs' counsel a copy of a server log file that Plaintiffs had formally requested from SFG in a subpoena issued to SFG approximately four months earlier (on June 1, 2023) and that SFG had for months maintained no longer existed.[9] Decl. ¶¶ 12, 14, 15; Exs. 9-11. In fact, the server log file was only produced to Plaintiffs' counsel after Plaintiffs served a notice of inspection of premises to SFG in order to find the log file themselves. Decl. ¶¶ 16, 17. The server log file ultimately produced by SFG reflected the transmission of a June 2013 Mayo subscriber list to CRI on June 23, 2016, squarely within the class period. Decl. ¶ 17. Upon receiving the log file, Plaintiffs' counsel immediately requested that SFG produce the June 2013 subscriber file. Decl. ¶ 18. Numerous additional meet and confer calls and e-mails were thereafter exchanged, and ultimately the June 2013 transmission file was produced to Plaintiffs' counsel by Mayo in redacted form (after SFG had transferred the file to Mayo to facilitate its production to Plaintiffs' counsel). *Id.*

---

[9]     Moreover, Defendant was required to provide this information in response to Plaintiffs' initial January 11, 2023 requests for production of documents. Plaintiffs' RFPs specifically defined Defendant to include its agents, such as SFG, so that Defendant was required to provide responsive documents to Plaintiffs after retrieving them from SFG. Decl. ¶¶ 4, 6; Ex. 3.

Upon receiving the June 2013 transmission file on October 26, 2023, which does not contain the Private Reading Information of any of the current Plaintiffs, Plaintiffs' counsel began diligently communicating with and investigating the potential claims of other Michigan-based subscribers to Defendant's publication, including those who had subscribed to it during the 2013 time period. Decl. ¶ 20. Plaintiffs' counsel engaged in these efforts while also simultaneously continuing to work towards a resolution to the case with the assistance of Judge Rosen following the unsuccessful mediation on October 27, 2023. Decl. ¶ 21. On November 6, 2023, approximately two weeks ago, these efforts resulted in Mr. Surnow, a subscriber to *Mayo Clinic Health Letter* in 2013 whose customer number appears on the June 2013 subscriber file transmitted to CRI during the class period, retaining Plaintiffs' counsel to represent him in this case as a plaintiff and additional class representative. Decl. ¶ 20.

After being retained by Mr. Surnow, Plaintiffs' counsel immediately initiated meet-and-confer process with Defendant regarding the filing of the proposed TAC, through Judge Rosen, the parties' chosen mediator who will oversee the parties' upcoming December 11-12, 2023 mediation sessions. Decl. ¶ 21. On November 17, 2023, after extensive back and forth between Plaintiffs' counsel and both Defendant's counsel and Judge Rosen, and with Judge Rosen conferring independently with each side concerning the proposed amendment, Defendant's

counsel advised Plaintiffs' counsel that Defendant would not consent to the proposed amendment. Decl. ¶¶ 21, 22.

Thus, despite their diligence in prosecuting this matter, Plaintiffs and their counsel could not have met the deadline to amend the pleadings. The information warranting the amendment was obtained through the discovery process after the current deadline for amending the pleadings, through no fault of Plaintiffs or their counsel. *See* Background, *supra*.  Accordingly, good cause exists to permit Plaintiffs to amend the scheduling order for the limited purpose of allowing them to file an amended complaint that adds Mr. Surnow to this case as an additional named Plaintiff and putative class representative. The proposed amendment will protect the interests of all members of the Class, as well streamline this litigation and promote judicial efficiency by avoiding the need for Mr. Surnow to file a separate class action arising out of the same conduct on behalf of the same putative Class.

Accordingly, good cause exists for the Court to modify the operative scheduling order to permit Plaintiffs' proposed amendment pursuant to Rule 16(b).

## III.    Justice Requires Granting Plaintiffs Leave to File the Proposed TAC Pursuant to Rule 15(a)(2)

"The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel." *American Family Mut. Ins*., 705 F.3d 339, 348 (8th Cir. 2013) (citing *Foman*, 371 U.S. at 181-82). "Thus, amendments under the rule are to be liberally granted where necessary to bring about

23

the furtherance of justice and where the adverse party will not be prejudiced." *Id*. (citation and quotations omitted).

A motion to amend should be denied only for reasons *not* present here, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *See Foman*, 371 U.S. at 182. However, "[n]ot all of the factors merit equal weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003). "Prejudice is the 'touchstone of the inquiry under rule 15(a).'" *Id*. (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)). *See also Lurschat v. General Bearing Corp.*, 2007 WL 2080302, at *2 (E.D. Mich. Jul. 19, 2007) ("[U]nless undue prejudice to opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." (quoting *Howey v. U.S.*, 481 F.2d 1187, 1190 (9th Cir. 1973))).

*First*, Plaintiffs' proposed amendment will not cause any undue prejudice to Defendant. *See Foman*, 371 U.S. at 182. "'Prejudice' in the context of Rule 15 means more than the inconvenience of having to defend against a claim. It requires something more substantial." *Cutsinger v. Humphrey*, 2015 WL 6750786, at *2 (E.D. Mich. Nov. 5, 2015). And where, as here, "[t]he factual and legal allegations in the proposed Amended Complaint are largely the same as those included in the

original Complaint," amendment is non-prejudicial. *Kittle v. Am.'s Test Kitchen LP*, 2019 WL 6496596, at *1 (E.D. Mich. Dec. 3, 2019) (granting leave to amend complaint to add two plaintiffs as class representatives); *see also Lin*, 2020 WL 2043527, at *2 (granting leave to amend to add two plaintiffs, concluding that, "[s]ince the factual and legal allegations in the Second Amended Complaint are the same as those in the First Amended Complaint, the Court finds [defendant] will not be unduly prejudiced if it allows [plaintiff] leave to file a Second Amended Complaint"). Moreover, Defendant has been aware of the facts giving rise to the proposed TAC since the outset of this case; indeed, Mayo, through SFG acting as its agent, transmitted the subscriber file containing Mr. Surnow's Personal Reading Information (along with tens of thousands of other Michigan residents' Personal Reading Information) to CRI on June 24, 2016. Inexplicably, Plaintiffs only learned of this transmission from the log file produced to Plaintiffs by SFG on October 10, 2023, less than 45 days ago, and only obtained the June 2013 subscriber file (the transmission of which is reflected in the log file) on October 26, 2023, about three weeks ago – despite having specifically requested all such log files and transmission files in discovery, from both Mayo and SFG, several months earlier in June. Because none of the facts giving rise to the requested amendment are a surprise to Defendant,

Defendant cannot show that it would suffer any "significant prejudice" from the filing of the proposed TAC. *See Duggins*, 195 F. at 834.[10]

Furthermore, adding Mr. Surnow as an additional named Plaintiff and putative class representative at this time will not require any further modification of the current case schedule. No discovery or dispositive motion deadlines have passed, and all such deadlines remain months away. *See* ECF No. 23; *see also Gilliam v. Addicts Rehab. Ctr. Fund*, 2006 WL 1049352, at *2 (S.D.N.Y. Apr. 19, 2006) ("In class actions, plaintiffs may add or modify class representatives during pre-class certification discovery."); *Smith v. Martorello*, 2022 WL 2705510, at *3 (D. Or. June 8, 2022) ("Moving to amend is not prejudicial when discovery has not closed, there is no pending trial date, and the case as a whole remains in its early stages.") (citation and internal quotations omitted). Mr. Surnow, as with each of the current Plaintiffs, is willing to participate in accelerated discovery to ensure compliance with the discovery deadline. Plaintiffs' counsel is already working to ascertain and propose deposition dates for the current Plaintiffs, and will do the same for Mr. Surnow if this Motion is granted. Mr. Surnow is also prepared to produce and serve documents responsive to any discovery requests served by Defendant within 30 days. And while

---

[10]    Moreover, no new claims are added in the proposed SAC. *See, e.g.*, *Kittle*, 2019 WL 6496596, at *1 (finding no prejudice to defendant where plaintiff sought "to add two new named Plaintiffs" and the "factual and legal allegations in the proposed Amended Complaint are largely the same as those included in the original Complaint").

conducting discovery concerning Mr. Surnow's claim will involve a modest amount of time and expense by Defendant, it will surely not unduly prejudice Defendant. "Expending 'time, effort and money' to litigate a matter, without more, does not constitute prejudice." *In re Gen. Motors Ignition Switch*, 2017 WL 5504531, at *2.

Nor is the proposed amendment futile. *See Foman*, 371 U.S. at 182. Far from it, in fact. In its opinion denying Defendant's motion to dismiss (*see* ECF No. 45), this Court has already found that the allegations of the FAC – which, again, are the same as the allegations made by all of the Plaintiffs in the proposed TAC (as well as the same as the allegations made by the current Plaintiffs in the operative SAC, the filing of which Defendant consented to) – adequately stated a claim for relief under the PPPA.

Finally, the instant Motion is not the product of any "undue delay, bad faith or dilatory motive on the part of the movant, [or] repeated failure to cure deficiencies by amendments previously allowed[.]" *See Foman*, 371 U.S. at 182. As described *supra*, Plaintiffs immediately commenced discovery. Plaintiffs served Defendant with their First RFPs on January 11, 2023. *See* Decl. ¶ 4; Ex. 3. Specifically, the RFPs sought information related to the transmission of subscriber lists conveyed to third parties during the class period, including those made by Defendant's agents, which includes SFG. *Id.* Plaintiffs' January 11, 2023 RFPs thus necessarily included a request for SFG server log files reflecting transmissions of subscriber lists to third

parties and the 2013 subscriber file that was transmitted to CRI during the class period. And as previously discussed, upon obtaining (belatedly) the server log file from SFG reflecting the transmission of the June 2013 subscriber file to CRI, Plaintiffs' counsel immediately requested and thereafter obtained (on the day before the parties' first session of mediation before Judge Rosen) the transmitted June 2013 file. And upon reviewing the June 2013 subscriber file and determining that the current Plaintiffs' Private Reading Information does not appear in it, Plaintiffs' counsel immediately began communicating with and investigating the potential claims of other Michigan-based subscribers whose Private Reading Information does appear in the file. Immediately after being retained by Mr. Surnow, Plaintiffs' counsel commenced a thorough meet-and-confer process with Defendant, including through Judge Rosen, in an effort to obtain Defendant's consent to the filing of the proposed TAC.

And promptly after being advised that Defendant would not consent to the amendment, Plaintiffs' counsel prepared and filed the instant Motion. By any reasonable measure, Plaintiffs were diligent, not dilatory, and acted with expediency, not undue delay, in seeking the proposed amendment, which could not have been made at the time Plaintiffs filed the operative SAC (which occurred months before they obtained the server log file or the 2013 subscriber file giving rise to the proposed

amendment sought in this Motion).[11] Finally, the proposed amendment is not being requested for any improper purpose.

Notably, other courts presiding over similar PPPA motions have granted plaintiffs' motions for leave to amend to add or substitute class representatives in circumstances similar to those presented here. *See Kittle*, 2019 WL 6496596, at *1; *Lin*, 2020 WL 2043527, at *2. This Court should reach the same conclusion and permit the addition of Mr. Surnow as an additional named Plaintiff and putative class representative.

Because each of the *Foman* factors is satisfied, Plaintiffs should be granted leave to file the proposed TAC pursuant to Rule 15(a) (2).

---

[11]    The modest, approximately three week delay in moving to amend the complaint after obtaining the 2013 subscriber file was attributable to the time-consuming process of investigating potential plaintiffs who can fully and adequately protect the interests of the Class and meeting and conferring with Defendant's counsel concerning the proposed amendment through Judge Rosen (the parties' mediator), all while double-tracking the extensive ongoing settlement discussions being overseen by Judge Rosen. *See In re Gen. Motors Ignition Switch*, 2017 WL 5504531, at *2 (rejecting defendant's argument that "Plaintiffs were not sufficiently diligent in proposing the new representatives," and concluding that "Plaintiffs had to 'know' was not only that there were new potential Plaintiffs, but also that there was need to fill a class representative gap; from that standpoint, the Court is not prepared to say that Plaintiffs were insufficiently diligent[.]"). This is a far cry from the sort of *undue* delay or *dilatory* motive that warrants denying leave to amend. "[I]t is well-settled that delay alone is not a sufficient reason for denying leave." *Moore*, 790 F.2d at 562. "The delay must have resulted in prejudice to the party opposing the motion." *Id*. "Bad faith exists under Rule 15 when a party intends 'to deceive, harass, mislead, delay, or disrupt.'" *Martorello*, 2022 WL 2705510, at *4.

## **CONCLUSION**

For the foregoing reasons, good cause exists to modify the operative scheduling order pursuant to Rule 16(b), and justice requires granting Plaintiffs leave to file the proposed Third Amended Complaint in the form attached hereto as **Composite Exhibit 1** (both a clean copy and a copy reflecting changes from the operative SAC in redline). The Motion should be granted in its entirety.

Dated: December 4, 2023

Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs, excluding the words excluded from the word count limit under W.D. Mich. LCivR 7.2(b)(i) & 7.3(b)(1), used 7,267 words in Plaintiffs' foregoing brief.[12] Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated: December 4, 2023          Respectfully submitted,

                                 */s/ E. Powell Miller*
                                 E. Powell Miller (P39487)
                                 **THE MILLER LAW FIRM, P.C.**
                                 950 W. University Drive, Suite 300
                                 Rochester, MI 48307
                                 Tel: 248-841-2200
                                 epm@millerlawpc.com

---

[12] Plaintiffs acknowledge that this Motion may be determined to be a non-dispositive motion. *See* W.D. Mich. LCivR 7.2(a) (enumerating certain dispositive motions, though noting that the list is not intended to be exhaustive). As such, Plaintiffs are contemporaneously-filing a motion for enlargement of word count.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com