# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER; RICHARD COLONY; and KAY VREDEVELD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | Case No. 2:22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou |

**DECLARATION OF E. POWELL MILLER IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE <u>PLAINTIFFS' THIRD AMENDED COMPLAINT</u>**

I, E. Powell Miller, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Founding Partner of The Miller Law Firm, P.C., located in Rochester and Detroit, Michigan, and am counsel of record for Plaintiffs Jeffrey Schreiber, Richard Colony, and Kay Vredeveld ("Plaintiffs") in this action. I am a member in good standing of the Michigan Bar and a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2. I make this declaration in support of Plaintiffs' Motion for Leave to File

1

Plaintiffs' Third Amended Complaint filed herewith.

3. On September 26, 2022, Plaintiffs initiated this action with the filing of the Class Action Complaint. ECF No. 1.

4. On January 11, 2023, Plaintiffs served Defendant with Plaintiffs' First Set of Interrogatories ("ROGs") and First Set of Requests for Production ("RFPs"). *See* **Exhibit 3** (all exhibits referenced herein are attached as exhibits to Plaintiffs' Brief in Support of their Motion for Leave to File their Third Amended Complaint).

5. On January 17, 2023, the Parties attended and participated in a 26(f) status conference, and, following the conference, the Court entered a Case Management Order for this case. ECF No. 23.

6. Plaintiffs' First RFPs included requests for all information relevant to the claims raised by Plaintiffs here. Specifically, the RFPs sought information related to the transmission of subscriber lists conveyed to third parties during the class period. Plaintiffs' RFPs specifically defined Defendant to include its agents, such as SFG, so that Defendant was required to provide responsive documents to Plaintiffs after retrieving them from SFG. *See* RFP Definition 3. Plaintiffs' RFPs thus necessarily included a request for SFG server log files reflecting transmissions of subscriber lists to third parties and the 2013 subscriber file that was transmitted to CRI during the class period.

7. On February 10, 2023, Defendant served written responses to the

2

discovery requests but did not produce any documents. **Exhibit 4**.

8. On February 23, 2023, Defendant served its Initial Disclosures. **Exhibit 5**.

9. On March 16, 2023, Defendant served its amended initial disclosures, which first provided SFG's identity as a person likely to have discoverable information. This was the first time that Plaintiffs had been provided any information as to SFG. **Exhibit 6**.

10. Defendant refused to produce any documents because it, in part, insisted on the entry of a protective order prior to any production. Therefore, the Parties agreed to the parameters of ESI protocol and a proposed protective order and filed it with the Court on March 16, 2023. ECF Nos. 36-38.

11. Following entry of the Protective Order, on April 7, 2023, Defendant provided some responsive materials to Plaintiffs' first request for production of documents. **Exhibit 7**.

12. Plaintiffs diligently worked through first party discovery and, on June 1, 2023, Plaintiffs served a subpoena on SFG. **Exhibit 9**.

13. Defendant later provided its second set of responsive documents on June 19, 2023, and this production included Defendant's contract with SFG. **Exhibit 8**.

14. On July 21, 2023, SFG provided written responses and asserted written

3

objections to the subpoena, along with a limited production of responsive materials. **Exhibit 10**. In response to request numbers 5, 16, and 18-19 of Plaintiffs' subpoena, SFG did not produce or disclose the existence of any server log files or the June 2013 subscriber file transmitted by SFG to CRI. *Id.*

15. Plaintiffs acted diligently upon review and receipt of this information to further pursue discovery from SFG. Plaintiffs contacted Defendant and specifically requested that Defendant procure responsive materials from SFG, in accordance with Plaintiffs' RFPs. However, Defendant refused to obtain these responsive materials from SFG even though Plaintiffs pointed out that the materials in SFG's possession would necessarily have been in Defendant's custody or control because SFG was an agent of Defendant. **Composite Exhibit 11**.

16. Plaintiffs ultimately recently obtained third-party discovery from SFG, LLC ("SFG"), an agent of Mayo Foundation for Medical Education and Research ("Mayo") who maintained Mayo's customer database and disclosed subscriber lists on Mayo's behalf, which indicates that SFG transmitted, on Mayo's behalf, a Mayo subscriber list to a company called Commerce Register, Inc. ("CRI") on June 23, 2016, squarely within the applicable class period. This discovery was spurred by SFG's production to Plaintiffs' counsel of a server log file that reflects the activity on SFG's server housing Mayo's data during the class period. Although Plaintiffs requested a copy of this log file in their subpoena issued to SFG on June 1, 2023,

SFG consistently denied being in possession of such a file for several months, including after multiple meet and confer efforts by Plaintiffs' counsel. In response to these denials, Plaintiffs' counsel served a subpoena for inspection of premises on SFG, setting a date for Plaintiffs' counsel and a digital forensics firm selected by Plaintiffs' counsel to inspect the actual server at SFG's headquarters in Big Sandy, Texas in order to locate the server's log file that reflects the activity on the server during the class period. **Exhibit 12**.

17. Shortly thereafter, on October 10, 2023, SFG's counsel notified Plaintiffs' counsel that it had located the log file, which had been in its possession all along, and produced the file to Plaintiffs' counsel—the log file reflects, *inter alia*, a transmission of a Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to CRI on June 23, 2016. **Exhibit 13.**

18. Following Plaintiffs' counsel's discovery of the June 23, 2016 transmission of a subscriber list to CRI, Plaintiffs' counsel diligently sought a copy of the transmitted list from both SFG and Mayo. *See* **Exhibit 14**. The list was ultimately produced to Plaintiffs' counsel on October 26, 2023 by Mayo, after Mayo had received the list from SFG and redacted the names and addresses that appear on it. The redacted list produced to Plaintiffs' counsel did not redact the account numbers of the persons whose names and addresses appear on it.

19. Although the current Plaintiffs' Private Reading Information (as defined in the operative Second Amended Complaint) appears on other subscriber lists, including a list transmitted to the Salvation Army on June 20, 2016 which contains Plaintiff Vredeveld's Personal Reading Information, none of the current Plaintiffs' Personal Reading Information appears on the list that SFG transmitted to CRI on June 23, 2016.

20. Thus, immediately after obtaining a copy of the list transmitted to CRI on June 23, 2016, Plaintiffs' counsel worked diligently to investigate the potential claims of numerous other individuals in Michigan who had contacted them about this litigation, including persons in Michigan who had subscribed to Mayo's publication during the time period that would likely have resulted in their inclusion on the transmitted list. As a result of those efforts, Plaintiffs' counsel were recently retained by an individual named Michael Surnow, a Michigan resident whose Personal Reading Information appears in file transmitted by CRI on June 23, 2016 (as confirmed by the inclusion of Mr. Surnow's account number on the list), to represent him as a plaintiff and additional putative class representative in this action.

21. In an effort to avoid disrupting the parties' ongoing settlement discussions, Plaintiffs' counsel contacted the parties' mediator, the Hon. Gerald Rosen (Ret.), immediately after being retained by Mr. Surnow to request that Judge Rosen facilitate a meet and confer between Plaintiffs' and Defendant's counsel

concerning the filing of the proposed Third Amended Class Action Complaint ("TAC") (which adds Mr. Surnow as an additional plaintiff and class representative). Plaintiffs' counsel sent a copy of the proposed TAC, in clean and redlined versions, to Judge Rosen, who in turn transmitted those documents to Defendant's counsel. Numerous meet and confers between Plaintiffs' counsel and Judge Rosen, Judge Rosen and Defendant's counsel, and Plaintiffs' counsel and Defendant's counsel then followed.

22. On November 17, 2023, following a November 15, 2023 telephonic meet and confer during which Plaintiffs' counsel sought Defendant's concurrence in the instant Motion, Defendant's counsel indicated that it would oppose the instant motion for leave to file the proposed TAC.

Dated: December 4, 2023    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
aravindran@hedinhall.com

*Counsel for Plaintiffs and the Putative Class*