# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

The undersigned counsel certifies that Plaintiffs' counsel communicated with counsel for Defendant, via email on February 14 through February 16, 2024, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; counsel for Defendant has communicated that Defendant does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiffs' Brief in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin LLP as Class Counsel; (4) appoint Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow as the Class Representatives for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.[1]

---

[1]    The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

1

Dated:  February 16, 2024          Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiffs' Attorneys

E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Proposed Class Counsel*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.    Does the proposed Settlement Class meet Fed. R. Civ. P. 23's requirements for class certification for settlement purposes?

**Plaintiffs' Answer: Yes.**

2.    Should Plaintiffs' Counsel be appointed as Class Counsel?

**Plaintiffs' Answer: Yes.**

3.    Should Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow be appointed as the Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4.    Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiffs' Answer: Yes.**

5.    Does the Notice Plan satisfy the requirements of Fed. R. Civ. P. 23 and Due Process?

**Plaintiffs' Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*,
     521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*,
     133 S. Ct. 1884 (2013)

*Coulter-Owens v. Time, Inc.*,
     308 F.R.D 524 (E.D. Mich. 2015)

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
     722 F.3d 838 (6th Cir. 2013)

*UAW v. Gen. Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011)

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     BACKGROUND ............................................................................5

        A.    Michigan's Preservation of Personal Privacy Act.................5

        B.    Pre-Filing Investigation ........................................................6

        C.    History of the Litigation and Settlement Negotiations.........7

        D.    Class Counsel's History Litigating Michigan PPPA Claims ..............10

III.    KEY TERMS OF THE SETTLEMENT .......................................14

IV.     THE PROPOSED CLASS IS APPROPRIATE FOR
        CERTIFICATION FOR SETTLEMENT PURPOSES.................20

        A.    The Numerosity Requirement Is Satisfied ..........................21

        B.    The Commonality Requirement Is Satisfied ........................21

        C.    The Typicality Requirement Is Satisfied..............................23

        D.    The Adequacy Requirement Is Satisfied ..............................24

        E.    The Proposed Settlement Class Meets Rule 23(b)(3) Requirements ...26

              1.    Common Questions Predominate ...............................26

              2.    A Class Action Is a Superior Mechanism.................27

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS
        COUNSEL ....................................................................................28

VI.     PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE ..........28

        A.    The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval..30

        B.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary
              Approval ...............................................................................31

              1.    There Is No Risk of Fraud or Collusion. ...................31

2.    Litigation Through Trial Would Be Complex, Costly, and Long. ...........................................................................31

3.    Discovery Allowed Plaintiffs to Intelligently Negotiate the Settlement.................................................................................32

4.    Plaintiffs Would Face Real Risks if the Case Proceeded. ........33

5.    Proposed Class Counsel and Class Representative Support the Settlement.................................................................................35

6.    The Reaction of Absent Class Members...................................35

7.    The Settlement Serves the Public Interest. ..............................35

VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE ........................................................................37

VIII. CONCLUSION...............................................................................38

iv

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................. 20, 24, 26, 27

*Amgen Inc. v. Connecticut Retirement Plans and Tr. Funds*,
   133 S. Ct. 1184 (2013) ......................................................................... 20

*Armijo v. Bronson Methodist Hospital*,
   991 N.W.2d 593 (Mich. 2023) .............................................................. 34

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ............................................................... 24

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016) .................................................. 11

*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ............................................... 5, 11

*Boelter v. Hearst Commc'ns, Inc.*,
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) .............................................. 11, 12

*Coulter-Owens v. Rodale, Inc.*,
   No. 14-cv-12688 (E.D. Mich.) .......................................................... 3, 24

*Coulter-Owens v. Time, Inc.*,
   308 F.R.D 524 (E.D. Mich. 2015) ................................................ 20, 22, 27, 28

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
   No. 11-cv-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ........................... 18

*Curry v. SBC Commc'ns, Inc.*,
   250 F.R.D 301 (E.D. Mich. 2008) ........................................................ 21

*Edwards v. Hearst Commc'ns, Inc.*,
   2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ........................................ 2, 3, 12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ....................................................................... 36, 37

*Gilkey v. Central Clearing Co.*,
   202 F.R.D. 515 (E.D. Mich. 2001) ....................................................... 23

*Gottsleben v. Informa Media, Inc.*,
   2023 WL 4397226 (W.D. Mich. July 7, 2023) ......................................... 34

*Horton v. GameStop, Corp.*,
   380 F. Supp. 3d 679 (W.D. Mich. 2018) ............................................... 6, 12

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) .......................................................... 21, 23

*In re Cardizem CD Antitrust Litigation*,
   218 F.R.D. 508 (E.D. Mich. 2003) ....................................................... 36

*In re Packaged Ice Antitrust Litig.*,
   2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ....................................................29

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013)................................................................ 20, 21, 27

*Int'l Union v. Ford Motor Co.*,
   2006 WL 1984363 (E.D. Mich. July 13, 2006) ...................................................24

*Kain v. The Economist Newspaper NA, Inc.*,
   No. 4:21-cv-11807 (E.D. Mich.).........................................................................3, 13

*Kotila et al. v. Charter Financial Publishing Network, Inc.*,
   No. 1:22-cv-00704-HYJ-RSK (W.D. Mich.)......................................... 16, 17, 19

*Krassick v. Archaeological Inst. of Am.*,
   No. 2:21-cv-180, 2022 WL 2071730 (W.D. Mich. June 9, 2022) (Jarbou, J.).....13

*Leonhardt v. AvrinMeritor, Inc.*,
   581 F. Supp. 2d 818 (E.D. Mich. 2008)...............................................................31

*Loftus v. Outside Integrated Media, LLC*,
   No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)......................................... 3, 10, 13

*Machesney v. Lar-Bev of Howell, Inc.*,
   317 F.R.D. 47 (E.D. Mich. 2016) ........................................................................26

*McDonald v. Asset Acceptance LLC*,
   296 F.R.D. 513 (E.D. Mich. 2013) ......................................................................21

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*,
   No. 15-cv-05671 (S.D.N.Y.)...............................................................................3, 13

*Moeller v. American Media, Inc.*,
   235 F. Supp. 3d 868 (E.D. Mich. 2017)..............................................................3, 11

*Moeller v. American Media, Inc.*,
   No. 16-cv-11367 (E.D. Mich.)...............................................................................3

*Moeller v. The Week Publications, Inc.*,
   No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023)....................................................3

*Moeller v. Wk. Publications, Inc.*,
   646 F. Supp. 3d 923 (E.D. Mich. 2022)...............................................................18

*Moeller v. Wk. Publications, Inc.*,
   649 F. Supp. 3d 530 (E.D. Mich. 2023)...............................................................17

*Palmer Park Square, LLC v. Scottsdale Insurance Company*,
   878 F.3d 530 (6th Cir. 2017)................................................................................12

*Parker v. Time Warner Ent. Co., L.P.*,
   239 F.R.D. 318 (E.D.N.Y. 2007) .........................................................................22

*Perlin v. Time, Inc.*,
   No. 16-cv-10635 (E.D. Mich.)...............................................................................2

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007)................................................................................27

*Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666 (E.D. Mich. 2022)
   586 F. Supp. 3d 666 (E.D. Mich. 2022) ......................................................... 12, 13

*Pratt v. KSE Sportsman Media, Inc.*,
   No. 1:21-cv-11404, 2023 WL 5500832 (E.D. Mich. Aug. 25, 2023) .................22

*Pratt v. KSE Sportsman Media, Inc.*,
   No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024).................3, 13

*Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*,
   672 F. Supp. 1009 (W.D. Mich. 1987) ..............................................................22

*Ruppel v. Consumers Union of United States, Inc.*,
   No. 16-cv-02444, (S.D.N.Y.) .............................................................................4

*Sheick v. Auto. Component Carrier, LLC*,
   2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ..................................................31

*Sims v. Pfizer, Inc.*,
   2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ..................................................36

*Strano v. Kiplinger Washington Editors, Inc.*,
   No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023)..............................................3, 13

*Taylor v. Trusted Media Brands, Inc.*,
   No. 16-cv-01812 (S.D.N.Y.) ...............................................................................4

*UAW v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007)..................................................................... passim

*Vassalle v. Midland Funding LLC*,
   708 F.3d 747 (6th Cir. 2013)..............................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ................................................................................21, 26

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2010)..............................................................................27

**Statutes**

M.C.L. § 445.1712 ..................................................................................................5

M.C.L. § 445.1715 ..................................................................................................5

Michigan Preservation of Personal Privacy Act ....................................................1

28 U.S.C. § 1715....................................................................................................38

84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988) .......................................1

85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) .............................................1

**Other Authorities**

*Eisenberg & Miller, Incentive Award to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L.Rev. 1303 (2006) ............................................................18

MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004)................................29

NEWBERG ON CLASS ACTIONS, § 11.41 (4th ed. 2002) ...........................................28

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................8

Fed. R. Civ. P. 15(a)(1).................................................................................8

Fed. R. Civ. P. 23 ................................................................................. passim

Fed. R. Civ. P. 23(a)....................................................................................20

Fed. R. Civ. P. 23(a)(1)................................................................................21

Fed. R. Civ. P. 23(a)(2)................................................................................21

Fed. R. Civ. P. 23(a)(3)................................................................................23

Fed. R. Civ. P. 23(a)(4)................................................................................24

Fed. R. Civ. P. 23(b)....................................................................................26

Fed. R. Civ. P. 23(b)(3)........................................................................ passim

Fed. R. Civ. P. 23(c)(2)(B)...........................................................................37

Fed. R. Civ. P. 23(e)(1)(B)...........................................................................37

Fed. R. Civ. P. 23(e)(2)................................................................................29

Fed. R. Civ. P. 23(e)(2)(D)...........................................................................29

Fed. R. Civ. P. 23(f)....................................................................................34

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv)................................................................28

Fed. R. Civ. P. 23(g)(1)(B)...........................................................................28

Fed. R. Civ. P. 26 .........................................................................................9

M.C.R. 3.501(A)(5)......................................................................................11

## I.    INTRODUCTION[2]

In this putative class action, Plaintiffs allege that Defendant disclosed records reflecting that Plaintiffs and Defendant's other Michigan-based customers had purchased subscriptions to *Mayo Clinic Health Letter* to third parties, in violation of Michigan's Preservation of Personal Privacy Act (the "PPPA"), H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989). After extensive litigation and contentious settlement negotiations, Plaintiffs and their counsel ("Proposed Class Counsel") have negotiated a settlement that, if approved by the Court, will provide substantial monetary relief to each of the 62,746 Michigan residents who comprise the Settlement Class.

Pursuant to the Settlement Agreement, Defendant has agreed to establish an all-cash, non-reversionary Settlement Fund in the amount of $52,500,000.00 (fifty-two million five-hundred thousand dollars), from which each Settlement Class Member (except for any who request for exclusion from the Settlement) will <u>automatically</u> receive (i.e., without having to file a claim form) a *pro rata* cash payment of approximately $540.00 to $700.00.

---

[2]    Unless otherwise defined herein, all capitalized terms appearing herein have the meanings ascribed to them in the Settlement Agreement.

1

The Settlement is the product of a robust pre-filing investigation and nearly a year and a half of litigation, during which time Plaintiffs' counsel briefed numerous motions, prepared multiple pleadings, conducted extensive party and third-party discovery (including the issuance of over 30 third-party subpoenas), and engaged with experts in preparation for class certification and trial. After closely analyzing the comprehensive (and in many cases voluminous) materials obtained in discovery, concerning every aspect of this case, Plaintiffs' counsel was well positioned to intelligently explore resolution on behalf of the Settlement Class. Plaintiffs' counsel ultimately negotiated the Settlement after several months of arm's-length negotiations between the Parties, including three full-day mediations with The Hon. Gerald E. Rosen (Ret.)—former Chief Judge of the Eastern District of Michigan, now a mediator at JAMS (Detroit)).

Notably, the $52.5 million Settlement presently before the Court for approval outperforms every prior PPPA settlement in terms of both the total recovery and per-class member recovery—by a wide margin. *See, e.g.*, *Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-09279 (S.D.N.Y.) ($50,000,000 settlement on behalf of a class comprised of over 1.9 million persons, representing largest aggregate recovery through settlement of a PPPA case prior to the instant Settlement); *Perlin v. Time, Inc.*, No. 2:16-cv-10635 (E.D. Mich. July 5, 2018) (approving class settlement to pay between $25-50 per claimant); *Coulter-Owens v. Rodale, Inc.*, No. 2:14-cv-

12688 (E.D. Mich. May 3, 2016) (approving class settlement paying roughly $42 per claimant); *Moeller v. Am. Media, Inc.*, No. 2:16-cv-11367 (E.D. Mich. June 8, 2017) (approving PPPA class settlement paying roughly $100 per claimant); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022) (approving PPPA class settlement paying roughly $50 per claimant); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 (E.D. Mich. Mar. 16, 2023) (approving PPPA class settlement paying roughly $261 per claimant); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Moeller v. The Week Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement for a settlement class that included 14,503 persons and paid each class member approximately $415). Moreover, unlike many prior PPPA settlements, the Settlement here does not require the submission of claim forms, and instead provides <u>automatic</u> payments to all Settlement Class Members. *See, e.g.*, *Edwards*, No. 15-cv-09279 (requiring claim form); *Moeller v. American Media, Inc.*, No. 16-cv-11367 (E.D. Mich.) (same); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671 (S.D.N.Y.) (same); *Ruppel v.*

*Consumers Union of United States, Inc.*, No. 16-cv-02444, (S.D.N.Y.) (same); and *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812 (S.D.N.Y.) (same).

Moreover, continued litigation would have posed many significant risks of non-recovery to the Settlement Class, further underscoring the strength of the Settlement. Defendant asserted 12 affirmative defenses to Plaintiffs' claims in its Answer to the First Amended Complaint (*see* ECF No. 50, PageID.2639-41), and has also indicated that, if this case had not settled, it would have opposed class certification on a number of grounds. If any one of Defendant's affirmative defenses or arguments in opposition to class certification had succeeded, Settlement Class Members would have recovered nothing.

The automatic relief secured by the Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and the Settlement's terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23. Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Fed. R. Civ. P. 23(b)(3); (3) appoint E. Powell Miller of the Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin LLP as Class Counsel; (4) appoint Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow as the Class Representatives for the Settlement Class; and (5) approve the Notice Plan for the

Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement ("Proposed Notice"),[1] and direct distribution of the Proposed Notice.

## II.   BACKGROUND

### A.  Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Third Amended Complaint (ECF No. 65) ("TAC"). As such, the PPPA (as it existed until July 30, 2016) provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA effective July 31, 2016, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when

---

[1]      These are attached as Exhibits B-D to the Settlement Agreement.

Plaintiffs' claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

### B.  Pre-Filing Investigation

Class Counsel conducted an exhaustive pre-filing investigation, beginning in December 2020, concerning Mayo's (and other defendants') subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period. With respect to the instant matter in particular, prior to filing suit, Class Counsel investigated every aspect of the factual and legal issues underlying Plaintiffs' claims, including:

- Researching the nature of Defendant's business, its practices of selling newsletters, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of *Mayo Clinic Health Letter* subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto; and

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period, and analyzing the arguments for the applicability of tolling pursuant to Michigan Supreme Court's administrative orders issued during the COVID-19 pandemic (the "COVID Orders").

*See* Declaration of Frank S. Hedin in Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement ("Hedin Decl.") ¶ 16; Declaration of E. Powell Miller in Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action Settlement ("Miller Decl.") ¶ 5.[2] As a result, Class Counsel developed a viable theory of liability for a PPPA claim against Defendant and prepared a thorough Complaint against Defendant. Hedin Decl. ¶ 17; *see also* Miller Decl. ¶ 6.

### C.  History of the Litigation and Settlement Negotiations

On September 26, 2022, Plaintiff Schreiber filed a Class Action Complaint against Defendant. ECF No. 1. The material allegations of the complaint centered on Defendant's alleged disclosure of its customers' personal information and reading

---

[2]      The Miller and Hedin Declarations are attached hereto as **Exhibits A** & **B**, respectively.

choices to third parties before July 30, 2016, in violation of the PPPA. On January 3, 2023, Plaintiff Schreiber filed a First Amended Class Acton Complaint pursuant to Fed. R. Civ. P. 15(a)(1). ECF No. 19. Thereafter, the Court entered a Case Management Order (ECF No. 23), and the Parties began conducting significant written and document discovery, which included the exchange of thousands of pages of documents and voluminous electronically stored information, and the issuance of over 30 third-party subpoenas by Plaintiffs. Hedin Decl. ¶ 19; Miller Decl. ¶ 8. On January 17, 2023, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the First Amended Complaint failed to state a claim upon which relief could be granted. ECF Nos. 24-25. On July 13, 2023, after full briefing, the Court issued an opinion and order denying Defendant's motion to dismiss in its entirety. ECF Nos. 45-46.

On June 26, 2023, one of the third parties subpoenaed by Plaintiffs produced a document in response to Plaintiffs' subpoena concerning Defendant's transmission of a subscriber list that occurred on or about June 20, 2016, squarely within the relevant time period. Hedin Decl. ¶ 22. Thus, on July 27, 2023, Plaintiff Schreiber filed a Second Amended Complaint, which added Plaintiffs Vredeveld and Colony (persons who appeared on that list) as plaintiffs and putative class representatives. ECF No. 49. On August 10, 2023, Defendant filed its Answer to the Second Amended Complaint, which denied the allegations generally and asserted 12

affirmative defenses to liability, including that the claims were time-barred. ECF No. 50. Later, on February 9, 2024, Plaintiffs Schrieber, Vredeveld, and Colony filed the operative Third Amended Complaint, which added Plaintiff Surnow (who appears on an additional subscriber list identified through discovery) as a plaintiff and putative class representative. ECF No. 65.

From the start, the Parties engaged in direct communication, and pursuant to their obligations under Fed. R. Civ. P. 26, discussed resolution. *See* Hedin Decl. ¶ 25; Miller Decl. ¶ 14. On April 17, 2023, the Parties participated in an early settlement conference before Magistrate Judge Kent in Grand Rapids, which was unsuccessful. *See* Hedin Decl. ¶ 26; Miller Decl. ¶ 15. Later on, on October 27, 2023, the parties participated in a full-day mediation with Judge Rosen in Detroit, during which they made substantial progress but failed to reach a settlement. *See* Hedin Decl. ¶ 27; Miller Decl. ¶ 16. Then, on December 11 and 12, 2023, the Parties participated in two additional full-day mediations with Judge Rosen in New York, where further progress was made, and after which the proposed settlement was reached. *See* Hedin Decl. ¶ 28; Miller Decl. ¶ 17. In preparation for these mediation sessions, the Parties conducted extensive analysis of the size and parameters of the potential class, which included highly technical work performed by a database management expert hired by Proposed Class Counsel, and of the strengths and weaknesses of their respective cases. *See* Hedin Decl. ¶ 29; Miller Decl. ¶ 18.

Plaintiffs' counsel also prepared comprehensive mediation statements setting forth Plaintiffs' position on the various merits and class-related issues in dispute in advance of each of these sessions of mediation. *Id.* In the weeks following the New York mediation, the Parties drafted and executed the Settlement Agreement, attached to the Miller Decl. as Ex. 1 thereto, conducted a competitive bidding process and selected a proposed Settlement Administrator (Kroll Settlement Administration LLC ("Kroll")), and worked together to finalize the Settlement Class List, which included the assistance of Plaintiffs' database management expert. *See* Hedin Decl. ¶ 30; Miller Decl. ¶ 19.

### D.  Class Counsel's History Litigating Michigan PPPA Claims

The unprecedented result here would not have been possible without the significant investments of time and resources in the prosecution of PPPA actions over the past decade by Class Counsel—providing knowledge and experience, and developing the body of PPPA jurisprudence necessary to achieve the Settlement Agreement.[3] Class Counsel's accumulated knowledge and experience, in a niche area of law, was vital to prosecuting this litigation and to obtain the result achieved

---

[3]    For example, in granting final approval to a similar class in *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022), the Honorable Mark A. Goldsmith commended the work of the attorneys representing the class – the same counsel here – and noted that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* **Exhibit D** hereto, Aug. 8, 2022 Hearing Tr. at 7:13-17.

here.

Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged PPPA violations. *See* Hedin Decl. ¶ 3. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. *Id*. Despite the uncertainty, Class Counsel litigated numerous PPPA issues of first impression, such as: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Rule 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. Miller Decl. ¶ 24. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016). Class Counsel then conducted vigorous discovery, including in-depth research into data industry practices, such as data appending and data cooperatives, and ultimately third-party discovery from those companies. *Id*. ¶ 25. Through that discovery, Class Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id*. Class Counsel won a motion for summary judgment in *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). *Id*. ¶ 26. This summary judgment victory provided a roadmap to liability for publishers based on the above data industry

11

practices. *Id.*

After the Michigan legislature amended the PPPA, effective July 31, 2016, to make "actual damages" a prerequisite to stating a claim and remove a prevailing plaintiff's entitlement to statutory damages, Class Counsel successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. Hedin Decl. ¶¶ 4-5. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (holding amended version of the PPPA does not apply to claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date).

And throughout all of that prior litigation, it was assumed that PPPA cases were governed by a 3-year statute of limitations. Hedin Decl. ¶ 8; *see, e.g.*, *Hearst*, 269 F. Supp. 3d at 189; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, Class Counsel later recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), and relevant Michigan authority, established a basis for applying a six-year limitation period to PPPA claims, and thus provided an avenue for class recovery under the original PPPA even as long as six years after a defendant's pre-July 31, 2016 disclosure practices. *Id.* ¶ 9. After conducting extensive pre-suit investigative analysis, Class Counsel initiated litigation with the six-year limitation period as its foundation. *Id.* ¶¶ 10-11. Through Class Counsel's advocacy, in *Pratt*

*v. KSE Sportsman Media, Inc.*, Judge Ludington issued a first-of-its-kind published opinion, finding that a six-year statute of limitations applies to PPPA claims.[4] *Id.* ¶ 12; *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 673-75 (E.D. Mich. 2022). Other Michigan courts soon followed in accord. *Id.* ¶ 13; *see, e.g.*, *Krassick v. Archaeological Inst. of Am.*, No. 2:21-cv-180, 2022 WL 2071730, at *3 (W.D. Mich. June 9, 2022) (Jarbou, J.). The groundbreaking litigation led by Class Counsel paved the way for this and other PPPA cases. *See, supra*, *e.g.*, *Loftus*, *Kain*, *Strano*, *Moeller*.

Moreover, for this and other PPPA cases filed within the same timeframe, the case relied on Class Counsel's analysis and advocacy in regards to the COVID Orders. Miller Decl. ¶ 21; Hedin Decl. ¶ 36. Originally, Class Counsel determined that the latest that a suit could reasonably be filed was by July 31, 2022. *Id.* But, through extensive research and legal analysis, Class Counsel determined that the 101 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. *Id.* Class Counsel consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in COVID Orders cases which have now been taken up by the Michigan Supreme Court. *Id.* Again, it

---

[4]     And as noted above, Judge Ludington recently finally approved the class action settlement in *Pratt*. *See Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement which pays each class member approximately $415).

was through the efforts and legal acuity of Class Counsel that even permitted a viable

theory of recovery for the Settlement Class. *Id.*

## III.   KEY TERMS OF THE SETTLEMENT

**Class Definition.** The "Settlement Class" is:

> [A]ll Michigan direct purchasers of *Mayo Clinic Health
> Letter* whose information was included on the following
> lists obtained in discovery: MAYO_Schreiber_000533
> and MAYO_Schreiber_000519. As revealed in discovery,
> these       lists       (MAYO_Schreiber_000533       and
> MAYO_Schreiber_000519)  identify  62,746  Michigan
> direct purchasers of *Mayo Clinic Health Letter* whose
> Michigan Subscriber Information was transmitted to third
> parties between June 16, 2015 and July 30, 2016.[5]

Settlement Agreement ¶ 1.31. These individuals are reflected on the Class List,

attached to the Settlement Agreement as Exhibit A.[6]

**Monetary Relief.** Defendant has agreed to establish a $52,500,000 non-

reversionary Settlement Fund from which all Settlement Class Members who do not

exclude themselves shall automatically receive a *pro rata* cash payment – expected

---

[5]      Excluded from the Settlement Class are (1) any Judge or Magistrate presiding
over this Action and members of their families; (2) the Defendant, Defendant's
subsidiaries, parent companies, successors, predecessors, and any entity in which the
Defendant or its parents have a controlling interest and their current or former
officers, directors, agents, attorneys, and employees; (3) persons who properly
execute and file a timely request for exclusion from the class; and (4) the legal
representatives, successors or assigns of any such excluded persons.

[6]      Plaintiffs can submit the full list of Class members for an in-camera review
upon request of the Court.

to be between approximately $540.00 to $700.00[7] after payment of notice, administrative expenses, attorneys' fees, and service awards to the proposed Class Representatives. Settlement Agreement ¶¶ 1.33, 2.1. No portion of the Settlement Fund will revert back to Defendant. *Id.* ¶ 2.1(h).

**Release.** In exchange for providing the monetary relief set forth above, Defendant (and all "Released Parties" — defined in Settlement Agreement ¶ 1.27) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' subscription information. *See* Settlement Agreement ¶¶ 1.26-1.28 for full release language.

**Notice and Administration Expenses.** The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Settlement Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. Settlement Agreement ¶¶ 1.29, 1.30, 1.33. The parties have selected

---

[7]     $540.00 is the minimum amount that each Settlement Class Member will receive from the Settlement. However, given the passage of time between the pre-July 31, 2016 time period and the present, and the medical-focused subject matter of Defendant's publication at issue, Plaintiffs believe that many Settlement Class Members are deceased, and that the many such deceased Class Members may not have estates to which settlement payments may be made. Thus, the number of Settlement Class Members between which the net Settlement Fund will ultimately be split is likely to be significantly less than the 62,746 persons who comprise the entire Settlement Class.  And Plaintiffs' counsel estimate that this reduction in the number of Settlement Class Members capable of receiving payment from the Settlement will result in each such Settlement Class Member receiving approximately $540 to $700 each.

Kroll to serve as Settlement Administrator.  *See* Hedin Decl. ¶ 30 & n.2; Miller Decl. ¶ 19 & n.2.

**Service Awards.** The Settlement Agreement provides that Plaintiff Schreiber may request a service award of up to $7,500 from the Settlement Fund, and that Plaintiffs Colony, Vredeveld, and Surnow may request service awards of up to $5,000 each from the Settlement Fund, in recognition of their time, effort, and initiative in serving as representatives on behalf of the Settlement Class, assisting their counsel during the litigation, and ultimately resolving the case on the terms set forth in the Settlement Agreement. Settlement Agreement ¶ 8.3; Hedin Decl. ¶¶ 40-46; Miller Decl. ¶¶ 38-44.[8]

However, in light of the concerns expressed by the Court regarding service awards of up to $5,000 being sought by the plaintiffs in *Kotila et al. v. Charter Financial Publishing Network, Inc.*, No. 1:22-cv-00704-HYJ-RSK (W.D. Mich.) (ECF No. 50 thereto, 1:22-cv-00704 PageID.1707-08), another PPPA matter presently before the Court at the preliminary approval stage of the class action settlement process, Plaintiffs' counsel promptly and thoroughly conferred with each

---

[8]    As the Settlement Agreement makes clear, these were the *maximum* amounts that the parties had agreed that Plaintiffs may ask the Court to award, and thus were not necessarily the amounts that they would actually have requested in advance of final approval. *See* Settlement Agreement ¶ 8.3 (providing that "Class Counsel . . . agrees to seek *no more than* [the specified] amount[s] from the Court as the service awards for the Class Representatives") (emphasis added).

of their clients on this issue in an effort to address the Court's concerns before filing the instant motion. Plaintiffs' counsel are pleased to report that their clients appreciate the Court's concerns and, notwithstanding the terms of paragraph 8.3 of the Settlement Agreement, hereby agree not to seek service awards in excess of the following amounts: $3,500 by Plaintiff Schreiber, $2,500 each by Plaintiffs Colony and Vredeveld, and $1,000 by Plaintiff Surnow.

If the reduced maximum amounts set forth above are ultimately approved by the Court at final approval, Plaintiffs would receive service awards that are between roughly 1.5 times greater (in the case of Plaintiff Surnow) and 5 times greater (in the case of Plaintiff Schreiber) than the amount that each Settlement Class Member is estimated to be paid from the Settlement. Such a disparity is reasonable and appropriate given Plaintiffs' significant contributions on behalf of the Settlement Class, and the fact that the Settlement would not have been possible without them. *See, e.g.*, *Moeller v. Wk. Publications, Inc.*, 649 F. Supp. 3d 530, 539 (E.D. Mich. 2023) (where requested service award was approximately 4 times greater than the amount each class member would recover, finding that the requested award "does not misalign the interests of Lead Plaintiff and the Class" and granting preliminary approval); *but see, e.g.*, *Kotila*, No. 1:22-cv-00704 PageID.1708 (expressing "concern" over the "significant disparity between the service awards to Plaintiffs and the expected recovery by each class member," where the settlement

17

agreement provided that each of the Plaintiffs may seek a service award of an amount roughly 19 times greater than the amount recovered by each class member); *Moeller v. Wk. Publications, Inc.*, 646 F. Supp. 3d 923, 927 (E.D. Mich. 2022) (same concern, where "the proposed service award is more than 20 times larger than the $248 that the unnamed class members would receive").  This is especially true in a case of this size, where the maximum amounts of the service awards that Plaintiffs may now request equate to between just 0.000019% (in the case of the $1,000 award that Plaintiff Surnow may request) and 0.000066% (in the case of the $3,500 award that Plaintiff Schreiber may request) of the $52.5 million Settlement Fund. *See, e.g.*, *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (noting that "a study on incentive awards for class action plaintiffs (also conducted by Eisenberg and Miller) found that . . . the mean incentive fee granted in class actions overall is .161% [of the total recovery]") (citing *Eisenberg & Miller, Incentive Award to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L.Rev. 1303, 1339 (2006)).

Moreover, the disparity among the amounts that each of the Plaintiffs may now request as service awards ($3,500 by Plaintiff Schreiber, $2,500 by Plaintiffs Colony and Vredeveld, and $1,000 by Plaintiff Surnow) appropriately accounts for

the varying degrees and durations of each of the Plaintiffs' involvement in this case.[9]
*See* Hedin Decl. ¶¶ 40-46 (describing each of the Plaintiff's involvement in the
litigation); Miller Decl. ¶¶ 38-44 (same); *see also, e.g.*, *Kotila*, No. 1:22-cv-00704
PageID.1708 (noting that "Plaintiff Craun was only recently added to the case
through Plaintiffs' amended complaint," and questioning why he should be entitled
to request a service award of the same amount as the original named plaintiff).

Accordingly, Plaintiffs respectfully submit that the maximum amounts that
each of them may now request as a service award (as reduced in the manner set forth
above) are fair and reasonable and should not stand in the way of preliminary
approval.

**Attorneys' Fees and Expenses.** As part of the Settlement Agreement,
Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in
an amount to be determined by the Court by petition. Class Counsel has agreed to
limit its request for fees, costs, and expenses to 35% of the Settlement Fund.

---

[9]     And to the extent the Court believes these reduced amounts are still too high,
the Court may further reduce them to any amount that it deems appropriate when it
resolves the motion for service awards that will be filed in advance of the final
approval hearing, without affecting the enforceability of the Settlement Agreement
or the finality of any judgment entered following final approval. *See* Settlement
Agreement ¶ 8.3 (providing that "[s]hould the Court award less than [the requested]
amount[s], the difference in the amount sought and the amount ultimately awarded
pursuant to this Paragraph shall remain in the Settlement Fund"); *id*. ¶ 9.2 (providing
that "the Court's failure to approve, in whole or in part, the . . . service award[s] set
forth in Paragraph 8 above shall not prevent the Agreement from becoming effective,
nor shall it be grounds for termination").

Settlement Agreement ¶¶ 1.33, 8.1; *see also infra* § VI.A (listing PPPA cases where fee requests of 35% or more were approved).

## IV.   THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Connecticut Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Also, because Plaintiffs seek certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615-16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

In the only PPPA case to reach decision on a contested class certification motion, Judge Steeh granted certification. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015). And similar classes have been certified for settlement

purposes in other PPPA cases. The proposed Settlement Class here likewise should be certified.

### A.  The Numerosity Requirement Is Satisfied

Numerosity is met when joining a large number of plaintiffs in one case would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). Only a reasonable estimate is required. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013). Here, there are 62,746 persons in the Settlement Class. Hedin Decl. ¶ 32; Miller Decl. ¶ 20. Thus, joinder would be impractical and numerosity is therefore satisfied.

### B.  The Commonality Requirement Is Satisfied

Commonality is satisfied under Rule 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). And even a single question will do. *See Whirlpool*, 722 F.3d at 582-83. Where a defendant engages in conduct that affects a group, one or more of the elements of the claim will generally be common to all affected persons. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1015 (W.D. Mich.

1987).

Here, Plaintiffs allege that all class members' claims hinge on two common questions, one factual and one legal: (1) whether Defendant disclosed its customers' personal reading information to third parties between June 17, 2016 and July 30, 2016; and (2) whether such disclosures violated the PPPA. Plaintiffs contend that both can be answered on a class-wide basis with common proof which will drive the litigation forward. *See, e.g.*, *Parker v. Time Warner Ent. Co., L.P.*, 239 F.R.D. 318, 329 (E.D.N.Y. 2007) (in a case about disclosure of plaintiff's statutorily-protected information without proper notification, commonality found where claims were based on same legal theory and factual question). Numerous courts have certified PPPA claims, finding commonality satisfied. *See Coulter-Owens*, 308 F.R.D. at 532-34 (litigation found to be "driven by issues that are common" to the entire class); *see also Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2023 WL 5500832, at *3 (E.D. Mich. Aug. 25, 2023) (finding commonality satisfied in PPPA case and preliminarily approving class settlement where "[b]oth questions are common to all members of the Class and can be answered on a class-wide basis with common proof which will drive the litigation forward").

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

### C.  The Typicality Requirement Is Satisfied

Typicality requires that a class representative has claims that are typical of those of other class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Am. Med. Sys.*, 75 F.3d at 1082. "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Plaintiffs allege that Defendant's disclosure of their subscription information was part of its standard business practice of disclosing its customers' subscription information to third parties without consent. TAC ¶¶ 1-10, 14-16, 53-60, 72-85. And this was true for that of all Settlement Class Members, who had their information disclosed to the same third parties and for the same purpose—and that these practices thus violated the PPPA. And to redress such violations, the PPPA authorizes each Settlement Class Member to recover the same statutorily-set damages ($5,000). Thus, Plaintiffs' pursuit of their own claims here will necessarily advance the interests of the Settlement Class, satisfying the typicality requirement. *See, e.g.,*

*Coulter-Owens*, 308 F.R.D. at 534-35.

### D. The Adequacy Requirement Is Satisfied

Class representatives under Fed. R. Civ. P. 23(a)(4) must fairly and adequately protect the interests of the class. In order to do so, "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006). The representative must be part of the class, possess the same interest, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007).

In this case, the TAC alleges that each of the Plaintiffs—like each Settlement Class Member—is a Michigan resident who purchased a *Mayo Clinic Health Letter* subscription from Defendant and had their subscription information disclosed to third parties without his or her consent. TAC ¶¶ 18-21, 53-60. Thus, Plaintiffs and Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA. As such, Plaintiffs do not have any interest antagonistic to those of the proposed Settlement Class.

Likewise, Class Counsel have extensive experience in litigating similar class actions. Miller Decl. ¶ 31; Hedin Decl. ¶ 44; Declaration of Philip L. Fraietta in Support of Plaintiffs' Unopposed Motion For Preliminary Approval of Class Action

Settlement ("Fraietta Decl."[10]) ¶¶ 4-5. They regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel. *Id.*; *see* Miller Decl., Ex. 2; Hedin Decl., Ex. 2; Fraietta Decl., Ex. 1. (Firm Resumes).

Class Counsel have devoted substantial resources to the preparation, prosecution, and resolution of this action, by investigating Plaintiffs' claims and that of the Settlement Class, obtaining, reviewing and analyzing discovery, retaining experts to analyze the voluminous data in this case, participating in multiple mediations, and ultimately, negotiating a settlement that provides the best ever per-class member recovery in a PPPA case, despite the substantial litigation risks that were present. Hedin Decl. ¶¶ 15-37; Miller Decl. ¶¶ 4-22. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Settlement Class throughout the settlement administration process. *Id.*

Because Plaintiffs and Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

---

[10] The Fraietta Decl. is attached hereto as **Exhibit C**.

### E.  The Proposed Settlement Class Meets Rule 23(b)(3) Requirements

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *see also Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 535 (E.D. Mich. 2013). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1.  Common Questions Predominate

Fed. R. Civ. P. 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes*, 564 U.S. at 349-60, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). In other words, where commonality is satisfied when there is a single factual or legal question

common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). As such, "cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Id.*

Here, Defendant's alleged common course of conduct presents multiple questions of law and fact that are central to liability, predominating over any issues affecting individual class members. Thus, courts have regularly found common questions to predominate over individual issues in the course of approving PPPA settlements. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 536. Defendant engaged in a single course of conduct with respect to all members of the Settlement Class, so their claims "will prevail or fail in unison"—thus, predominance is met. *Whirlpool*, 722 F.3d at 859.

### 2.  A Class Action Is a Superior Mechanism

A class action is also the superior means of adjudicating this case because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. A class action is preferred over small individual suits because it provides a mechanism through which individuals who may not otherwise have the opportunity to seek redress through litigation. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). Claims alleging a standard course of conduct are particularly well-suited for

27

class certification because they facilitate efficiency and uniformity. *Id*. As held in *Coulter-Owens*, "it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537.

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Fed. R. Civ. P. 23(g)(1)(B), "a court that certifies a class must appoint counsel . . . [to] fairly and adequately represent the interests of the class." The Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. *See* § IV.D, *supra*. And as a result of their zealous efforts in this case, they secured the best-ever per class member recovery in this PPPA case. Thus, the Court should formally appoint proposed Class Counsel as Class Counsel.

## VI.   PRELIMINARY SETTLEMENT APPROVAL IS APPROPRIATE

Settlement of class action suits is favored. NEWBERG ON CLASS ACTIONS, § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-

notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). A court makes an "initial evaluation" of the fairness of the proposed settlement. MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004).

Fed. R. Civ. P. 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, reviewing: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition, the Sixth Circuit has laid out its own factors to consider. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success

on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.*

### A.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiffs and Class Counsel have adequately represented the class, securing the best-ever per-class member recovery. *See* Introduction, *supra*.

<u>Second</u>, the Settlement was negotiated at arm's-length following multiple mediations with former Chief Judge Rosen, as mediator, after exchanging information sufficient to assess the strengths and weaknesses. *See supra*.

<u>Third</u>, the relief is not just adequate, it is exceptional. The Settlement Agreement provides for the automatic payment of approximately $540.00 to $700.00 to every Settlement Class Member, without the need for any of them to submit a claim form. Settlement Agreement ¶¶ 2.1-2.2. The percentage of the Settlement Fund that Plaintiffs' counsel intend to request as attorneys' fees (inclusive of costs) is consistent with the percentage of the funds sought by plaintiff's counsel and approved by courts in numerous prior PPPA settlements. *See supra*.

<u>Fourth</u>, the proposed Settlement treats Settlement Class Members equitably to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Settlement Agreement ¶ 2.1.

Finally, all terms affecting the Settlement Class are contained within the Settlement Agreement.

## B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval

All seven *UAW* factors favor approval or, at least, are neutral.

### 1. There Is No Risk of Fraud or Collusion.

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). Here, a non-collusive settlement was reached through arm's-length negotiations via multiple mediations with a neutral. *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

### 2. Litigation Through Trial Would Be Complex, Costly, and Long.

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, the Parties engaged in dispositive motion practice, discovery, and held

31

multiple private mediations. Hedin Decl. ¶¶ 19-29; Miller Decl. ¶¶ 8-10, 15-17. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including that the PPPA does not prohibit its conduct as alleged and that the claim is time-barred. Hedin Decl. ¶¶ 34-37. Class Counsel is also aware that Defendant would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). Hedin Decl. ¶ 37; Miller Decl. ¶ 36. Absent the Settlement, this would be lengthy and very expensive litigation.

Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement Agreement that provides immediate, certain, and *meaningful* relief to all Settlement Class Members, in a streamlined manner. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

### 3. Discovery Allowed Plaintiffs to Intelligently Negotiate the Settlement.

The third factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Prior to filing, Class Counsel conducted a wide-ranging investigation into Defendant's practices, described *supra*, and obtained several key documents evidencing those practices. *See* Hedin Decl. ¶¶ 16-17; Miller Decl. ¶¶ 5-6; *see also* Hedin Decl. ¶ 18 (Class Counsel's further investigation prior to filing

First Amended Complaint uncovering additional supporting documents). Moreover, during formal discovery and in settlement negotiations, Plaintiffs obtained wide-ranging discovery from Defendant and third parties on issues pertaining to class certification and the merits of the case. Hedin Decl. ¶¶ 22, 24, 31; Miller Decl. ¶¶ 18-19.

This information and material enabled Plaintiffs and their counsel to properly assess the strengths and weaknesses of the claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. Hedin Decl. ¶ 29; Miller Decl. ¶ 18. Class Counsel's experience in similar cases, and the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts here and the viability of their respective cases to make an intelligent analysis of the proposed settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4.  Plaintiffs Would Face Real Risks if the Case Proceeded.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiffs believe their case is strong, it is not without risk. Defendant has made clear that, absent a settlement, it will defend the case vigorously and move for summary judgment and contest class certification. *See* § VI.B.2, *supra*. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would only be reached after lengthy briefing. Defendant would

likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify.

Moreover, even if Plaintiffs survived all of those obstacles, they faced significant risk in recovering a classwide judgment. Indeed, this case presents a unique risk on statute of limitations questions, because its timeliness depends on the applicability of the Michigan Supreme Court's orders tolling the statute of limitations during the early days of the COVID-19 pandemic. TAC ¶ 1 n.2; *see also* Hedin Decl. ¶ 36; Miller Decl. ¶ 21. And while this Court has held that the Michigan Supreme Court's COVID tolling orders are applicable to a PPPA case, *see Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *3-4 (W.D. Mich. July 7, 2023), the constitutionality of those orders is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hospital*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). An adverse decision could have deprived the Settlement Class of any recovery whatsoever.

The risks of losing on the merits, of losing class certification, of maintaining certification through trial, and of collecting on any classwide judgment, were all significant hurdles to obtaining classwide relief in this case. Because the Settlement

eliminates these risks of non-recovery, this factor also favors preliminary approval.

### 5. Proposed Class Counsel and Class Representative Support the Settlement.

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both proposed Class Counsel and the Class Representatives support the Settlement. *See* Miller Decl. ¶¶ 34, 37; Hedin Decl. ¶¶ 39-42. This *UAW* factor, therefore, favors preliminary approval.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. Notice has not yet been disseminated, and the Settlement Class has accordingly not yet had an opportunity to voice any opposition to (or support for) the Settlement. Nonetheless, Plaintiffs and Class Counsel strongly support the Settlement, which they believe is fair, reasonable, and adequate and in the best interest of the Settlement Class. Accordingly, the sixth factor weighs in favor of preliminary approval.

### 7. The Settlement Serves the Public Interest.

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litigation*, 218

35

F.R.D. 508, 530 (E.D. Mich. 2003). The Settlement here accomplishes both.

First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Here, if the Settlement does not receive the Court's final approval, the Parties anticipate a complex and lengthy litigation that would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation"). Thus, by avoiding complex class action litigation that can consume a court's time and money, the Settlement furthers the public interest.

Second, the Settlement also serves the public interest by furthering the objectives of the Michigan legislature in enacting the PPPA. The PPPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. Class action litigation in this area is a means of safeguarding the privacy of readers under the PPPA, especially because some consumers may be unaware of the data sharing practices alleged here

(i.e., that Defendant disclosed its customers' personal reading information without their consent). This factor therefore supports preliminary approval.

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion, the Court should grant preliminary approval.

## VII.   THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B); *see also Eisen*, 417 U.S. at 173. Further, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B). Notice is "adequate if it may be understood by the average class member." NEWBERG, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, Kroll, the Settlement

Administrator, will send direct notice by U.S. mail to all Settlement Class Members for whom the Administrator has been able to identify a postal address which it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member. Settlement Agreement ¶ 4.1(b)(ii); Settlement Agreement Ex. C. If more than one postal address is identified, the Administrator will send the notice by U.S. mail to both addresses, and each notice will indicate the address to which the Settlement Class Member's cash award check will be sent. *Id.* ¶ 4.1(b)(iii). Next, for any Settlement Class Member for whom the Administrator is unable to identify at least one postal address, the Administrator will send notice via email. *Id.* ¶ 4.1(b)(iv); Settlement Agreement Ex. B. Further, the Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Settlement Agreement Ex. D), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address. *Id*. ¶ 4.1(c). Finally, the Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by CAFA, 28 U.S.C. § 1715. *Id*. ¶ 4.1(d).

## VIII. CONCLUSION

Based on the above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Preliminary Approval of the Settlement. A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class

Counsel, and approving the Proposed Notice of Settlement is submitted herewith (attached as **Exhibit E**).

Dated: February 16, 2024                    Respectfully submitted,


By: */s/ E. Powell Miller*
One of Plaintiffs' Attorneys

E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Proposed Class Counsel*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii), used 9,073 words in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated:  February 16, 2024                Respectfully Submitted,

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on February 16, 2024, I served the above and foregoing ***Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

<u>/s/ E. Powell Miller</u>
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200