# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, AND MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

### DECLARATION OF E. POWELL MILLER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, E. Powell Miller, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am the Founding Partner of The Miller Law Firm, P.C., located in Rochester and Detroit, Michigan, counsel of record for Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow ("Plaintiffs") in this action. I am a member in good standing of the Michigan Bar and am a member of the bar of this Court. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.     I make this declaration in support of Plaintiffs' unopposed motion for preliminary approval of class action settlement filed herewith.

1

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Parties'

Class Action Settlement Agreement, and the exhibits attached thereto.

4.      On September 26, 2022, Plaintiff Schreiber initiated this action with the

Class Action Complaint. ECF No. 1.

5.      Prior to the filing of the Complaint, Plaintiffs' counsel[1] conducted

comprehensive pre-filing investigations concerning every aspect of the factual and

legal issues underlying this action. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business, its practices of selling newsletters, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of *Mayo Clinic Health Letter* subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

---

[1]     E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin LLP (hereinafter "proposed Class Counsel").

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto; and

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period, and analyzing the arguments for the applicability of COVID-19 tolling.

6.     As a result of this thorough pre-filing investigation, proposed Class Counsel was able to develop a viable theory of liability for a PPPA claim against Defendant and prepare a thorough Complaint against Defendant.

7.     On January 3, 2023, Plaintiff Schreiber filed a First Amended Class Action Complaint pursuant to Fed. R. Civ. P. 15(a)(1). ECF No. 19.

8.     Thereafter, the Court entered a Case Management Order (ECF No. 23), and the Parties began conducting significant written and document discovery, which included the exchange of thousands of pages of documents and voluminous electronically stored information, and the issuance of over 30 third-party subpoenas by Plaintiffs.

9.     On January 17, 2023, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the First Amended Complaint failed to state a claim upon which relief could be granted. ECF Nos. 24-25.

10.     On July 13, 2023, after full briefing, the Court issued an opinion and order denying Defendant's motion to dismiss in its entirety. ECF Nos. 45-46.

11.    On July 27, 2023, Plaintiff Schreiber filed a Second Amended Complaint, which added Plaintiffs Vredeveld and Colony as plaintiffs and putative class representatives. ECF No. 49.

12.    On August 10, 2023, Defendant filed its Answer to the Second Amended Complaint, which denied the allegations generally and asserted 12 affirmative defenses to liability, including that the claims were time-barred. ECF No. 50.

13.    On February 9, 2024, Plaintiffs Schrieber, Vredeveld, and Colony filed the operative Third Amended Complaint, which added Plaintiff Surnow as a plaintiff and putative class representative. ECF No. 65.

14.    From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.

15.    On April 17, 2023, the Parties participated in an early settlement conference before Magistrate Judge Kent in Grand Rapids, which was unsuccessful.

16.    Later on, on October 27, 2023, the Parties participated in a full-day mediation with Judge Rosen in Detroit, during which they made substantial progress but failed to reach a settlement.

17.    Then, on December 11 and 12, 2023, the Parties participated in another two full-day mediations with Judge Rosen in New York, which ultimately

culminated in the proposed settlement.

18.     In preparation for each these mediation sessions, my co-counsel and I prepared detailed mediation statements outlining the strength of Plaintiffs' case and comparing this matter with other, previously settled PPPA cases against publishers, in order to properly evaluate any potential settlement proposals and structures. In advance of these mediation sessions, my co-counsel and I also thoroughly reviewed the voluminous discovery produced by Defendant and various third parties, and conducted extensive analysis of the size and parameters of the potential class (which included highly technical work performed by a database management expert hired by proposed Class Counsel) and the strengths and weaknesses of Plaintiffs' case (including, most notably, the applicability of COVID-19 tolling and the pending appeal before the Michigan Supreme Court concerning the same).

19.     In the weeks following the New York mediation, the Parties negotiated and finalized the full-form Settlement Agreement, attached hereto as **Exhibit 1**, conducted a competitive bidding process and selected a proposed Settlement Administrator – Kroll Settlement Administration LLC ("Kroll")[2] – and worked together to finalize the Settlement Class List, which included the assistance of Plaintiffs' database management expert.

---

[2]     Proposed Class Counsel conducted a competitive bidding process with the lowest bid being that tendered by Kroll. The bid is for $134,800, and this bid is a not to exceed price.

20.    The resulting $52,500,000 non-reversionary Proposed Settlement secures the best-ever recovery in a PPPA case, both in terms of absolute dollars and dollars per-class member. Based on the records obtained in discovery the proposed Settlement Class includes 62,746 direct purchasers whose information was included on the following lists obtained in discovery: MAYO_Schreiber_000533 and MAYO_Schreiber_000519. With a $52,500,000 non-reversionary Settlement Fund, each Class Member who does not exclude himself or herself from the Settlement will <u>automatically</u> receive a *pro rata* cash payment of approximately $540-700. Prior to this settlement, the best per-class member recovery in a PPPA case was in *Pratt v. KSE Sportsman Media, Inc.*, Case No. 1:21-cv-11404-TLL-PTM (E.D. Mich.), where the Parties reached a $9,500,000 settlement for a settlement class that included 14,503 persons and paid each class member approximately $420. Thus, the Proposed Settlement represents a, at least, more than 20% greater recovery per class member than the next best PPPA settlement.

21.    From the outset of the case, Plaintiffs and proposed Class Counsel recognized that the case presented a substantial and novel litigation risk pertaining to the applicability of COVID tolling to the statute of limitations. Specifically, at the time of filing, no court had ever considered whether the Michigan Supreme Court's orders tolling the statute of limitations during the early days of the COVID-19

pandemic were applicable to a PPPA case. Moreover, the constitutionality of those orders has been challenged and is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hosp.*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). Because the case was filed more than six years after the alleged unlawful disclosures, if this Court or the Michigan Supreme Court ultimately held that the COVID-19 tolling orders either do not apply to this case or are unconstitutional, the case would have been time-barred and the Settlement Class would have recovered nothing at all. Relying on this six-year period, proposed Class Counsel initially believed that the latest that a suit could reasonably be filed was by July 31, 2022. But, through extensive research and legal analysis, proposed Class Counsel determined that the 101 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. My co-counsel and I have actively consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in the COVID Orders cases which have now been taken up by the Michigan Supreme Court.

22.    And beyond the issue of tolling, proposed Class Counsel have been at the forefront of litigation brought under the Michigan PPPA, and thus the results obtained here derive from nearly a decade of efforts in this arena.

23.    Beginning in 2015, proposed Class Counsel began investigating and litigating cases against publishers for alleged violations of the Michigan Preservation of Personal Privacy Act (the "PPPA"). The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment.

24.    Despite the uncertainty, proposed Class Counsel took on the cases and litigated numerous issues of first impression under the statute, including, but not limited to: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Fed. R. Civ. P. 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. *See, e.g.*, *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016).

25.    Proposed Class Counsel conducted vigorous discovery in these cases, which included in-depth research into several data industry practices, including data appending and data cooperatives, and ultimately third-party discovery from those companies. Through that discovery, proposed Class Counsel amassed a wealth of institutional knowledge regarding the data industry.

26.    Next, proposed Class Counsel won a motion for summary judgment for the named plaintiff in the *Hearst* case. *See Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). The *Hearst* summary judgment victory provided a roadmap to liability for publishers based on the aforementioned data industry practices.

27.    Then, proposed Class Counsel were successful in arguing that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (holding amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016).

28.    In the aforementioned PPPA litigation, it had been assumed that PPPA cases were governed by a three-year statute of limitations. *See, e.g.*, *Hearst*, 269 F. Supp. 3d at 189; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, proposed Class Counsel recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017) established a basis for applying a six-year statute of limitations for PPPA claims, and therefore provided an avenue for class recovery under the original PPPA even as long as six years after a defendant's pre-July 31, 2016 disclosure practices. Thus, despite the uncertainty regarding the statute of limitations, proposed Class Counsel filed *Pratt v. KSE Sportsman Media, Inc.*, Case No. 1:21-cv-11404-

TLL-PTM (E.D. Mich.) on June 15, 2021.

29.    Assisted by proposed Class Counsel's dogged determination researching and briefing the issue, and as a matter of first impression, on February 15, 2022, the Honorable Judge Thomas L. Ludington held that plaintiffs may bring a claim under the PPPA until six years has elapsed from the time the wrong upon which the claim is based was done. *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022).

30.    On the strength of this opinion, proposed Class Counsel has successfully litigated numerous PPPA cases, being appointed as Class Counsel and obtaining final approval of class action settlement in the following: *Loftus v. Outside Integrated Media*, *LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)[3] (approving PPPA class settlement paying roughly $50 per claimant); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 PageID.1369 (approving PPPA class settlement paying roughly $261 per claimant); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Moeller v. The Week*

---

[3]    *See* Aug. 9, 2022 Final Fairness Hearing Transcript at 7:9-8:2 (commending work of counsel and noting that "the class has benefited in a concrete way" from the "very effective work" done by the plaintiff's counsel, "where the lawyers did produce significant results for the class") (a copy of the Transcript is attached as Exhibit D to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement).

*Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023) (approving class settlement paying roughly $248 per class member); *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement for a settlement class that included 14,503 persons and paid each class member approximately $415).

31.    My firm, The Miller Law Firm, P.C., is the leading class action firm in Michigan with more than $3 billion in settlements. I was the first and only class action attorney in Michigan to be elected by the judges of the Eastern District of Michigan to receive the Cook-Friedman Civility Award, which is given to one attorney per year. In 2020, I was recognized by Super Lawyers as the number one ranked attorney in Michigan. (*See* Firm Resume of The Miller Law Firm, P.C., a true and accurate copy of which is attached hereto as **Exhibit 2**). Recently, in another PPPA case, the Honorable Judge Thomas L. Ludington appointed me as class counsel. *See Pratt v. KSE Sportsman Media, Inc.*, 2023 WL 5500832, at *5 (E.D. Mich. Aug. 25, 2023) ("This Court agrees that E. Powell Miller of the Miller Law Firm, P.C., could best represent the class. He has invested significant time in the case, has extensive class-action experience, knows the applicable law, and is resourced to represent the class. Accordingly, E. Powell Miller will be appointed Class Counsel."). My firm has been appointed as class counsel in complex litigation in the Western District of Michigan and throughout the country. *See, e.g.*,

*Zimmerman v. 3M Co.*, Case 1:17-cv-01062-HYJ-SJB, ECF No. 649, PageID.27796 (appointing the Miller Law Firm, P.C. as Co-Lead Class Counsel in approving $54 million settlement in environmental action); *In Re: Ford Motor Co. F-150 and Ranger Truck Fuel Economy Marketing and Sales Practices Litigation*, Case No. 2:19-md-02901, ECF No. 55, PageID.1158 (E.D. Mich. Nov. 22, 2019) ("The Court concludes that E. Powell Miller with the Miller Law Firm is the applicant best able to represent the interests of the putative class based upon: E. Powell Miller and the Miller Law Firm's prior experience in handling class actions and other complex litigation, counsel's knowledge of the applicable law, the work that E. Powell Miller and the Miller Law Firm have done in identifying and investigating the potential claims in this action, and the resources that counsel will commit to representing the putative class. The Court also notes that half of the motions it reviewed explicitly recognized E. Powell Miller's qualifications and fitness for the position of interim counsel.").

32.    My co-counsel, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., a true and accurate copy of which is attached as Exhibit 1 to the Declaration of Philip L. Fraietta in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement). The firm regularly engages in major complex litigation involving consumer privacy,

including PPPA cases such as *Moeller v. American Media, Inc.*, No. 16-cv-11367 (E.D. Mich.); *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 (S.D.N.Y.); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671 (S.D.N.Y.); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, (S.D.N.Y.); and *Taylor v. Trusted Media Brands, Inc.*, No. 16-cv-01812 (S.D.N.Y.), has the resources necessary to conduct litigation of this nature, and has frequently been appointed lead class counsel by courts throughout the country. The firm has also been recognized by courts across the country for its expertise. *See* Ex. 3 hereto; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims . . . The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008."); *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, Dkt. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information stolen as a result).

33.    My co-counsel, Hedin LLP, formerly known as Hedin Hall LLP, also has significant experience in litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Hedin LLP, a true and

accurate copy of which is attached as Exhibit 2 to the Declaration of Frank S. Hedin in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement). The firm has been appointed class counsel by courts throughout the country, including in consumer protection class actions. *See Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions."); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming."). *See also* Declaration of Frank S. Hedin (Exhibit B to the unopposed Motion for Preliminary Approval of Class Action Settlement).

34.    The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of neutral mediators.

35.    Plaintiffs and proposed Class Counsel recognize that despite our belief in the strength of Plaintiffs' claims, and Plaintiffs' and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the

outcome uncertain.

36.     Plaintiffs and proposed Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiffs and the Settlement Class Members of any potential relief whatsoever. Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case. Plaintiffs and proposed Class Counsel are also aware that Defendant would continue to challenge liability, as well as assert a number of defenses. Defendant had indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiffs are aware that Defendant would continue to assert that the case is time-barred and would continue to assert that the PPPA does not prohibit the disclosure of the subscription information at issue (because the third-party recipients of the disclosures are Defendant's agents). Plaintiffs and proposed Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiffs are also aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play, it would argue—in both the trial and appellate courts— that the award of any statutory damages is not warranted or for a reduction of damages based on due process concerns. *See, e.g.*, *Rogers v. BNSF Railway Co.*, 2023 WL 4297654, at *13 (N.D. Ill. June 30, 2023)

(vacating jury's statutory damages award in statutory privacy class action and ordering a new trial on damages); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating and remanding district court's denial of post-trial motion challenging the constitutionality of statutory damages award in statutory privacy class action and ordering the district court to reassess the question with new appellate guidance).

37.    Plaintiffs and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

38.    In this litigation, each of the Plaintiffs contributed substantial effort to advance the interests of the Settlement Class. Specifically, each of the Plaintiffs worked with proposed Class Counsel to detail their subscription purchase history, including how they subscribed to the publications at issue; to inform proposed Class Counsel that they did not agree in writing or otherwise to allow Defendant to sell or disclose their Personal Reading Information; that they did not receive notice of such disclosures, nor were they aware of them at all. Moreover, each of the Plaintiffs worked with proposed Class Counsel to prepare at least one of the pleadings in the case and carefully reviewed them for accuracy and approved each before filing.

39.    Plaintiff Schreiber's involvement was particularly extensive. In addition to providing the assistance detailed above, he initiated the case by filing the

initial Complaint, and assisted my firm and my co-counsel in our pre-filing investigation.  Plaintiff Schreiber also actively conferred with Plaintiffs' counsel prior to and during the settlement conference before Judge Kent early in the case, in addition to the three sessions of mediation before Judge Rosen that ultimately led to the Settlement.

40.    In addition to providing the assistance detailed above, Plaintiffs Vredeveld and Colony were instrumental in providing my firm and my co-counsel with information concerning their subscription histories that allowed us to confirm that they were included on the list transmitted to The Salvation Army.  These Plaintiffs also assisted in preparing the second amended complaint and reviewing that pleading prior to its filing. Plaintiffs Vredeveld and Colony also actively conferred with Plaintiffs' counsel prior to and during the three sessions of mediation before Judge Rosen that ultimately led to the Settlement.

41.    In addition to providing the assistance detailed above, Plaintiff Surnow, although relatively new to the case, provided valuable information to my firm and my co-counsel concerning his subscription history that allowed us to confirm he had been included on the 2013 subscriber list transmitted to CRI on SFG's server during the class period.  He also assisted in preparing the operative third amended complaint and reviewed that pleading prior to its filing. Plaintiff Surnow also actively conferred with Plaintiffs' counsel prior to and during the second and third sessions of

mediation before Judge Rosen that ultimately led to the Settlement.

42.    Moreover, all of the Plaintiffs filed this case knowing it would invariably reveal their statutorily-protected status as subscribers to Defendant's publication, and kept in regular contact with proposed Class Counsel, including on matters of strategy, discovery, mediation, and the prospects of settlement.

43.    Plaintiffs also coordinated with proposed Class Counsel to respond to formal discovery, including searching for documents such as records pertaining to their magazine subscriptions, and were prepared to testify at deposition and trial, if necessary.

44.    I am of the opinion that Plaintiffs' active involvement in this case was critical to its ultimate resolution. They took their role as class representatives seriously, devoting time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representative, I do not believe such a strong result could have been achieved.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 16th day of February, 2024 at Rochester, Michigan.

*/s E. Powell Miller*
E. Powell Miller

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER; RICHARD COLONY; KAY VREDEVELD; and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | Case No. 2:22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br><br>**CLASS ACTION** |

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow ("Plaintiffs"); (ii) the Settlement Class (as defined herein); and (iii) Defendant, Mayo Foundation for Medical Education and Research ("Defendant" or "Mayo"). The Settlement Class and Plaintiffs are collectively referred to as the "Plaintiffs" unless otherwise noted. The Plaintiffs and the Defendant are collectively referred to herein as the "Parties." This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

A.    On September 26, 2022, following an extensive pre-filing investigation, Plaintiff Schreiber filed a putative class action in the United States District Court for the Western District of Michigan (the litigation here being the "Action"). The material allegations of the complaint

centered on Defendant's alleged disclosure of its customers' personal information and reading choices to third parties before July 30, 2016, which Plaintiffs claim is without permission and in violation of Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378 §§ 1-4, *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"). (ECF No. 1.)

      B.      On January 3, 2023, Plaintiff Schreiber filed a first amended complaint. (ECF No. 19.)

      C.      Thereafter, the Parties began conducting significant written and document discovery, which included the exchange of thousands of pages of documents and voluminous electronically stored information and the issuance of over 30 third-party subpoenas by Plaintiffs.

      D.      On January 17, 2023, Defendant filed a motion to dismiss the first amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), moving to dismiss the case on various grounds. (ECF Nos. 24-25.)

      E.      On July 13, 2023, the Court issued an opinion and order denying Defendant's motion to dismiss the first amended complaint. (ECF Nos. 45-46.)

      F.      On July 27, 2023, Plaintiffs Schreiber filed a second amended complaint, which added Plaintiffs Vredeveld and Colony as plaintiffs and putative class representatives. (ECF No. 49.)

      G.      On August 10, 2023, Defendant filed its answer to the second amended complaint. (ECF No. 50.) Defendant's answer denies nearly all of the second amended complaint's allegations and asserts 12 affirmative defenses to liability.

      H.      On February 9, 2024, Plaintiffs Schreiber, Vredeveld and Colony filed a third amended complaint, which added Plaintiff Surnow as a plaintiff and putative class

representative. (ECF No. 65.)

I.     The Parties engaged in extensive settlement negotiations throughout the litigation. The parties participated in an early settlement conference before Magistrate Judge Kent on April 17, 2023 in Grand Rapids, a full day of formal mediation before the Hon. Gerald E. Rosen (Ret.) on October 27, 2023 in Detroit, and two full days of formal mediation before Judge Rosen on December 11-12, 2023 in New York.

J.     In preparation for these sessions of mediation, the Parties conducted extensive analysis of the size and parameters of the potential class (which included highly technical work performed by a database management expert hired by Proposed Class Counsel (hereinafter "Class Counsel")) and of the strengths and weaknesses of their respective cases.

K.     As a result of the Parties' work during these sessions of mediation, and with the continued assistance of Judge Rosen, the Parties reached agreement on a class-wide resolution of the case, the terms of which are memorialized herein.

L.     Based on the information obtained during discovery and exchanged in advance of the sessions of mediations, the Parties understand that the Settlement Class includes 62,746 persons.

M.     At all times, Defendant has denied and continues to deny any wrongdoing whatsoever and has denied and continues to deny that it committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action and has opposed certification of a litigation class.  Defendant believes that the claims asserted in the Action against it do not have merit and that it would have prevailed at summary judgment, at class certification, and/or at trial.  Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded it is desirable and beneficial that the Action be fully

and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.  This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or with respect to the certifiability of a litigation class.

N.      Plaintiffs believe that the claims asserted in the Action against Defendant have merit and that they would have prevailed at summary judgment and/or trial.  Nonetheless, Plaintiffs and Class Counsel recognize that Defendant has raised factual and legal defenses that present a risk that Plaintiffs may not prevail.  Plaintiffs and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Defendant through a motion for summary judgment, discovery, class certification, trial, and any subsequent appeals.  Plaintiffs and Class Counsel also have taken into account the uncertain outcome and risks of litigation, especially in complex class actions, as well as the difficulties inherent in such litigation.  Therefore, Plaintiffs believe it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice.  Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs, the Settlement Class, and each of them, and Defendant, by and through its undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the

Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

<div align="center">**AGREEMENT**</div>

1.      **DEFINITIONS**.

As used in this Settlement Agreement, the following terms have the meanings specified below:

**1.1**      "**Action**" means *Schreiber et al. v. Mayo Foundation for Medical Education and Research*, Case No. 2:22-cv-00188-HYJ-RSK, pending in the United States District Court for the Western District of Michigan.

**1.2**      "**Alternate Judgment**" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Agreement and where none of the Parties elects to terminate this Settlement by reason of such variance.

**1.3**      "**Cash Award**" means the cash compensation, payable by the Settlement Administrator from funds provided by Defendant on a pro rata basis, that each Settlement Class Member who has not opted out of the Settlement shall be entitled to receive, which estimated amount shall be specified in the Notice.  Settlement Class Members shall have the option to elect to receive their Cash Awards via check or electronic means, provided however that the default payment method shall be check.

**1.4**      "**Claim Deadline**" means 11:59 p.m., Eastern Time, on the date by which Unidentified Class Members must submit Claim Forms (either electronically on the Settlement Website or by mailing in a paper Claim Form) to be eligible for the benefits described herein, which date and time shall be specified in the Notice.

**1.5**    "**Claim Form**" means the claim form attached hereto as Exhibit E, or its substantially similar form, as approved by the Court, that any Unidentified Class Members must complete and submit on or before the Claim Deadline to be eligible for the benefits described herein, which document shall be submitted to the Court when preliminary approval of the Settlement is sought.

**1.6**    "**Class Counsel**" means Frank S. Hedin and Arun G. Ravindran of Hedin LLP, E. Powell Miller of The Miller Law Firm, P.C., and Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A.

**1.7**    "**Class List**" means an electronic list or lists from Defendant's available records that includes the names, last known U.S. Mail addresses, and email addresses, to the extent available, belonging to Persons within the Settlement Class, which is attached hereto as Exhibit A, and which shall be provided to the Settlement Administrator with a copy to Class Counsel in accordance with Paragraph 4.1(a).

**1.8**    "**Class Representative**" means the named Plaintiffs in this Action, Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow.

**1.9**    "**Court**" means the United States District Court for the Western District Michigan, the Honorable Hala Y. Jarbou presiding, or any judge who shall succeed her as the Judge in this Action.

**1.10**    "**Defendant**" means Mayo Foundation for Medical Education and Research.

**1.11**    "**Defendant's Counsel**" means Gregory Karpenko and Anupama Sreekanth of Fredrikson & Byron P.A. and Michael Latiff of McDonald Hopkins PLC.

**1.12**    "**Effective Date**" means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

**1.13**    "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation.  The Settlement Fund shall be deposited by Defendant (and/or by Defendant's insurers on behalf of Defendant) into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less.  The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund.

**1.14**    "**Fee Award**" means the amount of attorneys' fees, costs, and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

**1.15**    "**Final**" means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

**1.16**    "**Final Approval Hearing**" means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the service awards to the Class Representatives.

**1.17**    "**Final Judgment**" means the Final Judgment and Order to be entered by the Court approving the Agreement after the Final Approval Hearing.

**1.18**    "**Michigan Subscriber Information**" means the combination of a Person's name, address in the State of Michigan, and information indicating that the Person purchased a subscription to *Mayo Clinic Health Letter*.

**1.19**    "**Notice**" means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, is consistent with the requirements of Due Process, Rule 23, and is substantially in the form of Exhibits B, C, and D hereto.

**1.20**    "**Notice Date**" means the date by which the Notice set forth in Paragraph 4.1 is completed, which shall be no later than twenty-eight (28) days after Preliminary Approval.

**1.21**    "**Objection/Exclusion Deadline**" means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be made, which shall be designated as a date no later than forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting the Fee Award are filed with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other date as ordered by the Court.

**1.22**    "**Person**" shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, and any business or legal entity and their

8

spouses, heirs, predecessors, successors, representatives, or assigns.  "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

 **1.23** "**Plaintiffs**" means Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow, and the Settlement Class Members.

 **1.24** "**Preliminary Approval**" means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

 **1.25** "**Preliminary Approval Order**" means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and directing notice thereof to the Settlement Class, which will be agreed upon by the Parties and submitted to the Court in conjunction with Plaintiffs' motion for preliminary approval of the Agreement.

 **1.26** "**Released Claims**" means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on the PPPA or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' personal information or Michigan Subscriber Information, including but not limited to all claims that were brought or

could have been brought in the Action relating to any and all Releasing Parties.

     **1.27**   "**Released Parties**" means Mayo Foundation for Medical Education and Research, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, insurers or excess insurers, reinsurers, retrocessionaires, licensors, licensees, associates, affiliates, employers, agents, consultants, independent contractors, including without limitation employees of the foregoing, owners, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

     **1.28**   "**Releasing Parties**" means Plaintiffs, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

     **1.29**   "**Settlement Administration Expenses**" means the expenses incurred by the Settlement Administrator in providing Notice (including CAFA notice), processing claims, responding to inquiries from members of the Settlement Class, mailing checks and related services, paying taxes and tax expenses related to the Settlement Fund (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in

connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants), as well as all expenses related to the resolution of any disputed claims by Judge Rosen (as described below in Paragraph 5.3).

1.30    "**Settlement Administrator**" means the administration company that has been selected jointly by the Parties and approved by the Court to perform the duties set forth in this Agreement, including but not limited to serving as Escrow Agent for the Settlement Fund, overseeing the distribution of Notice, as well as the processing and payments to the Settlement Class as set forth in this Agreement, handing all approved payments out of the Settlement Fund, and handling the determination, payment and filing of forms related to all federal, state and/or local taxes of any kind (including any interest or penalties thereon) that may be owed on any income earned by the Settlement Fund.  Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every member of the Settlement Class as defined herein to disclose all information required by the Settlement Administrator to perform the duties and functions ascribed to it herein, consistent with the written consent provisions of the PPPA.

1.31    "**Settlement Class**" means all Michigan direct purchasers of *Mayo Clinic Health Letter* whose information was included on the following lists obtained in discovery: MAYO_Schreiber_000533 and MAYO_Schreiber_000519.  As revealed in discovery, these lists (MAYO_Schreiber_000533 and MAYO_Schreiber_000519) identify 62,746 Michigan direct purchasers of *Mayo Clinic Health Letter* whose Michigan Subscriber Information was transmitted to third parties between June 16, 2016 and July 30, 2016.  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and

their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. The names and addresses of all Persons who fall within the definition of the Settlement Class are reflected on the Class List attached hereto as Exhibit A.

      **1.32**    "**Settlement Class Member**" means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

      **1.33**    "**Settlement Fund**" means the non-reversionary cash fund that shall be established by Defendant in the total amount of fifty two million five-hundred thousand dollars ($52,500,000.00 USD) to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon.  From the Settlement Fund, the Settlement Administrator shall pay all Cash Awards to Settlement Class Members, Settlement Administration Expenses, any service awards to the Class Representatives, any Fee Award to Class Counsel, and any other costs, fees or expenses approved by the Court.  The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the listed payments are made.  The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account.  The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement.  The payment of the Settlement Amount by, or on behalf of, Defendant and/or its insurers fully discharges the Defendant and the other Released Parties' financial obligations (if any) in connection with the Settlement, meaning that no Released Party shall have any other

obligation to make any payment into the Escrow Account or to any Class Member, or any other Person, under this Agreement.  The total monetary obligation with respect to this Agreement shall not exceed fifty two million five-hundred thousand dollars ($52,500,000.00 USD).

**1.34** "**Settlement Website**" means the dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including the Settlement Agreement and the long-form Notice, as well as web-based forms for Settlement Class Members and Unidentified Class Members to submit electronic Claim Forms, requests for exclusion from the Settlement, elect to receive Cash Awards by electronic means, and provide updated postal addresses to which Cash Awards should be sent after the Settlement becomes Final.

**1.35** "**Unidentified Class Member**" means a member of the Settlement Class for whom the Settlement Administrator has *not* been able to identify a postal address that it determines is reasonably likely to be the current place of residence for such member of the Settlement Class.

**1.36** "**Unknown Claims**" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.  Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF

KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2.    **SETTLEMENT RELIEF**.

    2.1    **Payments to Settlement Class Members**.

        **(a)**    Defendant shall pay or cause to be paid into the Escrow Account the amount of the Settlement Fund ($52,500,000.00), specified in Paragraph 1.33 of this Agreement, within twenty-eight (28) days after Preliminary Approval.

        **(b)**    Each Settlement Class Member shall receive as a Cash Award a *pro rata* portion of the Settlement Fund, calculated by the Settlement Administrator, after deducting all Settlement Administration Expenses, any Fee Award to Class Counsel, any service awards to the Class Representatives, and any other costs, fees, or expenses approved by the Court, unless the Settlement Class Member excludes himself or herself from the Settlement.

        **(c)**    Except for any Settlement Class Member for whom the Settlement Administrator is unable to identify a postal address or e-mail address that it determines is reasonably likely to be the current place of residence (or an active e-mail address) for such Settlement Class Member, after taking measures reasonably necessary to identify such an

address (as detailed further in Paragraph 4.1(b)), each Settlement Class Member will be sent via U.S. postal mail (and/or e-mail to the extent a postal address is unavailable for a Settlement Class Member) a copy of the Class Notice, which will also indicate the estimated amount of the Cash Award that the Settlement Class Member will be paid upon entry of Final Judgment approving the Settlement unless the Settlement Class Member opts out of the Settlement.

      **(d)**    *Payments to Identified Settlement Class Members*. After entry of Final Judgment approving the Settlement, a direct payment by check will be made to each Settlement Class Member who did not exclude himself or herself and for whom at least one postal address has been identified by the Settlement Administrator that the Settlement Administrator concludes is reasonably likely to reflect the current residence of such Settlement Class Member, after taking measures reasonably necessary to identify such an address, as set forth more fully in Paragraph 4.1(b); to the extent multiple such postal addresses are identified by the Settlement Administrator for a particular Settlement Class Member, such check shall be sent to the address that the Settlement Administrator concludes is the most likely among such multiple addresses to reflect the current residence of such Settlement Class Member.  The foregoing direct payment procedure shall apply for all Settlement Class Members for whom a postal address has been identified unless: (i) the Settlement Class Member submits an updated address to which his or her check should be sent on a web-based form on the Settlement Website, in which case such check will be sent to the updated address that was provided, or (ii) the Settlement Class Member elects to receive payment by electronic means by following the procedures on the Settlement Website to make such a request.

      **(e)**    *Payments to Unidentified Class Members*. To the extent the Settlement Administrator is unable to identify at least one postal address for any Settlement Class Member

that the Settlement Administrator concludes is reasonably likely to reflect the current residence of such Settlement Class Member, then in that event, and only in that event, any such Settlement Class Member shall be required to submit, as clearly explained in the website Notice and any e-mail Notice(s) that the Settlement Administrator will have attempted to send such Settlement Class Member, a qualifying claim form that will include his or her (1) name; (2) postal address at which he or she subscribed to *Mayo Clinic Health Letter*; (3) postal address to which his or her check shall be sent or instructions for payment via electronic means; and (4) a telephone number and/or email address at which the Settlement Administrator may contact him or her to obtain any additional information that may be required to verify such Person's claim.

**(f)**     Each check issued will state on its face that the check will expire and become null and void unless cashed within 180 days of the date of issuance.  To the extent that a check issued to a Settlement Class Member is not cashed within 180 days after the date of issuance (which issuance shall be no sooner than 5 days prior to such check's mailing), the check will be void.  Payments to all Settlement Class Members who do not exclude themselves from the Settlement shall be made within twenty-eight (28) days after Final Judgment.

**(g)**     To the extent that any checks issued to a Settlement Class Member are not cashed within one-hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise feasible.  To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed

check funds shall, subject to Court approval, revert to the Michigan Bar Foundation's Access to Justice Fund, a non-sectarian, not-for-profit organization, or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court.

      **(h)**    Subject to the provisions pertaining to the termination or cancellation of the Settlement, as set forth in Paragraph 9, no portion of the Settlement Fund shall revert back to Defendant.

**3.**    **RELEASE**.

    **3.1**    The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

    **3.2**    Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

**4.**    **NOTICE TO THE CLASS**.

    **4.1**    The Notice Plan shall consist of the following:

      **(a)**    *Settlement Class List*.  No later than twenty-eight (28) days after the execution of this Agreement, Defendant shall, to the best of its ability, produce an electronic list or lists from its available records that includes the names, last known U.S. Mail addresses, and email addresses, to the extent available, belonging to Persons within the Settlement Class.  Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every member of the Settlement Class as defined herein to disclose this information as stated in this paragraph, consistent with the written consent provisions of the PPPA.  This electronic document shall be called the "Class List," which is attached hereto as Exhibit A and shall be provided to the Settlement Administrator with a copy to Class Counsel.

      **(b)**    *Method for Providing Notice.*

       **i.**      The Notice shall provide information to each Settlement Class Member regarding (a) the specific amount of the Cash Award that will be paid to each Settlement Class Member upon final approval; (b) the requirements for the filing of Claim Forms by any Unidentified Settlement Class Members; (c) the amount of the Service Award and the Fee Award to be requested by Plaintiffs and Class Counsel; (d) the Objection/Exclusion Deadline and the requirements and process for filing an objection to or a request for exclusion from the Settlement; and (e) the URL of the Settlement Website, where additional information and documents concerning the Settlement may be obtained.

       **ii.**      For every Settlement Class Member for whom the Settlement Administrator has been able to identify a postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member, as identified by the Settlement Administrator after taking measures reasonably necessary to identify such an address, the Settlement Administrator shall send the Notice to the Settlement Class Member at such address via postal mail.

       **iii.**      To the extent multiple postal addresses are identified by the Settlement Administrator as having a reasonable likelihood of reflecting the current residence of a particular Settlement Class Member, Notice shall be sent to all such postal addresses, and each such Notice shall indicate the address to which the Settlement Class Member's Cash Award check will be sent by check at the conclusion of the Settlement administration process; such address shall be the one that the Settlement Administrator concludes is the most likely among such multiple addresses to reflect the current residence of such Settlement Class Member.

       **iv.**      For any Settlement Class Member for whom the Settlement Administrator is unable to identify at least one postal address that it concludes has a reasonable

likelihood of reflecting the current residence of such Settlement Class Member, the Notice will be delivered to any and all e-mail addresses specified in the Class List or otherwise identified by the Settlement Administrator as being reasonably likely to belong to such Settlement Class Member (after taking measures reasonably necessary to identify such e-mail address(es)).

       **v.**      If any Notice sent to a Settlement Class Member is returned as undeliverable, the Settlement Administrator shall redeliver the Notice to any alternative postal address(es) identified by the Settlement Administrator as having a reasonable likelihood of being the current place of residence for such Settlement Class Member (or, if none is available, to any e-mail address(es) believed to belong to the Settlement Class Member), after taking measures reasonably necessary to locate such addresses.

      **(c)**     *Settlement Website*.  Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at an available settlement URL (such as, for example, www.healthletterpppasettlement.com) which shall be obtained, administered and maintained by the Settlement Administrator and shall include the ability to file Claim Forms on-line, provided that such Claim Forms, if signed electronically, will be binding for purposes of applicable law and contain a statement to that effect.  The Notice provided on the Settlement Website shall be substantially in the form of Exhibit D hereto.

      **(d)**     ***Mayo Foundation for Medical Education and Research Statement*.  The documents referenced in 4.1(b) and (c) shall contain the following statement from Mayo Foundation for Medical Education and Research in a format/typeface designed to give it prominence within each said document: While Mayo believes that its practices were in compliance with Michigan law, Mayo chose to settle this case, without admitting liability, to avoid additional legal fees and the time required to defend the lawsuit.**

      **(e)**    *CAFA Notice*.  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorney General of the United States, and any other required government officials, notice of the proposed settlement as required by law, subject to Paragraph 5.1 below.

      **4.2**    The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

      **4.3**    Any Settlement Class Member who intends to object to this Agreement must present on a timely basis pursuant to the Court's anticipated order preliminarily approving the settlement the objection in writing, which must be personally signed by the objector, and must include:  (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the

pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules).

4.4      If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

4.5      A Settlement Class Member may request to be excluded from the Settlement Class by sending a timely written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  To exercise the right to be excluded, a Person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing (1) his/her name and address; (2) a signature; (3) the name and number of the case; and (4) a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement.  A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved.  Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not:  (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.  The request for exclusion must be personally signed by each Person requesting exclusion.  So-called "mass" or

"class" opt-outs shall not be allowed.  To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

4.6     The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice described in Paragraph 4.1 is provided.

4.7     Any Settlement Class Member who does not, in accordance with the terms and conditions of this Agreement, seek exclusion from the Settlement Class or timely file a valid Claim Form when such Claim Form is required shall not be entitled to receive any payment or benefits pursuant to this Agreement, but will otherwise be bound by all of the terms of this Agreement, including the terms of the Final Judgment to be entered in the Action and the Releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

5.     **SETTLEMENT ADMINISTRATION**.

5.1     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by processing Claim Forms submitted by Unidentified Class Members, processing requests for exclusion from the Settlement, and disbursing funds from the Settlement Fund in a rational, responsive, cost effective, and timely manner.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with regular reports at weekly intervals containing information concerning Notice, administration, and implementation of the Settlement Agreement.  Should the Court request, the

Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Settlement Class Members on account of approved Released Claims.  Without limiting the foregoing, the Settlement Administrator shall:

      **(a)**      Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof, within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed in accordance with the terms of this Agreement;

      **(b)**      Provide Class Counsel and Defendant's Counsel with drafts of all administration related documents, including but not limited to CAFA Notices, follow-up class notices or communications with Settlement Class Members, telephone scripts, website postings or language or other communications with the Settlement Class, at least five (5) business days before the Settlement Administrator is required to or intends to publish or use such communications, unless Class Counsel and Defendant's Counsel agree to waive this requirement in writing on case by case basis;

      **(c)**      Receive Claim Forms from Unidentified Class Members and promptly provide to Class Counsel and Defendant's counsel copies thereof. If the Settlement Administrator receives any Claim Forms after the Claim Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

      **(d)**      Receive requests to be excluded from the Settlement Class and other requests and promptly provide to Class Counsel and Defendant's Counsel copies thereof, along with a weekly report of the number of such requests received.  If the Settlement Administrator receives any exclusion forms or other requests after the deadline for the submission of such

forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel and await guidance from Counsel as to treatment thereof;

      **(e)**      Provide weekly reports to Class Counsel and Defendant's Counsel, including without limitation, reports regarding the number of Claim Forms received, the number approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected, in whole or in part, by the Settlement Administrator; and

      **(f)**      Make available for inspection by Class Counsel or Defendant's Counsel the Claim Forms received by the Settlement Administrator at any time upon reasonable notice.

      **5.2**      The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud.  The Settlement Administrator shall determine whether a Claim Form submitted by a Settlement Class Member is an Approved Claim by determining if the Person is on the Class List and shall reject Claim Forms that fail to (a) comply with the instructions on the Claim Form or the terms of this Agreement, or (b) provide full and complete information as requested on the Claim Form.  In the event a Person submits a timely Claim Form by the Claims Deadline where the Person appears on the Class List but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such Person one (1) reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than thirty (30) calendar days after the Claims Deadline.  In the event the Settlement Administrator receives such information more than thirty (30) days after the Claims Deadline, then any such claim shall be denied.  The Settlement Administrator may contact any Person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form.

5.3     Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by an Unidentified Settlement Class Member, as well as any request for exclusion.  The Settlement Administrator shall follow any agreed decisions of Class Counsel and Defendant's Counsel as to the validity of any disputed submitted Claim Form or request for exclusion.  To the extent Class Counsel and Defendant's Counsel are not able to agree on the disposition of a challenge, the disputed claim shall be submitted to The Honorable Gerald E. Rosen (Ret.) of JAMS Detroit for a binding determination.  Judge Rosen will charge his JAMS hourly rate for providing such services to the Settlement Class, and all expenses related thereto will be paid by the Settlement Administrator from the Settlement Fund.

5.4     In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

5.5     Defendant, the Released Parties, and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the allocation of Settlement Funds to Settlement Class Members or the implementation, administration, or interpretation thereof; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, Tax Expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

5.6    All taxes and tax expenses shall be paid out of the Settlement Fund and shall be timely paid by the Settlement Administrator pursuant to this Agreement and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with this Agreement and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator or its agents with respect to the payment of taxes or tax expenses.

6.    **TERMINATION OF SETTLEMENT**.

6.1    Subject to Paragraphs 9.1-9.3 below, Defendant or the Class Representatives on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within twenty-one (21) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternate Judgment, as defined in Paragraph 9.1(d) of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

7.    **PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER**.

7.1    Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement; certification of the

Settlement Class for settlement purposes only; appointment of Class Counsel and the Class Representatives; and entry of a Preliminary Approval Order, which order shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination substantially in the form of Exhibits B, C, D, and E hereto.  The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all the Exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Settlement Agreement and do not limit or impair the rights of the Settlement Class or materially expand the obligations of Defendant.

      **7.2**    At the time of the submission of this Agreement to the Court as described above, Class Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

      **7.3**    After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will among other things:

      **(a)**    find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all the Exhibits thereto;

      **(b)**    approve the Settlement Agreement and the proposed settlement as fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and Releasing Parties;

(c)    find that the Notice implemented pursuant to the Agreement (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(d)    find that the Class Representatives and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

(e)    dismiss the Action (including all individual claims and Settlement Class Released Claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

(f)    incorporate the Release set forth above, make the Release effective as of the Effective Date, and forever discharge the Released Parties as set forth herein;

(g)    permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)    without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

       **(i)**     incorporate any other provisions, as the Court deems necessary and just or appropriate to effectuate the terms and conditions of the Settlement Agreement.

**8.**     **CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; SERVICE AWARD.**

     **8.1**     Defendant agrees that Class Counsel may receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed 35% of the Settlement Fund (or $18,375,000.00 USD).  Plaintiffs will petition the Court for an award of such attorneys' fees, costs, and expenses, and Defendant agrees not to object to or otherwise challenge, directly or indirectly, Class Counsel's petition for attorneys' fees, costs, and expenses if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court in attorneys' fees, costs, and expenses.  Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.

     **8.2**     The Fee Award shall be payable by the Settlement Administrator within ten (10) days after entry of the Court's Final Judgment, subject to Class Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (the "Undertaking") attached hereto as Exhibits F-1, F-2, and F-3, and providing all payment routing information and tax I.D. numbers for Class Counsel.  Payment of the Fee Award shall be made from the Settlement Fund by wire transfer to Class Counsel, in accordance with the instructions to be jointly provided by Class Counsel, after completion of necessary forms by Class Counsel, including but not limited to W-9 forms.  Notwithstanding the foregoing, if for any reason the Final Approval Order is reversed or rendered void as a result of an appeal(s) then any persons or firms who shall have received such funds shall be severally liable for payments made pursuant to this subparagraph, and shall return

such funds to the Defendant, based upon written instructions provided by Defendant's Counsel. To effectuate this provision, Hedin LLP, The Miller Law Firm, P.C., and Bursor & Fisher, P.A. shall each execute a guarantee of repayment in the forms attached hereto as Exhibits F-1, F-2, and F-3.  Additionally, should any parties to the Undertaking dissolve, merge, declare bankruptcy, become insolvent, or cease to exist prior to the final payment to Class Members, those parties shall execute a new undertaking guaranteeing repayment of funds within fourteen (14) days of such an occurrence.

      **8.3**     Defendant agrees that, subject to Court approval, the Settlement Administrator may pay service awards to the Class Representatives from the Settlement Fund, in addition to any settlement payment as a result of a Cash Award pursuant to this Agreement, in recognition of their efforts on behalf of the Settlement Class, in the amounts of five thousand dollars ($5,000.00 USD) each to Plaintiffs Vredeveld, Colony, and Surnow, and in the amount of seven thousand five hundred dollars ($7,500.00 USD) to Plaintiff Schreiber (for a total of twenty-two thousand five hundred dollars ($22,500.00 USD)).  Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the service awards to the Class Representatives if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court as the service awards for the Class Representatives.  Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.  Such award shall be paid from the Settlement Fund (in the form of a check to the Class Representatives that is sent to the care of Class Counsel), within five (5) business days after entry of the Final Judgment if there have been no objections to the Settlement Agreement, and, if there have been such objections, within five (5) business days after the Effective Date.

9. **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

    **9.1**    The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

        (a)    The Parties and their counsel have executed this Agreement;

        (b)    The Court has entered the Preliminary Approval Order;

        (c)    The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

        (d)    The Final Judgment has become Final, as defined above, or, in the event that the Court enters an Alternate Judgment, such Alternate Judgment becomes Final.

    **9.2**    If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 6.1 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Parties. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the service award set forth in Paragraph 8 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

      **9.3**     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1 and 9.1-9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into. Within five (5) business days after written notification of termination as provided in this Agreement is sent to the other Parties, the Settlement Fund (including accrued interest thereon), less any Settlement Administration costs actually incurred, paid or payable and less any taxes and tax expenses paid, due or owing, shall be refunded by the Settlement Administrator to Defendant, or Defendant's insurers, if applicable, based upon written instructions provided by Defendant's Counsel.  In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, Class Counsel shall within thirty (30) days repay to Defendant, or Defendant's insurers, if applicable, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to Class Counsel from the Settlement Fund, including any accrued interest.  In the event the attorney fees and costs awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, Class Counsel shall within thirty (30) days repay to Defendant, or Defendant's insurers, if applicable, based upon written instructions provided by Defendant's Counsel, the attorneys' fees and costs paid to Class Counsel and/or

Representative Plaintiff from the Settlement Fund, in the amount vacated or modified, including any accrued interest.

## 10.    MISCELLANEOUS PROVISIONS.

**10.1**    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals.  Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking Court approval of the Settlement Agreement, entry of the Preliminary Approval Order, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

**10.2**    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs, the Settlement Class and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.  Nothing herein, however, shall be construed to prevent any employee of Defendant or any Released Party, or any independent contractor working in a reporting or newsgathering capacity for Defendant or any Released Party, from reporting on the Action or this Settlement.

**10.3**    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to

the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

**10.4**    Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein or any term, provision or definition therein, nor any act or communication performed or document executed in the course of negotiating, implementing or seeking approval pursuant to or in furtherance of this Agreement or the settlement:

**(a)**    is, may be deemed, or shall be used, offered or received in any civil, criminal or administrative proceeding in any court, administrative agency, arbitral proceeding or other tribunal against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the definition or scope of any term or provision, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

**(b)**    is, may be deemed, or shall be used, offered or received against any Released Party, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

**(c)**    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing or statutory meaning (including but not limited to the definitions of Michigan Subscriber Information and Settlement Class) as against any Released

34

Parties, or supporting the certification of a litigation class, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

**(d)**    is, may be deemed, or shall be construed against Plaintiffs, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

**(e)**    is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs, the Settlement Class, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

**10.5**    The Parties acknowledge that (a) any certification of the Settlement Class as set forth in this Agreement, including certification of the Settlement Class for settlement purposes in the context of Preliminary Approval, shall not be deemed a concession that certification of a

litigation class is appropriate, or that the Settlement Class definition would be appropriate for a litigation class, nor would Defendant be precluded from challenging class certification in further proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved; (b) if the Settlement Agreement is not finally approved by the Court for any reason whatsoever, then any certification of the Settlement Class will be void, the Parties and the Action shall be restored to the status quo ante, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or in any other action; and (c) no agreements made by or entered into by Defendant in connection with the Settlement may be used by Plaintiffs, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

**10.6**    No person or entity shall have any claim against the Class Representatives, Class Counsel, the Settlement Administrator or any other agent designated by Class Counsel, or the Released Parties and/or their counsel, arising from distributions made substantially in accordance with this Agreement.  The Parties and their respective counsel, and all other Released Parties shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

**10.7**    All proceedings with respect to the administration, processing and determination of Released Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Released Claims, shall be subject to the jurisdiction of the Court.

**10.8**    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

**10.9**    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

**10.10**   All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**10.11**   This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements, and undertakings with respect to the matters set forth herein.  No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**10.12**   Except as otherwise provided herein, each Party shall bear its own costs.

**10.13**   Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that they are fully entitled to release the same.

**10.14**   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

**10.15**   This Agreement may be executed in one or more counterparts.  Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.16**   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.17**   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.18**   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

**10.19**   This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties.  Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

**10.20**   Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:  Frank S. Hedin and Arun G. Ravindran, Hedin LLP, 1395 Brickell Avenue, Suite 1140, Miami, Florida 33131; E. Powell Miller, The Miller Law Firm, P.C., 950 W. University Drive, Ste. 300, Rochester, MI 48307; Joseph I. Marchese and Philip L. Fraietta, Bursor & Fisher, P.A., 1330 Avenue of the Americas, 32nd Floor, New York, New York 10019; Gregory Karpenko and Anupama Sreekanth, Fredrikson & Byron P.A., 60 South 6th St., Ste.

1500, Minneapolis, MN 55402; and Michael Latiff, McDonald Hopkins PLC, 39533 Woodward

Ave., Ste. 318, Bloomfield Hills, MI 48304.

**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE(S) TO FOLLOW]**

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: Feb 12, 2024                    **JEFFREY SCHREIBER**

By: _____

Jeffrey Schreiber, individually and as representative of the Class

Dated: _____                **KAY VREDEVELD**

By: _____

Kay Vredeveld, individually and as representative of the Class

Dated: _____                **RICHARD COLONY**

By: _____

Richard Colony, individually and as representative of the Class

1500, Minneapolis, MN 55402; and Michael Latiff, McDonald Hopkins PLC, 39533 Woodward

Ave., Ste. 318, Bloomfield Hills, MI 48304.

**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK,
SIGNATURE PAGE(S) TO FOLLOW]**

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: _____       **JEFFREY SCHREIBER**

                                    By:_____

                                    Jeffrey Schreiber, individually and as representative
                                    of the Class

Dated: 02/12/2024
       _____        **KAY VREDEVELD**

                                    By: *Kay Vredeveld*
                                        Kay Vredeveld (Feb 12, 2024 10:17 EST)
                                    _____

                                    Kay Vredeveld, individually and as representative
                                    of the Class

Dated: _____       **RICHARD COLONY**

                                    By:_____

                                    Richard Colony, individually and as representative
                                    of the Class

1500, Minneapolis, MN 55402; and Michael Latiff, McDonald Hopkins PLC, 39533 Woodward Ave., Ste. 318, Bloomfield Hills, MI 48304.

**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK,
SIGNATURE PAGE(S) TO FOLLOW]**

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: _____        **JEFFREY SCHREIBER**

                                                    By:_____

                                                    Jeffrey Schreiber, individually and as representative
                                                    of the Class

Dated: _____        **KAY VREDEVELD**

                                                    By:_____

                                                    Kay Vredeveld, individually and as representative
                                                    of the Class

Dated: 12/02/2024
       _____        **RICHARD COLONY**

                                                    By: *Richard E Colony*
                                                        Richard E Colony (Feb 12, 2024 10:28 EST)
                                                    _____

                                                    Richard Colony, individually and as representative
                                                    of the Class

Dated: _____          **MICHAEL SURNOW**

                                By:_____

                                Michael Surnow, individually and as representative
                                of the Class

Dated: Feb 13, 2024             **MAYO FOUNDATION FOR MEDICAL EDUCATION AND
                                RESEARCH**

                                By: *J. Robert Sonne*
                                    J. Robert Sonne (Feb 13, 2024 14:38 MST)

                                J. Robert Sonne
                                Counsel for Mayo Clinic
                                Mayo Foundation for Medical Education and
                                Research

**IT IS SO STIPULATED BY COUNSEL:**

Dated: _____          **HEDIN LLP**

                                By: _____

                                Frank S. Hedin
                                fhedin@hedinllp.com
                                Arun G. Ravindran
                                aravindran@hedinllp.com
                                HEDIN LLP
                                1395 Brickell Avenue, Suite 1140
                                Miami, Florida 33131
                                Tel: (305) 357-2107
                                Fax: (305) 200-8801

40

Dated: 02/12/2024
_____

**MICHAEL SURNOW**


By: _Michael Surnow_____
    Michael Surnow (Feb 12, 2024 11:36 EST)

Michael Surnow, individually and as representative of the Class




Dated: _____

**MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH**


By:_____

Name
Its:
Mayo Foundation for Medical Education and Research



**IT IS SO STIPULATED BY COUNSEL:**


Dated: February 12, 2024
       _____

**HEDIN LLP**


By: _____

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
HEDIN LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel:  (305) 357-2107
Fax:  (305) 200-8801

Dated:   02/12/2024                    THE MILLER LAW FIRM, P.C.

                                       By: _____

                                       E. Powell Miller
                                       epm@millerlawpc.com
                                       THE MILLER LAW FIRM, P.C.
                                       950 W. University Drive, Suite 300
                                       Rochester, MI 48307
                                       Tel:  (248) 841-2200

Dated:   02/12/2024                    BURSOR & FISHER, PA

                                       By: _____

                                       Joseph I. Marchese
                                       jmarchese@bursor.com
                                       Philip L. Fraietta
                                       pfraietta@bursor.com
                                       BURSOR & FISHER, PA
                                       1330 Avenue of the Americas, 32nd Floor
                                       New York, New York 10019
                                       Tel:  (646) 837-7150
                                       Fax:  (212) 989-9163

                                       *Attorneys for Class Representatives and the
                                       Settlement Class*

Dated:   2/15/2024                     FREDRIKSON & BYRON P.A.

                                       By: _____

                                       Gregory Karpenko
                                       gkarpenko@fredlaw.com
                                       Anupama Sreekanth
                                       asreekanth@fredlaw.com
                                       FREDRIKSON & BYRON P.A.
                                       60 South 6th St., Ste. 1500

                                       41

Minneapolis, MN 55402
Tel: (612) 492-7000

*Attorneys for Mayo Foundation for Medical
Education and Research*

Dated: $2$-$15$-$24$          **MCDONALD HOPKINS PLC**

By: ⟨signature⟩

Michael Latiff
mlatiff@mcdonaldhopkins.com
MCDONALD HOPKINS PLC
39533 Woodward Ave., Ste. 318
Bloomfield Hills, MI 48304
Tel: (248) 646-5070

*Attorney for Mayo Foundation for Medical
Education and Research*

42

**EXHIBIT A**

# AVAILABLE FOR
# IN CAMERA REVIEW

**EXHIBIT B**

From:   healthletterpppasettlement@healthletterpppasettlement.com
To:   JonQClassMember@domain.com
Re:   Legal Notice of Class Action Settlement

<div align="center">

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
*Schreiber et al. v. Mayo Foundation for Medical Education and Research*,
Case No. 2:22-cv-00188-HYJ-RSK
(United States District Court for the Western District of Michigan)

</div>

This notice is to inform you of the settlement of a class action lawsuit with Mayo Foundation for Medical Education and Research ("Mayo"), the Defendant in this case. Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow allege that Defendant disclosed its customers' subscription information to third parties which is alleged to violate Michigan privacy law. **While Mayo believes that its practices were in compliance with Michigan law, Mayo chose to settle this case, without admitting liability, to avoid additional legal fees and the time required to defend the lawsuit.**

**Am I a Class Member?** Yes. Our records indicate you are a Class Member. Class Members are direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2016 and July 30, 2016, and thus that have standing, which are reflected on the Class List, which can be found [hyperlink]. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

**What Can I Get?** A Settlement Fund of $52,500,000 has been established to pay all cash awards to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs to Class Counsel, and service awards to the Plaintiffs. If you received a postcard Notice, you do not need to submit a Claim Form to receive payment, and you will receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates to will be for approximately $540-$700 per class member. The exact amount of the share of the Settlement Fund that you will receive depends on the number of requests for exclusion that are received. If you **did not receive a postcard Notice** concerning the Settlement sent to you by postal mail, you **must submit a Claim Form** (see instructions below) in order to receive a share of the Settlement Fund as described above.

**How Do I Get a Payment?** Unless you received a postcard Notice concerning the Settlement sent to you by postal mail, you **must** complete and submit a Claim Form to receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates will be approximately $540-$700. You may submit a Claim Form either electronically on the Settlement Website by clicking here [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download here [insert hyperlink]. Claim Forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator postmarked no later than [**objection/exclusion deadline**]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed no later than [**objection/exclusion deadline**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.healthletterpppasettlement.com].  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure of subscriber information in this case against the Defendant will be released.

**Who Represents Me?** The Court has appointed Frank S. Hedin and Arun G. Ravindran of Hedin LLP, E. Powell Miller of The Miller Law Firm, P.C., and Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A. to represent the class.  These attorneys are called Class Counsel.  You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at 128 Federal Bldg, 315 W Allegan St, Lansing MI 48933. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award Class Representatives Jeffrey Schreiber a service award of $3,500;  Richard Colony and Kay Vredeveld a service award of $2,500 each; and Michael Surnow a service award of $1,000 from the Settlement Fund for their services in helping to bring and settle this case. Defendant has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court.  Class Counsel is entitled to seek no more than 35% of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.healthletterpppasettlement.com, contact the settlement administrator by calling (800) 000-000 or by writing to Mayo Clinic Health Letter Settlement Administrator, [address], or contact Class Counsel by calling 248-609-7331.

**EXHIBIT C**

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

Mayo Clinic Health Letter Magazine Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

## OUR RECORDS INDICATE YOU HAVE SUBSCRIBED TO THE MAYO CLINIC HEALTH LETTER AND MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

### MAYO CLINIC HEALTH LETTER SETTLEMENT

A settlement has been reached in a class action lawsuit claiming that Defendant, Mayo Foundation for Medical Education and Research ("Mayo"), disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law. **While Mayo believes that its practices were in compliance with Michigan law, Mayo chose to settle this case, without admitting liability, to avoid additional legal fees and the time required to defend the lawsuit.**

**Am I a Class Member?** Our records indicate you are a Class Member. Class Members are direct purchasers of *Mayo Clinic Health Letter* whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2016 and July 30, 2016, and thus that have standing, which are reflected on the Class List, which can be found [hyperlink].

**What Can I Get?** If approved by the Court, a Settlement Fund of $52,500,000.00 has been established to pay all cash awards to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs to Class Counsel, and a service award to the Plaintiffs. Once the Settlement becomes Final, you will receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates will be approximately $540-$700 per class member, although the final amount you receive will also depend on the number of requests for exclusion submitted.

**How Do I Get a Payment?** If you are a Class Member, you will automatically receive a *pro rata* share of the Settlement Fund, so long as you do not request to be excluded from the Settlement Class. Your payment will come by check, sent to the following address: [insert Settlement Class Member's address to which check will be sent]. If you no longer reside at this address or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please complete and submit a change of address form accessible on the Settlement Website so that your check is sent to the correct address. If you wish to receive your payment via PayPal or Venmo, you may do so by submitting an Election Form on the Settlement Website.

**What are My Other Options?** You may exclude yourself from the Class by submitting an online form on the Settlement Website no later than 11:59 p.m. on [objection/exclusion deadline] or by sending a letter to the settlement administrator postmarked no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Any written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www.healthletterpppasettlement.com. If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure of subscriber information in this case against the Defendant and others will be released.

**Who Represents Me?** The Court has appointed Frank S. Hedin and Arun G. Ravindran of Hedin LLP, E. Powell Miller of The Miller Law Firm, P.C., and Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A. to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at 128 Federal Bldg, 315 W Allegan St, Lansing MI 48933. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award Class Representatives Jeffrey Schreiber a service award of $3,500; Richard Colony and Kay Vredeveld a service award of $2,500 each; and Michael Surnow a service award of $1,000 from the Settlement Fund for their services in helping to bring and settle this case. Defendant has agreed to pay Class Counsel reasonable attorneys' fees in an amount to be determined by the Court. Class Counsel is seeking to seek no more than 35% of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including the full Notice, Claim Form, and Settlement Agreement go to www.healthletterpppasettlement.com, contact the settlement administrator by calling (800) 000-0000 or writing to Mayo Clinic Health Letter Settlement Administrator, [address], or contact Class Counsel by calling 248-609-7331.

Mayo Clinic Health Letter Settlement Administrator
c/o [Settlement Administrator]
PO Box 0000
City, ST 00000-0000

XXX

**EXHIBIT D**

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
*Schreiber et al. v. Mayo Foundation for Medical Education and Research*,
Case No. 2:22-cv-00188-HYJ-RSK

***A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.***

- A Settlement has been reached in a class action lawsuit against publisher Mayo Foundation for Medical Education and Research ("Mayo"). The class action lawsuit involves whether Mayo disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law.

- **While Mayo believes that its practices were in compliance with Michigan law, Mayo chose to settle this case, without admitting liability, to avoid additional legal fees and the time required to defend the lawsuit.**

- You are included if you are a direct purchaser whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2016 and July 30, 2016, and thus that have standing, which are reflected on the Class List, which can be found [hyperlink].  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

- Those included in the Settlement will be eligible to receive a *pro rata* (meaning equal) portion of the Settlement Fund, which Class Counsel anticipates to be approximately $540-700.

- Read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will receive a *pro rata* share of the Settlement benefits – estimated to be approximately $540-$700 – and will give up your rights to sue the Defendant about the claims in this case. |
| **EXCLUDE YOURSELF** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

## BASIC INFORMATION

| 1.  Why was this Notice issued? |

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The Honorable Hala Y. Jarbou, of the U.S. District Court for the Western District of Michigan, is overseeing this case. The case is called *Schreiber et al. v. Mayo Foundation for Medical Education and Research*, Case No. 2:22-cv-00188-HYJ-RSK. The people who sued are called the Plaintiffs.  The Defendant is Mayo Foundation for Medical Education and Research.

| 2. What is a class action? |

In a class action, one or more people called class representatives (in this case, Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow) sue on behalf of a group or a "class" of people who have similar claims.  In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the Class.

| 3. What is this lawsuit about? |

This lawsuit claims that Defendant violated Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378 §§ 1-4, *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"), by disclosing information related to its customers' magazine subscriptions to third parties between June 16, 2016 and July 30, 2016. The Defendant denies it violated any law. The Court has not determined who is right.  Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

| 4. Why is there a Settlement? |

The Court has not decided whether the Plaintiffs or the Defendant should win this case. Instead, both sides agreed to a Settlement.  That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get compensation sooner rather than, if at all, after the completion of a trial.

## WHO'S INCLUDED IN THE SETTLEMENT?

**5. How do I know if I am in the Settlement Class?**

The Court decided that everyone who fits the following description is a member of the **Settlement Class**:

The approximately 62,746 direct purchasers whose information was included on the lists obtained in discovery that were transmitted to third parties between June 16, 2016 and July 30, 2016, and thus that have standing, which are reflected on the Class List. If you are uncertain whether you are a Class Member, please contact the Settlement Administrator by phone at (XXX) XXX-XXX or email at info@healthletterpppasettlement.com to find out whether you are included within the Settlement Class.

Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

## THE SETTLEMENT BENEFITS

**6. What does the Settlement provide?**

*Monetary Relief*:  A Settlement Fund has been created totaling $52,500,000.00. Class Member payments, the cost to administer the Settlement, the cost to inform people about the Settlement, attorneys' fees (inclusive of litigation costs), and awards to the Class Representatives will also come out of this fund (*see* Question 12).

A detailed description of the settlement benefits can be found in the Settlement Agreement, a copy of which is accessible on the Settlement Website by clicking here. [insert hyperlink]

**7. How much will my payment be?**

The amount of this payment will depend on how many requests for exclusion are submitted.  Each Class Member will receive a proportionate share of the Settlement Fund, which Class Counsel anticipates will be approximately $540-$700.  You can contact Class Counsel at 248-609-7331 to inquire as to the number of requests for exclusion that have been received to date.

**8. When will I get my payment?**

The hearing to consider the fairness of the settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the settlement, eligible Class Members will receive their payment 28 days after the Settlement has been finally approved and/or after any appeals process is complete.  The payment will be made in the form of a check, and all checks will expire and become void 180 days after they are issued.  Alternatively, you may request that the payment is issued through PayPal or Venmo (see Question 9 below for further details).

## HOW TO GET BENEFITS

### 9. How do I get a payment?

If you are a Class Member who received a Notice via postcard and you want to get a payment, do nothing and you will automatically receive a *pro rata* share of the Settlement Fund, which Class Counsel anticipates will be approximately $540-$700. Your check for a *pro rata* share of the Settlement Fund will be sent to the postal address identified in the Notice you received.  If you have changed addresses or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please click here [insert hyperlink] to complete and submit a change of address form on the Settlement Website. If you wish to receive your payment via PayPal or Venmo, you may do so by submitting an Election Form on the Settlement Website.

If you are a Settlement Class Member who did not receive a Notice via postcard and want to get a payment, you **must** complete and submit a Claim Form.  You may submit a Claim Form either electronically on the Settlement Website by clicking here [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download here [insert hyperlink].  Claim Forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

## REMAINING IN THE SETTLEMENT

### 10. What am I giving up if I stay in the Class?

If the Settlement becomes final, you will give up your right to sue the Defendant and other Released Parties for the claims being resolved by this Settlement.  The specific claims you are giving up against the Defendant are described in the Settlement Agreement.  You will be "releasing" the Defendant and certain of its affiliates, employees and representatives as described in Section 1.27 of the Settlement Agreement.  Unless you exclude yourself (*see* Question 13), you are "releasing" the claims.  The Settlement Agreement is available through the "court documents" link on the website.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions you can talk to the lawyers listed in Question 11 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in the case?

The Court has appointed Frank S. Hedin and Arun G. Ravindran of Hedin LLP, E. Powell Miller of The Miller Law Firm, P.C., and Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A. to represent the class.  They are called "Class Counsel."  They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 12. How will the lawyers be paid?

The Defendant has agreed that Class Counsel attorneys' fees and costs may be paid out of the Settlement Fund in an amount to be determined by the Court. The fee petition will seek no more than 35% of the Settlement Fund, inclusive of reimbursement of their costs and expenses; the Court may award less than this amount.  Under the Settlement Agreement, any amount awarded to Class Counsel will be paid out of the Settlement Fund.

Subject to approval by the Court, Defendant has agreed that Class Representatives Jeffrey Schreiber may be paid a service award of $3,500; Richard Colony and Kay Vredeveld may be paid a service award of $2,500 each; and Michael Surnow may be paid a service award of $1,000, for their services in helping to bring and resolve this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 13. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must submit a request for exclusion by 11:59 p.m. EST on [objection/exclusion deadline].  Requests for exclusion may be submitted either on the Settlement Website (via the online form accessible here [insert hyperlink]) or by mailing or otherwise delivering a letter (or request for exclusion) stating that you want to be excluded from the *Schreiber et al. v. Mayo Foundation for Medical Education and Research*, Case No. 2:22-cv-00188-HYJ-RSK settlement. Your letter or request for exclusion must also include your name, your address, the title of the publication(s) to which you subscribed, your signature, the name and number of this case, and a statement that you wish to be excluded.  If you choose to submit a request for exclusion by mail, you must mail or deliver your exclusion request, postmarked no later than [objection/exclusion deadline], to the following address:

Mayo Clinic Health Letter Settlement

0000 Street
City, ST 00000

**14. If I don't exclude myself, can I sue the Defendant for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

**15. If I exclude myself, can I get anything from this Settlement?**

No. If you exclude yourself, you will not receive a *pro rata* share of the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

**16. How do I object to the Settlement?**

If you are a Class Member, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it. The Court will consider your views.  To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Schreiber et al. v. Mayo Foundation for Medical Education and Research*, Case No. 2:22-cv-00188-HYJ-RSK and identify all your reasons for your objections (including citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, the basis upon which you claim to be a Class Member (including the title of the publication(s) which you purchased or to which you subscribed), the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption. You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendant's Counsel listed below.

Class Counsel will file with the Court and post on this website its request for attorneys' fees by [two weeks prior to objection deadline].

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 20), you must say so in your letter or brief.  File the objection with the Court (or mail the objection to the Court) and mail a copy of the objection to Class Counsel and Defendant's Counsel, at the addresses below, postmarked no later than **[objection deadline]**.

QUESTIONS? CALL (800) 000-0000 TOLL FREE, OR VISIT WWW.HEALTHLETTERPPPASETTLEMENT.COM

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| The Honorable Hala Y. Jarbou United States District Court for the Western District of Michigan 138 Federal Bldg 315 W Allegan St Lansing MI 48933 | E. Powell Miller The Miller Law Firm, P.C. 950 W. University Drive, Ste 300 Rochester, MI 48307 | Gregory Karpenko Fredrikson & Byron P.A. 60 South 6th St., Ste. 1500 Minneapolis, MN 55402 |

### 17. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

### 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [time] on [date] at the United States District Court for the Western District of Michigan, located at 128 Federal Bldg, 315 W Allegan St, Lansing MI 48933. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for service awards to the Class Representatives. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check for updates by visiting the Settlement Website at www.healthletterpppasettlement.com or calling (800) 000-0000. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of the Final Approval Hearing.

### 19. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

**20. May I speak at the hearing?**

Yes.  You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *Schreiber et al. v. Mayo Foundation for Medical Education and Research*, Case No. 2:22-cv-00188-HYJ-RSK."  It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you.  Your objection and notice of intent to appear must be filed with the Court and postmarked no later than **[objection deadline]**, and be sent to the addresses listed in Question 16.

# GETTING MORE INFORMATION

**21. Where do I get more information?**

This Notice summarizes the Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.healthletterpppasettlement.com.  You may also write with questions to Mayo Clinic Health Letter Settlement, P.O. Box 0000, City, ST 00000.  You can call the Settlement Administrator at (800) 000-0000 or Class Counsel at 248-609-7331, if you have any questions.  Before doing so, however, please read this full Notice carefully.  You may also find additional information elsewhere on the case website.

**EXHIBIT E**

*Schreiber et al. v. Mayo Foundation for Medical Education and Research*,
Case No. 2:22-cv-00188-HYJ-RSK (W.D. Mich.)

## CLAIM FORM FOR UNIDENTIFIED CLASS MEMBERS

This Claim Form may be submitted online at www.healthletterpppasettlement.com or completed and mailed to the address below. Submit your completed Claim Form online or mail it so it is postmarked no later than **[DATE]**. If you received a Notice by mail, you do NOT need to submit a Claim Form, and your Cash Award will be sent to you by check at the address identified on the Notice once the Settlement is finally approved. If your address has changed, please submit a change of address form online at www.healthletterpppasettlement.com to ensure your check is mailed to your current address.

### I.   CLAIMANT INFORMATION (all fields required)

The Settlement Administrator will use this information for communications and payments. If this information changes before settlement payments are issued, contact the Settlement Administrator at the address below.

First Name                                          M.I.    Last Name

Current Mailing Address, Line 1: Street Address/P.O. Box

Current Mailing Address, Line 2:

City:                                               State:        Zip Code:

Preferred Telephone Number

Preferred Email address

### II.   CLAIM INFORMATION

Mailing address at which you received your subscription between June 16, 2016 and July 30, 2016:
Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                               State:        Zip Code:

### III.   PREFERRED PAYMENT METHOD

___ Check

___ PayPal (Associated Email Address: _____ )

___ Venmo (Associated Email Address: _____ )

### IV.   SIGNATURE: Sign and date the Claim Form below.

Signed: _____    Date: _____

Submit this Claim Form online or mail it to the address below postmarked no later than [**DATE**].

*Mayo Clinic Health Letter Class Action Settlement Administrator*
c/o XXXXX Legal Administration
[address]

**EXHIBIT F-1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JEFFREY SCHREIBER; RICHARD COLONY; KAY VREDEVELD; and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br>     v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>                  Defendant. | Case No. 2:22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br><br>**CLASS ACTION** |

**STIPULATION REGARDING UNDERTAKING**
**RE: ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow and Defendant Mayo Foundation for Medical Education and Research  (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Hedin LLP (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as an individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Western District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of Defendant, and notice to the Firm, summarily issue orders, including but not

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulates, warrants, and represents that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:


DATED: February 14 , 2024        HEDIN LLP

By: Frank S. Hedin, on behalf of Hedin LLP
Attorneys for Plaintiffs Jeffrey Schreiber,
Richard Colony, Kay Vredeveld, and Michael Surnow
and Proposed Class Counsel


DATED: 2-15 , 2024        FREDRIKSON & BYRON P.A.

By: Gregory Karpenko, on behalf of
Fredrikson & Byron P.A.
Attorneys for Mayo Foundation for
Medical Education and Research


DATED: 2-15 , 2024        MCDONALD HOPKINS PLC

By: Michael Latiff, on behalf of
McDonald Hopkins PLC
Attorneys for Mayo Foundation for
Medical Education and Research

3

**EXHIBIT F-2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JEFFREY SCHREIBER; RICHARD COLONY; KAY VREDEVELD; and MICHAEL SURNOW, individually and on behalf of all others similarly situated, | Case No. 2:22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou |
| Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | **CLASS ACTION** |

**STIPULATION REGARDING UNDERTAKING
RE: ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow and Defendant Mayo Foundation for Medical Education and Research  (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, The Miller Law Firm, P.C. (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as an individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Western District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of Defendant, and notice to the Firm, summarily issue orders, including but not

limited to judgments and attachment orders against the Firm, and may make appropriate findings

for sanctions for contempt of court.

   The undersigned stipulates, warrants, and represents that he has both actual and apparent

authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

   This Undertaking may be executed in one or more counterparts, each of which shall be

deemed an original but all of which together shall constitute one and the same instrument.

Signatures by facsimile shall be as effective as original signatures.

   The undersigned declare under penalty of perjury under the laws of the United States that

they have read and understand the foregoing and that it is true and correct.

   IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: February 14, 2024          THE MILLER LAW FIRM, P.C.

                                  By: E. Powell Miller, on behalf of
                                  The Miller Law Firm, P.C.
                                  Attorneys for Plaintiffs Jeffrey Schreiber, Richard
                                  Colony, Kay Vredeveld, and Michael Surnow
                                  and Proposed Class Counsel


DATED: 2-15, 2024                 FREDRIKSON & BYRON P.A.

                                  By: Gregory Karpenko, on behalf of
                                  Fredrikson & Byron P.A.
                                  Attorneys for Mayo Foundation for
                                  Medical Education and Research


DATED: 2-15, 2024                 MCDONALD HOPKINS PLC

                                  By: Michael Latiff, on behalf of
                                  McDonald Hopkins PLC
                                  Attorneys for Mayo Foundation for
                                  Medical Education and Research

**EXHIBIT F-3**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JEFFREY SCHREIBER; RICHARD COLONY; KAY VREDEVELD; and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br>    v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>                Defendant. | Case No. 2:22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br><br>**CLASS ACTION** |

**STIPULATION REGARDING UNDERTAKING**
**RE: ATTORNEYS' FEES, COSTS, AND EXPENSES**

Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow and Defendant Mayo Foundation for Medical Education and Research  (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Bursor & Fisher, P.A. (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as an individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Western District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of Defendant, and notice to the Firm, summarily issue orders, including but not

limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulates, warrants, and represents that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: February 14, 2024

BURSOR & FISHER, P.A.

By: Scott A. Bursor, on behalf of Bursor & Fisher, P.A.
Attorneys for Plaintiffs Jeffrey Schreiber,
Richard Colony, Kay Vredeveld, and Michael Surnow
and Proposed Class Counsel

DATED: 2-15, 2024

FREDRIKSON & BYRON P.A.

By: Gregory Karpenko, on behalf of
Fredrikson & Byron P.A.
Attorneys for Mayo Foundation for
Medical Education and Research

DATED: 2-15, 2024

McDONALD HOPKINS PLC

By: Michael Latiff, on behalf of
McDonald Hopkins PLC
Attorneys for Mayo Foundation for
Medical Education and Research

3

# Exhibit 2

# THE MILLER LAW FIRM

## A Professional Corporation

950 W. University Dr., Ste. 300
Rochester, MI  48307
(248) 841-2200

www.millerlawpc.com

# THE MILLER LAW FIRM, P.C. | FIRM RESUME

The Miller Law Firm, P.C. (the "Firm") is one of the premier litigation law firms in the United States and Michigan's leading class action firm.  A recognized leader in the area of complex commercial litigation, the Firm is ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation.  Since the Firm's founding in 1993, the Firm has developed a national reputation for successfully prosecuting securities fraud and consumer class actions on behalf of its clients.  As Lead Counsel or Co-Lead Counsel appointed by judges throughout the United States in some of the country's largest and most complex cases, the Firm has achieved over $3 billion in settlements, recoveries and/or verdicts on behalf of injured class members.

## Highlights of Results Obtained

2024        *Pratt v. KSE Sportsman Media, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 1:21-cv-11404) (Class Counsel)

            Result:  $9.5 million settlement

2023        *Cooper (nee Zimmerman) v. The 3M Company and Wolverine*
            (United States District Court, Western District of Michigan)
            (Case No. 1:17-cv-01062) (Co-Lead Counsel)

            Result:  $54 million settlement

            *Reynolds v. FCA*
            (United States District Court, Eastern District of Michigan)
            (Case No. 2:19-cv-11745) (Co-Lead Counsel)

            Result:  Over $30 million settlement value

            *Kain v. The Economist Newspaper NA, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 4:21-cv-11807) (Co-Lead Counsel)

            Result:  $9.5 million settlement

            *Ketover v. Kiplinger Washington Editors, Inc.*
            (United States District Court, Eastern District of Michigan)
            (Case No. 1:21-cv-12987) (E. Powell Miller, Phil Fraietta, Joe Marchese, Frank Hedin)

            Result: $6.8 million settlement

*Moeller v. The Week Publications, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10666) (E. Powell Miller, Phil Fraietta, Joe Marchese, Frank Hedin)

Result: $5.1 million settlement

*Thomsen v. Morley*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10271) (Plaintiffs' Executive Committee)

Result: $4.3 million settlement

2022    *In re; National Prescription Opiate Litigation (CVS, Walgreens and Walmart retail pharmacy and two manufacturers Allergan and Teva)*
(United States District Court, Northern District Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement)

Result: $18.5 billion global settlement plus Narcan or additional cash from Teva

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
(United States District Court, District of Kansas)
(Case No. 2:17-md-02785) (Plaintiffs' Steering Committee)

Result: $609 million in settlements

*Wood, et al. v. FCA US LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 5:20-cv-11054) (Co-Lead Counsel)

Result: Over $108 million settlement value

*Persad, et al. v. Ford Motor Company*
(United States District Court, Eastern District of Michigan)
(Case No. 2:17-cv-12599) (Co-Lead Counsel)

Result: Over $42 million settlement value

*Loftus v. Outside Integrated Media, LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11809) (Co-Lead Counsel)

Result: Approximately $1 million settlement

*Graham, et al. v. University of Michigan, et al.*,
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11168) (Co-Lead Counsel)

Result:   Injunctive relief settlement mandating University reforms to address and prevent sexual misconduct

John Doe MC-1 v. University of Michigan, et. al.
(United States District Court, Eastern District of Michigan)
(Case No. 2:20-cv-10568) (Represented several victims of sexual abuse in private, confidential settlement)

Result:  Confidential settlement

2021      *In re; National Prescription Opiate Litigation (Distributor and Manufacturer Janssen Pharmaceuticals Settlement)*
(United States District Court, Northern District of Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement.)

Result:  $26 billion global settlement

*Simmons, et al. v. Apple, Inc.*
(Superior Court of the State of California, County of Santa Clara)
(Case No. 17CV312251) (Co-Lead Counsel)

Result:   $9.75 million settlement

*Dougherty v Esperion Therapeutics, Inc., et. Al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-10089) (Local Counsel)

Result:  $18.25 million settlement

*In re Broiler Chicken Antitrust Litigation*
(United States District Court, Northern District of Illinois, Eastern Division) (Case No. 1:16-cv-08637)

Result:  $93.5 million in settlements in 2021

2020      *In re Resistors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 3:15-cv-03820) (Informal member of Steering Committee)

Result:  $33.4 million in settlements in 2020

*In re Capacitors Antitrust Litigation*

(United States District Court, Northern District of California)
(Case No. 03:17-md-02801) (Informal member of Steering
Committee)

Result: $30.95 million in settlements in 2020

2019    *Carl Palazzolo, et al. Fiat Chrysler Automobiles N.V., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 16-cv-12803) (Co-Lead Counsel)

Result: $14.75 million settlement

*Zimmerman v. Diplomat Pharmacy, Inc., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-14005) (Liaison Counsel)

Result: $14.1 million settlement

2018    *In re Freight Forwarders Antitrust Litigation*
(United States District Court, Eastern District of New York)
(Case No. 08-cv-00042) (Counsel for Class Representative)

Result: $1 billion settlement

2017    *Foster v. L3 Communications, EO Tech*
(United States District Court, Western District of Missouri)
(Case No. 15-cv-03519) (Co-Lead Counsel)

Result: $51 million settlement (100% recovery)

2016    *In re Automotive Parts Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 12-md-02311) (Liaison Counsel)

Result: Over $1 billion in settlements

*GM Securities Class Action/New York Teachers Retirement System v.
General Motors Company*
(United States District Court, Eastern District of Michigan)
(Case No. 4:14-cv-11191) (Local Counsel)

Result: $300 million settlement

*ERISA Class Action/Davidson v. Henkel Corporation*
(United Sates District Court, Eastern District of Michigan)
(Case No. 12-cv-14103) (Lead Counsel)

Result: $3.35 million settlement (100% Recovery for 41 member class)

*Pat Cason-Merenda and Jeffrey A. Suhre v. VHS of Michigan, Inc.,
dba Detroit Medical Center (Antitrust)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-cv-15601) (Special Trial Counsel)

Result: $42 million settlement

2015    *In re AIG 2008 Securities Litigation*
(United States District Court, Southern District of New York)
(Case No. 08-cv-04772) (Co-Lead Counsel)

Result: $970.5 million settlement

2014    *City of Farmington Hills Employees Retirement System v. Wells
Fargo Bank, N.A.*
(United States District Court, District of Minnesota)
(Case No. 10-cv-04372) (Co-Lead Counsel and Primary Trial Counsel)

Result: $62.5 million settlement

*The Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-14360) (Co-Lead Counsel)

Result: $30 million settlement

*In re Refrigerant Compressors Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 09-md-02042) (Co-Lead Counsel)

Result: $30 million settlement

2013    *The Board of Trustees of the City of Birmingham Employees et. al. v.
Comerica Bank et. al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-13201) (Co-Lead Counsel)

Result: $11 million settlement

*In Re Caraco Pharmaceutical Laboratories, Ltd. Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-cv-12830) (Co-Lead Counsel)

Result: $2.975 million settlement

*In Re TechTeam Global Inc. Shareholder Litigation*
(Oakland County Circuit Court, State of Michigan)
(Case No. 10-114863-CB)  (Liaison Counsel)

Result:  $1.775 million settlement

*General Retirement System of the City of Detroit and Police and Fire Retirement System of the City of Detroit vs. UBS Securities, LLC (Structured Investment Vehicle)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-13920) (Lead Counsel)

Result:   Confidential settlement

2010   *Epstein, et al. v. Heartland Industrial Partners, L.P., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-CV-13555) (Substantial role)

Result:  $12.2 million settlement

*In Re Skilled Healthcare Group, Inc. Securities Litigation*
(United States District Court, Central District of California)
(Case No. 09-5416) (Substantial role)

Result:  $3 million settlement

2009   *In Re Proquest Company Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 4:06-CV-11579) (Substantial role; argued Motion to Dismiss)

Result:  $20 million settlement

*In Re Collins & Aikman Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 03-CV-71173) (Substantial role)

Result:  $10.8 million settlement

*In re IT Group Securities Litigation*
(United States District Court, Western District of Pennsylvania)
(Civil Action No. 03-288) (Co-Lead Counsel)

Result:  $3.4 million settlement

2008   *In re Mercury Interactive Securities Litigation*
(United States District Court, Northern District of California)
(Civil Action No. 03:05-CV-3395-JF) (Substantial role)

Result:  $117 million settlement

*In Re General Motors Corporation Securities and Derivative Litigation*
(United States District Court, Eastern District of Michigan)
(Master Case No. 06-MD-1749) (Co-Lead Counsel)

Status: Obtained major corporate governance reforms to address accounting deficiencies

2007    *Wong v. T-Mobile USA, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 05-CV-73922) (Co-Lead)

Result:  Settlement for 100% of damages

*In re CMS Energy Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No. 2:02 CV 72004) (Substantial role)

Result:  $200 million settlement

2005    *In re Comerica Securities Fraud Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:02-CV-60233) (Substantial role)

Result:  $21 million in total settlements

*Street v. Siemens*
(Philadelphia State Court)
(Case No. 03-885) (Co-Lead Counsel)

Result:  $14.4 million (100% recovery)

*Redmer v. Tournament Players Club of Michigan*
(Wayne County Circuit Court) (Case No. 02-224481-CK) (Co-Lead)

Result:  $3.1 million settlement

2004    *Passucci v. Airtouch Communications, Inc.*
(Wayne County Circuit Court) (Case No. 01-131048-CP) (Co-Lead)

Result:  Estimated settlement value between $30.9 and $40.3 million

*Johnson v. National Western Life Insurance*
(Oakland County Circuit Court)
(Case No. 01-032012-CP) (Substantial role)

Result:  $10.7 million settlement

2003     *Felts v. Starlight*
(United States District Court, Eastern District Michigan)
(Case No. 01-71539) (Co-Lead)

Result: Starlight agrees to stop selling ephedrine as an ingredient in its weight loss dietary supplement product

*In re Lason Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 99-CV-76079) (Co-Lead)

Result: $12.68 million settlement

2001     *Mario Gasperoni, et al. v. Metabolife International, Inc.*
(United States District Court, Eastern District Michigan)
(Case No. 00-71255) (Co-Lead)

Result: Nationwide settlement approved mandating changes in advertising and labeling on millions of bottles of dietary supplement, plus approximately $8.5 million in benefits

1999     *Pop v. Art Van Furniture and Alexander Hamilton Insurance Company*
(Wayne County Circuit Court) (Case No. 97-722003-CP) (Co-Lead)

Result: Changes in sales practices and $9 million in merchandise.

*Schroff v. Bombardier*
(United States District Court, Eastern District Michigan)
(Case No. 99-70327) (Co-Lead)

Result:  Recall of more than 20,000 defective Seadoos throughout North America; repair of defect to reduce water ingestion problem; extended warranties; and approximately $4 million in merchandise.

*In re National Techteam Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No.  97-74587) (Substantial role)

Result:  $11 million settlement

*In Re F&M Distributors, Inc., Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 95-CV-71778-DT) (Minor role)

Result:  $20 million settlement

1998        *In Re Michigan National Corporation Securities Litigation*
            (United States District Court, Eastern District Michigan)
            (Case No 95 CV 70647 DT) (Substantial role)

            Result:  $13.3 million settlement

1995        *In re Intel Pentium Processor Litigation*
            (Superior Court, Santa Clara County, California) (Master File No. 745729)
            (Substantial role)

            Result: Intel agreed to replace millions of defective Pentium chips on demand
            without any cost to consumers

# SELECTED RESUMES



| | **ROCHESTER** | **DETROIT** |
|---|---|---|
| | 950 W. UNIVERSITY DR. | 1001 WOODWARD AVE. |
| | SUITE 300 | SUITE 850 |
| 248-841-2200 \| WWW.MILLER.LAW | ROCHESTER, MI 48307 | DETROIT, MI 48226 |

# E. POWELL MILLER, PARTNER

✉ **EPM**@millerlawpc.com



Powell Miller has been recognized as Michigan's number one ranked attorney by Super Lawyers Magazine for 2020.  He has also been named one of the Top 10 lawyers in Michigan for fifteen consecutive years, from 2009-2023, by Super Lawyers Magazine, and in 2010, 2015, 2019, and 2020 he was the recipient of the Best Lawyers – Lawyer of the Year in the category of Bet-The-Company Litigation. In 2017, Mr. Miller was the recipient of the Judge Friedman and Cook Civility Award, which is awarded to only one lawyer each year. He has been named as one of the Best Lawyers in America every year since 2005. Mr. Miller has earned Martindale-Hubbell's highest rating, AV® Preeminent™ 5/5.0 for legal ethics and ability and a 10/10 from AVVO a public rating system. Mr. Miller is also ranked as only one of nine in Michigan to receive the highest Band 1 rating by Chambers USA, describing Mr. Miller as a "Superb trial lawyer" who "routinely acts for high-profile clients based across the [United] states."

Mr. Miller focuses his practice on all aspects of litigation. He has been retained by many Fortune 500 and other clients to represent them in litigation throughout the United States, including in Michigan, New York, New Jersey, Pennsylvania, Arkansas, Florida, Texas, Kentucky, Ohio, California, Colorado, Indiana, and Illinois.

Mr. Miller recently won an arbitration against Jimmy Johns in the amount of $4.8 million including a $1 million attorney fee award. He has never lost a trial, including verdicts in excess of $5 million, $10 million and $23 million.  Mr. Miller has also obtained in excess of $3 billion in settlements. These settlements are regularly among the top ten in Michigan each year, including a high-profile verdict in May, 2016 for 100% liability.

In October, 2019 Mr. Miller defended a consumer goods manufacturer against Plaintiffs asserting complex price discrimination and antitrust claims, and alleging millions of dollars in damages. Following a 3-week trial and seven hours of deliberations, a California jury returned a unanimous verdict in favor of his client, rejecting all of Plaintiffs' claims.

Mr. Miller has previously served as Co-President of the Detroit Chapter of the Federal Bar Association Antitrust and Securities Committees. He also serves on the Executive Committee for the Wayne State University Law School Board of Visitors and has served a Co-Chair of the American Bar Association Procedures Subcommittee on class actions and multi-district litigation.  He lectures regularly on securities litigation at the University of Michigan School of Law.  He has also served as an Adjunct Professor at the University of Detroit Law School teaching trial practice. In addition, Mr. Miller regularly speaks at continuing legal education seminars on securities fraud class actions. Mr. Miller also serves as a Master member of The Oakland County Bar Association Inns of Court.

Mr. Miller graduated third in his class from Wayne State University Law School, magna cum laude, in 1986. He was named to the honor society, Order of the Coif, and he was an Editor of the Wayne Law Review. In 1986, Mr. Miller joined the Detroit law firm of Honigman Miller Schwartz and Cohn, where he was elected partner in 1990. In 1994, he formed his own firm.



Mr. Miller has been recognized as a top debater in the United States. He won first place at the Harvard University National Debate Tournament as a freshman at Georgetown University. He also represented Georgetown in a special international debating exhibition against the Oxford Debating Union of Great Britain.

Mr. Miller is a proud supporter of the Detroit Urban Debate League, a nonprofit that supports the creation of debate programs in under-served high schools; the University of Detroit Jesuit High School and Academy; The Joe Niekro Foundation, which is committed to aiding in the research and treatment of aneurysm patients and families; and Charlotte's Wings, a nonprofit that is dedicated to supporting ailing children in Southeast Michigan through donations of new books to the children and their families in hospital and hospice care.

**EDUCATION:**

**UNIVERSITY OF DETROIT JESUIT HIGH SCHOOL, 1979**

**GEORGETOWN UNIVERSITY, B.A., 1983**

**WAYNE STATE UNIVERSITY LAW SCHOOL, J.D., 1986**



248-841-2200 | www.Miller.Law

Rochester
950 W. University Dr.
Suite 300
Rochester, MI 48307

Detroit
1001 Woodward Ave.
Suite 850
Detroit, MI 48226



# SHARON S. ALMONRODE, PARTNER

✉ SSA@millerlawpc.com

Sharon S. Almonrode is a partner at The Miller Law Firm, where she is also the Chair of the Firm's Class Action and Multi-District Litigation Department. She has a complex litigation practice with an emphasis on prosecuting large, high-risk, significant damage exposure cases on behalf of clients. Her practice includes ERISA and pension fund litigation, breach of fiduciary duty, consumer products, securities and commercial litigation. She has represented commercial clients in products liability and patent and trademark related litigation.

Ms. Almonrode was appointed to the Plaintiffs' Steering Committee in litigation against Mylan Pharmaceuticals and other drug companies regarding their anti-competitive conduct in the sale of EpiPen epinephrine auto-injectors, resulting in a monopoly that has made them billions of dollars at the expense of consumers and third party payors and which settled for $609 million dollars. *See In Re: Epipen (Epinephrine Injection, UPS) Marketing, Sales Practices and Antitrust Litigation,* No. 17-md-02785 (D. Kan.). Ms. Almonrode also served as co-lead counsel in *Zimmerman v The 3M Company, et. al*., C.A. 1:17-cv-01062, which settled for $54 million dollars, providing compensation to homeowners who alleged environmental contamination from PFAS chemicals. She also served as co-lead counsel in *In Re: Foster v. L3 Communications, EO Tech*, No. 15-cv-03519 (E.D. Mich.) which settled in excess of $51 million, and as lead counsel in the ERISA class action *Davidson v. Henkel Corporation*, No. 12-cv-14103 (E.D. Mich.) which settled for $3.35 million, resulting in a 100% recovery for the class. She was lead counsel in ground-breaking litigation against an actuarial firm on behalf of an ERISA pension fund, which resulted in a $110 million dollar recovery for the fund.

In 2010, she received the special distinction of Michigan Leader in the Law, awarded by *Michigan Lawyers' Weekly*. For the past 13 years, Ms. Almonrode has been named a Super Lawyer. For the past 11 years, she has been named one of the top 50 Women Super Lawyers in the State of Michigan (out of approximately 11,000 women practicing in the state). For the past 10 years, she has been named one of the top 100 Lawyers in Michigan (out of 34,204 lawyers in the state). She was named one of the top five Consumer Lawyers in the State of Michigan for 2016. Ms. Almonrode was named among the most notable women lawyers in Michigan by *Crain's Detroit Business* for 2017. In 2019, she was admitted to the inaugural class of the Michigan Lawyers' Weekly Hall of Fame. In 2024, she was named one of the Best Lawyers in America. She has earned Martindale-Hubbell's highest rating, AV® Preeminent™ 5/5.0 for legal ethics and ability.

Ms. Almonrode was admitted to practice in the State of Michigan in 1982. She is also admitted to practice in the U.S. District Court Eastern District of Michigan, U.S. District Court Western District of Michigan, U.S. Bankruptcy Court Eastern District of Michigan, U.S. Bankruptcy Court Western District of Michigan, U.S. District Court – Northern District of Illinois, U.S. Court of Appeals 6th Circuit, the State of New York, the U.S. District Court for Southern District of New York, the U.S. District Court for the Eastern District of New York, the U.S. Court of Appeals 2nd Circuit, and the U.S. Supreme Court.

Before joining The Miller Law Firm, P.C. in 2012, Ms. Almonrode was a Partner at Sullivan, Ward, Asher & Patton, P.C., and Supervisor-Salaried Personnel at General Motors Corp.

Ms. Almonrode's pro bono activities have included working with the Detroit Institute of Arts and the Detroit Film Theatre Board.

**Oakland University, B.S., 1978**

**University of Detroit Mercy School of Law, J.D. 1981**



**ROCHESTER**
950 W. UNIVERSITY DR.
SUITE 300
ROCHESTER, MI 48307

**DETROIT**
211 WEST FORT STREET
SUITE 705
DETROIT, MI 48226

248-841-2200 | WWW.MILLER.LAW

# EMILY E. HUGHES, PARTNER

✉ EEH@millerlawpc.com



Emily E. Hughes is a partner at The Miller Law Firm. Ms. Hughes heads the Firm's data-privacy practice and litigates on behalf of plaintiffs in numerous complex data-privacy, consumer, and auto-defect class actions across the nation.

Ms. Hughes presently serves as a member of the Plaintiffs' Steering Committee in a nation-wide data-privacy class action, *Miller v. NextGen Healthcare, Inc.*, No. 23-cv-02043 (N.D. Ga.) (member of Plaintiffs' Steering Committee and Third-Party Discovery team).

Ms. Hughes also plays a central role in litigating the following data-privacy cases on behalf of Miller Law:

- *In re: Wright & Filippis, LLC Data Security Breach Litig.*, No. 22-cv-12908 (E.D. Mich.) (secured preliminary approval of a non-reversionary class settlement fund of $2,900,000 on January 4, 2024);
- *In re: Hope College Security Breach Litig.*, No. 22-cv-01224 (W.D. Mich.) (secured preliminary approval of non-reversionary class settlement fund of $1,500,000 on January 3, 2024);
- *In re: Flagstar December 2021 Data Sec. Incident Litig.*, No. 22-cv-11385 (E.D. Mich.) (Firm appointment to Plaintiffs' Executive Committee);
- *In re: Henry Ford Health System Data Security Litig.*, No. 23-11736 (E.D. Mich.) (Firm appointment as Interim Lead Counsel);
- *In re: Lansing Community College Data Breach Litig.*, Case No. 23-00738 (W.D. Mich.); and
- *Drugich v. McLaren Health Care Corp.*, Case No. 23-cv-11736 (E.D. Mich.)

In addition to Ms. Hughes' substantial data-privacy practice, she routinely litigates complex consumer and auto-defect class actions. Recently, Ms. Hughes played a key role in Miller Law's efforts as Co-Lead Class Counsel in *Cooper v. The 3M Company*, No. 17-cv-01062 (W.D. Mich.), resulting in a $54 million cash settlement finally approved in 2023. She also significantly contributed to Miller Law's role on the Plaintiffs' Steering Committee in *In re EpiPen*, No. 17-md-02785 (D. Kan.) ($609 million in settlements). In 2016, Ms. Hughes and her partner successfully obtained a unanimous jury verdict in favor of their clients in a partnership dispute following a six-day trial in the U.S. District Court for the Eastern District of Michigan. *See Blumberg v. DocNetwork LLC, et al.*, No. 13-cv-15042. Further, Ms. Hughes played a substantial role in obtaining 100% recovery on behalf of a certified class of retirees under the civil enforcement provisions of ERISA. *See Davidson v. Henkel Corp.*, No. 12-cv-14103 (E.D. Mich.).

Ms. Hughes was selected to Michigan Super Lawyers in 2022 and 2023 and has been recognized as a "Rising Star" in Michigan Super Lawyers in the area of General Litigation for 2010-2015.

Ms. Hughes is admitted to practice in Michigan, the U.S. District Court of the Eastern and Western Districts of Michigan, and the Sixth Circuit Court of Appeals.

**University of Michigan, B.A., 2001**

**University of Illinois College of Law, J.D., 2005, *cum laude***



**ROCHESTER**
950 W. UNIVERSITY DR.
SUITE 300
ROCHESTER, MI 48307

**DETROIT**
1001 WOODWARD AVE.
SUITE 850
DETROIT, MI 48226

248-841-2200  |  WWW.MILLER.LAW

# DENNIS A. LIENHARDT, PARTNER

✉ DAL@millerlawpc.com

Dennis A. Lienhardt is a Partner at The Miller Law Firm. He concentrates his practice on complex commercial and class action litigation.

Dennis Lienhardt has extensive experience litigating complex class action and commercial litigation cases, including those concerning consumer protection, data breach, product liability, environmental, antitrust, and securities fraud claims. He has prosecuted dozens of class actions on behalf of consumers in federal courts in Michigan, New York, California, Illinois, Ohio, Minnesota, Kanas, and Arkansas. He was also named a Michigan Super Lawyer Rising Star in both 2022 and 2023.

Mr. Lienhardt has played a significant role in recovering hundreds of millions of dollars in cash and benefits for class members nationwide. These include multiple automotive defect settlements, including one valued at more than $100 million and another valued at more than $30 million, and multiple antitrust and consumer protection cases.

Mr. Lienhardt currently serves as a key member of many court-appointed leadership teams, including in *In re Chevy Bolt EV Battery Litig.*, *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, and *In re FCA US LLC Monostable Elec. Gearshift Litig.* He is also currently prosecuting many other nationwide class actions involving product defects, securities fraud, data breaches, and violations of consumer protection statutes.

Prior to joining Miller Law, Mr. Lienhardt received his law degree from Wayne State University Law School where he served as Editor-in-Chief of the Wayne Law Review. He received his Bachelor of Arts from the University of Michigan – Dearborn where he was elected President of the Student Government and named a university "Distinguished Student Leader."

**University of Michigan-Dearborn, B.A., 2013**

**Wayne State University Law School, J.D., 2016**

