# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## DECLARATION OF FRANK S. HEDIN IN
## SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

I, Frank S. Hedin declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1.      I am a partner at Hedin LLP and counsel of record for Plaintiffs in this action. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed concurrently herewith.

### RELEVANT PPPA LITIGATION EXPERIENCE

2.    My co-counsel and I have been at the forefront of litigation brought under the Michigan PPPA, and thus the results obtained in this case derive from nearly a decade of efforts in this arena.

3.    Beginning in 2015, proposed Class Counsel began investigating and litigating cases against publishers for alleged violations of the Michigan Preservation of Personal Privacy Act (the "PPPA"). *See, e.g.*, *Edwards v. Hearst Commc'ns, Inc.*, No. 15-cv-09279 (S.D.N.Y.). The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment.

4.    In 2016, the Michigan legislature amended the PPPA, effective July 31, 2016, to make "actual damages" a prerequisite to stating a claim and remove a prevailing plaintiff's entitlement to statutory damages. Following the effective date of the amendment, and a decision from the Eastern District holding that cases filed on or after July 31, 2016 were subject to the amended version of the statute, the consensus among the plaintiff's bar was that the PPPA was officially dead and, as such, the filing of PPPA cases abruptly came to an end. *See Raden v. Martha Stewart Living OmniMedia, Inc.*, No. 16-12808, 2017 WL 3085371, at *4 (E.D. Mich. July 20, 2017), *reconsideration denied*, No. 16-12808, 2018 WL 460072 (E.D. Mich. Jan. 18, 2018) (case filed July 31, 2016) (last PPPA case filed by any firm other than

2

proposed Class Counsel, PPPA claim dismissed by court on ground that it was subject to amended version of statute, even though disclosures in question occurred prior to July 31, 2016 effective date of amendment).

5.    Nevertheless, on May 29, 2018, nearly two years after the July 31, 2016 effective date of the Michigan legislature's amendment to the PPPA, my firm initiated *Horton v. GameStop Corp.*, No. 1:18-CV-596 (W.D. Mich.). *Gamestop* was a PPPA class action alleging that the defendant had disclosed the plaintiff's and other Michigan residents' personal reading information between May 29, 2015 and July 31, 2016 (the effective date of an amendment to the PPPA) – in violation of the unamended version of the PPPA that existed up until July 30, 2016. *See Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 681 (W.D. Mich. 2018). The defendant moved to dismiss on the grounds that, *inter alia*, the complaint failed to state a claim for violation of the unamended PPPA because the case had been filed after the amendment's July 31, 2016 effective date. *Gamestop*, 380 F. Supp. 3d at 682. In successfully defeating this motion, my firm obtained the first decision in the country holding that, regardless of the date on which a PPPA action is commenced, "the unamended [PPPA] applies to . . . claims that accrued prior to July 31, 2016, and, consequently, [a] plaintiff [asserting such a claim] [is] not required to plead actual damages." *Gamestop*, 380 F. Supp. 3d at 683. The *Gamestop* decision paved the way for my co-counsel and my successful prosecution of the instant action against Mayo

on behalf of the Settlement Class, because here, as in *Gamestop*, Plaintiffs allege violations of the unamended, pre-July 31, 2016 version of the statute, arising from Defendant's disclosures of personal reading information that pre-dated the statutory amendment's July 31, 2016 effective date. Indeed, invoking the pre-July 31, 2016 version of the statute in this case enabled Plaintiffs to seek statutory damages for the putative class, without showing "actual damages," and thus was instrumental in securing the Settlement presently before the Court.

6.      After obtaining the *Gamestop* decision on September 28, 2018, my firm and co-counsel initiated numerous additional PPPA actions against publishers of written materials through June of 2019 (a "second wave" of PPPA litigation), further refining our skills for prosecuting such claims and, in the process, prevailing on other important legal issues implicated by the statute. *E.g.*, *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF-RSW (E.D. Mich., filed Jan. 30, 2019); *Huguelet, et al. v. Maxim Inc.*, No. 19-cv-4452-ALC (S.D.N.Y., filed May 15, 2019); *Chelone, et al. v. America's Test Kitchen LP*, No. 2:19-cv-11757-TGB-MKM (E.D. Mich., filed June 19, 2019); *Forton v. TEN: Publishing Media, LLC*, No. 1:19-cv-11814-JEL-PTM (E.D. Mich., filed June 19, 2019); *Lin v. Crain Commc'ns Inc.*, No. 19-cv-11889 (E.D. Mich., filed June 25, 2019).

7.      For example, in *Lin*, my firm brought the first ever PPPA class action against a Michigan-based defendant on behalf of a non-Michigan-resident plaintiff

and a proposed nationwide class. *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020). Specifically, the complaint alleged that a Michigan-based company had disclosed, from its headquarters in Michigan, the personal reading information of the plaintiff (a resident of Virginia) and all of its other subscribers nationwide to third parties prior to July 31, 2016, in violation of the unamended version of the PPPA. *Lin*, 2020 WL 248445, at *1. The defendant moved to dismiss on the grounds that the PPPA only protects and is only enforceable by Michigan residents, to the exclusion of out-of-state residents – presenting an issue of first impression concerning the territorial reach of the PPPA. *Lin*, 2020 WL 248445, at *3. We defeated defendant's motion, and in so doing obtained the first decision in the country holding that the PPPA "allow[s] non-Michigan residents to pursue claims against Michigan resident-defendants." *Lin*, 2020 WL 248445, at *4. Although the extraterritoriality issue in *Lin* does not directly bear on the claims alleged in this case, my firm's successful prosecution of the *Lin* action (together with our co-counsel) further cemented our ability to prevail on complex and novel issues under the PPPA and strengthened both our knowledge of the statute and our reputation litigating claims under it.

8.    In this "second wave" of PPPA litigation, which spanned from September 2018 (when *Gamestop* was decided) through the end of July 2019, the consensus across the federal judiciary and the plaintiffs and defense bars alike was

5

that the statute was governed by a three-year limitation period, and it was thus universally understood at that time that claims for violation of the pre-amended version of the statute would no longer be actionable as of July 31, 2019 (three years after the amendment's effective date). *See Edwards v. Hearst Commc'ns, Inc.*, No. 15-CV-9279 (AT)(JLC), 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016) (noting that "a three-year statute of limitations admittedly governs [the plaintiff's PPPA] claims").

9.    Nonetheless, after closely reviewing the Sixth Circuit's decision in *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017), my firm determined that the PPPA is actually subject to the six-year limitation period found in M.C.L. § 5813, rather than the three-year period found in M.C.L. § 5805(2) (which up until that point had been universally applied in every prior PPPA case).

10.    Thus, on June 15, 2021, nearly five years after the effective date of the PPPA's amendment, and after extensive pre-filing investigative work, my firm together with our co-counsel in this case, initiated the action *Pratt v. KSE Sportsman Media, Inc*., No. 21-cv-11404-TLL-PTM (E.D. Mich.), which alleged violations of the pre-amended version of the statute that accrued between June 15, 2015 (*six* years prior to the filing of the action) and July 30, 2016.

11.    After further time-consuming investigative work, the *Pratt* action was

followed by dozens of additional PPPA actions filed by my firm and co-counsel – including the instant matter (discussed further below) – each of which depended on the application of the six-year limitation period. *See, e.g.*, *Owen v. Kalmbach Media Co.*, No. 21-cv-11814-VAR-KGA (E.D. Mich.); *Devroy v. Annie's Publishing, LLC*, No. 21-cv-11815-TGB-EAS (E.D. Mich.); *Krassick v. Archaeological Institute of America*, No. 21-cv-00180-HYJ-RSK (W.D. Mich.).

12.     On November 24, 2021, the defendant in *Pratt* moved to dismiss the complaint on the ground that, *inter alia*, plaintiff's claim was time-barred by section 5805(2)'s three-year limitation period. *See Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 669 (E.D. Mich. 2022). On February 15, 2022, following full briefing on the limitation-period question, the court presiding over *Pratt* issued a published opinion denying defendant's motion to dismiss in full, rejecting defendant's argument that three-three period governs PPPA claims and holding that the six-year period found in section 5813 governs such claims. *Pratt*, 586 F. Supp. 3d at 673 (holding that "[a] six-year statute of limitations applies to PPPA claims").

13.     After the decision in *Pratt*, my firm and our co-counsel briefed and prevailed on the same statute of limitations issue in several of our other PPPA cases filed in this so-called "third wave," in both the Eastern and Western Districts of Michigan. *See, e.g.*, *Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *5 (W.D. Mich. June 9, 2022); *Hall v. Farm Journal, Inc.*, No. 21-

cv-11811-DML-APP (E.D. Mich.) (ECF Nos. 24, & 26 at PageID.718, April 5, 2022 decision finding the plaintiff's claim to be timely and denying motion to dismiss; & ECF No. 28, June 21, 2022 order denying defendant's motion for reconsideration and reaffirming prior decision on motion to dismiss) (*Hall*, ECF Nos. 24, 26, 28, attached hereto as **Exhibit 1**).

14.    On the strength of these rulings holding that a six-year limitation period governs PPPA claims, my co-counsel and I successfully settled, were appointed as Class Counsel in, and obtained final approval of settlements in *Pratt* as well as several other "wave three" PPPA class actions. *See, e.g.*, *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement for a settlement class that included 14,503 persons and paid each class member approximately $415); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)[1] (approving PPPA class settlement paying roughly $50 per claimant); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 PageID.1369 (approving PPPA class settlement paying roughly $261 per claimant); *Strano v. Kiplinger Washington*

---

[1]    *See* Aug. 9, 2022 Final Fairness Hearing Transcript at 7:9-8:2 (commending work of counsel and noting that "the class has benefited in a concrete way" from the "very effective work" done by the plaintiff's counsel, "where the lawyers did produce significant results for the class") (a copy of the Transcript is attached as Exhibit D to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement).

*Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich. Oct. 11, 2023) (approving class

settlement paying roughly $248 per class member); *Moeller v. The Week*

*Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich. Oct. 11, 2023) (approving class

settlement paying roughly $248 per class member).

## THE INSTANT LITIGATION

15.    As discussed above, prior to initiating the instant action (or any of the

other "third wave" PPPA cases), my firm and our co-counsel performed a lengthy,

several-months-long factual investigation into Mayo's (and other defendants')

subscriber list disclosure practices in effect during the relevant pre-July 31, 2016

time period. This investigative work began in December 2020 when my firm

reviewed and analyzed relevant legal authorities addressing Michigan's statutory

scheme concerning limitation periods. Due to the confidential nature of Defendant's

alleged disclosures, our pre-suit investigation into the facts underlying this case (as

well as industry-wide list disclosure practices generally) was extensive, and involved

in-depth research into a number of publishing industry practices, including data

appending and data cooperatives.

16.    Prior to initiating this action in particular, my firm and I conducted a

comprehensive pre-filing investigation concerning the specific factual and legal

issues underlying Plaintiffs' claims. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business, its practices of
  selling newsletters, consumer-privacy policies, and public

statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of *Mayo Clinic Health Letter* subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto; and

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period, and analyzing the arguments for the applicability of COVID-19 tolling.

17.    As a result of this thorough pre-filing investigation, proposed Class Counsel was able to develop a viable theory of liability for a PPPA claim against Defendant and prepare a thorough Complaint against Defendant, filed September 26, 2022. ECF No. 1.

18.    And prior to Plaintiff Schrieber filing a First Amended Class Action Complaint pursuant to Fed. R. Civ. P. 15(a)(1) on January 3, 2023, proposed Class

Counsel conducted an even more comprehensive investigation concerning the specific factual and legal issues underlying Plaintiffs' claims. ECF No. 19. As a result, Plaintiff Schrieber's First Amended Complaint included four additional exhibits, providing further supporting documentation of improper disclosures during the applicable pre-July 31, 2016 time period, and additional allegations describing the implications of the same. *See* ECF No. 19, ¶¶ 3-10, & ECF Nos. 19-3, 19-4, 19-5, 19-6 (Exhibits B-E to the First Amended Complaint).

19.    Thereafter, the Court entered a Case Management Order (ECF No. 23), and the Parties began conducting significant written and document discovery, which included the exchange of thousands of pages of documents and voluminous electronically stored information, and the issuance of over 30 third-party subpoenas by Plaintiffs.

20.    On January 17, 2023, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the First Amended Complaint failed to state a claim upon which relief could be granted. ECF Nos. 24-25.

21.    On July 13, 2023, after full briefing, the Court issued an opinion and order denying Defendant's motion to dismiss in its entirety. ECF Nos. 45-46.

22.    On June 26, 2023, Commerce Register, Inc. ("CRI"), one of the third parties subpoenaed by Plaintiffs, produced a document in response to Plaintiffs' subpoena concerning Defendant's transmission of a subscriber list to The Salvation

Army that occurred on or about June 20, 2016, squarely within the relevant time period. Thus, on July 27, 2023, Plaintiff Schreiber filed a Second Amended Complaint, which added Plaintiffs Vredeveld and Colony (persons who appeared on the list transmitted to The Salvation Army) as plaintiffs and putative class representatives. ECF No. 49.

23.     On August 10, 2023, Defendant filed its Answer to the Second Amended Complaint, which denied the allegations generally and asserted 12 affirmative defenses to liability, including that the claims were time-barred. ECF No. 50.

24.     On October 10, 2023, SFG, LLC ("SFG"), Mayo's agent and another of the third parties subpoenaed by Plaintiffs, produced materials in response to Plaintiffs' subpoena indicating that SFG transmitted, on Mayo's behalf, a Mayo subscriber list to CRI on June 23, 2016, squarely within the applicable class period. This discovery was spurred by SFG's production to Plaintiffs' counsel of a server log file that reflects the activity on SFG's server housing Mayo's data during the class period. Although Plaintiffs requested a copy of this log file in their subpoena issued to SFG on June 1, 2023, SFG consistently denied being in possession of a such a file for several months, including after multiple meet and confer efforts by Plaintiffs' counsel. In response to these denials, and after numerous meetings and conferrals with SFG's counsel, my firm served a subpoena for inspection of premises

on SFG, setting a date for Plaintiffs' counsel and a digital forensics firm selected by Plaintiffs' counsel to inspect the actual server at SFG's headquarters in Big Sandy, Texas to locate the server's log file that reflects the activity on the server during the class period. Shortly thereafter, on October 10, 2023, SFG's counsel notified Plaintiffs' counsel that it had located the log file, which had been in its possession all along, and produced the file to Plaintiffs' counsel. The log file reflects, *inter alia*, a transmission of a Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to CRI on June 23, 2016. Thus, on February 9, 2024, Plaintiffs Schrieber, Vredeveld, and Colony filed the operative Third Amended Complaint, which added Plaintiff Surnow (who appears on the July 18, 2013 subscriber list) as a plaintiff and putative class representative. ECF No. 65.

25.    From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.

26.    On April 17, 2023, the Parties participated in an early settlement conference before Magistrate Judge Kent in Grand Rapids, which was unsuccessful.

27.    Later on, on October 27, 2023, the Parties participated in a full-day mediation with Judge Rosen in Detroit, during which they made substantial progress but failed to reach a settlement.

28.     Then, on December 11 and 12, 2023, the Parties participated in another two full-day mediations with Judge Rosen in New York, which ultimately culminated in the proposed settlement.

29.     In preparation for each of these sessions of mediation, my co-counsel and I prepared detailed mediation statements outlining the strength of Plaintiffs' case and comparing this matter with other, previously settled PPPA cases against publishers, in order to properly evaluate any potential settlement proposals and structures. In advance of these mediation sessions, my co-counsel and I also thoroughly reviewed the voluminous discovery produced by Defendant and various third parties, and conducted extensive analysis of the size and parameters of the potential class (which included highly technical work performed by a database management expert hired by proposed Class Counsel) and the strengths and weaknesses of Plaintiffs' case (including, most notably, the applicability of COVID-19 tolling and the pending appeal before the Michigan Supreme Court concerning the same).

30.     In the weeks following the sessions of mediation in New York before Judge Rosen, the Parties negotiated and finalized the Settlement Agreement, attached as Exhibit 1 to the Declaration of E. Powell Miller, conducted a competitive bidding process and selected a proposed Settlement Administrator – Kroll

Settlement Administration LLC ("Kroll")[2] – and worked together to finalize the Settlement Class List, which included the assistance of Plaintiffs' database management expert.

31.    The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator. My co-counsel and I worked extensively with defense counsel to finalize and memorialize the agreement into a formal Class Action Settlement Agreement, including proposed class notice documents. That process included rounds of revisions.

32.    The resulting $52,500,000 non-reversionary Proposed Settlement secures the best-ever recovery in a PPPA case, both in terms of absolute dollars and dollars per-class member. Based on the records obtained in discovery, the proposed Settlement Class includes 62,746 direct purchasers whose information was included on the following lists obtained in discovery: MAYO_Schreiber_000533 and MAYO_Schreiber_000519. With a $52,500,000 non-reversionary Settlement Fund, each Class Member who does not exclude himself or herself from the Settlement

---

[2]    Proposed Class Counsel conducted a competitive bidding process with the lowest bid being that tendered by Kroll. The bid is for $134,800, and this bid is a not to exceed price.

will <u>automatically</u> receive a *pro rata* cash payment of approximately $500.00 to $700.00.

33.   Prior to this settlement, the highest total settlement in a PPPPA case was in *Edwards v. Hearst Communications, Inc.*, No. 15-cv-09279 (S.D.N.Y.), where the parties reached a $50,000,000 settlement on behalf of a settlement class comprised of over 1.9 million persons, and the highest per-class member recovery in a PPPA case was in *Pratt v. KSE Sportsman Media, Inc.*, Case No. 1:21-cv-11404-TLL-PTM (E.D. Mich.), where the Parties reached a $9,500,000 settlement on behalf of a settlement class comprised of 14,503 persons who each received approximately $415. Thus, the Proposed Settlement is the best of its kind in two respects – both the total amount recovered ($52.5 million), as well as the amount recovered for each Settlement Class member ($500.00 to $700.00, which is approximately 20% greater than the next highest per-class member recovery in a PPPA settlement).

34.   Plaintiffs and Class Counsel recognize that, despite our belief in the strength of Plaintiffs' claims and Plaintiffs' and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain in light of the significant risks of non-recovery posed by continued litigation.

35.   Indeed, had this litigation continued, Plaintiffs and Settlement Class

members would have faced several significant risks of total non-recovery, both on questions concerning the merits of the claims and the ability of Plaintiffs to certify a class.

36.    In particular, from the outset of the case, Plaintiffs and proposed Class Counsel recognized that the case presented a substantial and novel litigation risk pertaining to the applicability of COVID tolling to the statute of limitations. Specifically, at the time of filing, no court had ever considered whether the Michigan Supreme Court's orders tolling the statute of limitations during the early days of the COVID-19 pandemic were applicable to a PPPA case. Moreover, the constitutionality of those orders has been challenged and is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hosp.*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). Because the case was filed more than six years after the alleged unlawful disclosures, if this Court or the Michigan Supreme Court ultimately held that the COVID-19 tolling orders either do not apply to this case or are unconstitutional, the case would have been time-barred and the Settlement Class would have recovered nothing at all. Relying on this six-year period, Class Counsel initially believed that the latest that a suit could reasonably be filed was by July 31, 2022. But, through extensive research and legal analysis, Class Counsel determined that the 101 days of tolling provided by the COVID Orders would allow a suit to be

brought through October 2022. My co-counsel and I have actively consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in the COVID Orders cases which have now been taken up by the Michigan Supreme Court.

37.    Additionally, absent the Settlement, Defendant (through its highly experienced attorneys) indicated that it would have defended against Plaintiffs' claims by arguing that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (involving agent intermediaries), that Defendant provided appropriate notice of its practices, and that the information provided to CRI via SFG's computer system did not constitute "disclosures" within the meaning of the statute. Defendant would also have mounted a vigorous defense at trial and beyond, including in any appeal from an adverse judgment or an order certifying a class, and that in light of the statutory damages at stake, Defendant would argue – in both the trial and appellate courts – for a reduction of any class-wide damages award on substantive due process grounds.

38.    Following execution of the Settlement Agreement, my co-counsel and I then prepared Plaintiffs' Motion for Preliminary Approval, which is being filed contemporaneously herewith.

## FAIRNESS & ADEQUACY OF THE SETTLEMENT

39.    Plaintiffs and proposed Class Counsel believe that the relief provided

by the settlement weighs heavily in favor of a finding that the settlement is fair, reasonable, and adequate, and well within the range of approval.

40.    In this litigation, each of the Plaintiffs contributed substantial effort to advance the interests of the Settlement Class. Specifically, each of the Plaintiffs worked with proposed Class Counsel to detail their subscription purchase history, including how they subscribed to the publications at issue; to inform proposed Class Counsel that they did not agree in writing or otherwise to allow Defendant to sell or disclose their Personal Reading Information; that they did not receive notice of such disclosures, nor were they aware of them at all. Moreover, each of the Plaintiffs worked with proposed Class Counsel to prepare at least one of the pleadings in the case and carefully reviewed them for accuracy and approved each before filing.

41.    Plaintiff Schreiber's involvement was particularly extensive. In addition to providing the assistance detailed above, he initiated the case by filing the initial Complaint, and assisted my firm and my co-counsel in our pre-filing investigation.  Plaintiff Schreiber also actively conferred with Plaintiffs' counsel prior to and during the settlement conference before Judge Kent early in the case, in addition to the three sessions of mediation before Judge Rosen that ultimately led to the Settlement.

42.    In addition to providing the assistance detailed above, Plaintiffs Vredeveld and Colony were instrumental in providing my firm and my co-counsel

with information concerning their subscription histories that allowed us to confirm that they were included on the list transmitted to The Salvation Army. These Plaintiffs also assisted in preparing the second amended complaint and reviewing that pleading prior to its filing. Plaintiffs Vredeveld and Colony also actively conferred with Plaintiffs' counsel prior to and during the three sessions of mediation before Judge Rosen that ultimately led to the Settlement.

43.    In addition to providing the assistance detailed above, Plaintiff Surnow, although relatively new to the case, provided valuable information to my firm and my co-counsel concerning his subscription history that allowed us to confirm he had been included on the 2013 subscriber list transmitted to CRI on SFG's server during the class period. He also assisted in preparing the operative third amended complaint and reviewed that pleading prior to its filing. Plaintiff Surnow also actively conferred with Plaintiffs' counsel prior to and during the second and third sessions of mediation before Judge Rosen that ultimately led to the Settlement.

44.    Moreover, all of the Plaintiffs filed this case knowing it would invariably reveal their statutorily-protected status as subscribers to Defendant's publication, and kept in regular contact with proposed Class Counsel, including on matters of strategy, discovery, mediation, and the prospects of settlement.

45.    Plaintiffs also coordinated with proposed Class Counsel to respond to formal discovery, including searching for documents such as records pertaining to

their magazine subscriptions, and were prepared to testify at deposition and trial, if necessary.

46.    I am of the opinion that Plaintiffs' active involvement in this case was critical to its ultimate resolution. They took their role as class representatives seriously, devoting time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as a class representative, I do not believe such a strong result could have been achieved.

## HEDIN LLP'S EXPERIENCE

47.    Based in Miami, Florida, Hedin LLP focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel, including in matters alleging claims for violation of Michigan's Preservation of Personal Privacy Act ("PPPA"). *E.g.*, *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich.) (class counsel in action alleging sale of *Playboy* subscribers' personal information in violation of the Michigan PPPA, obtained $3.8 million non-reversionary class settlement); *Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal

Telephone Consumer Protection Act ("TCPA"), successfully defeated defendant's motion to compel arbitration and obtained $16 million non-reversionary class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614-MGC (S.D. Fla.) (class counsel in action alleging the improper assessment of overdraft fees when accounts were not actually overdrawn, obtained $4.95 million class settlement); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in action alleging the improper assessment of overdraft fees for "non-recurring" debit card transactions misclassified as "recurring" debit card transactions, obtained $2.7 million class settlement). Over the past five years alone, my firm has recovered over $400 million in all-cash relief for the classes we have represented. *See* Firm Resume of Hedin LLP, a true and accurate copy of which is attached hereto as **Exhibit 2.**

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 16th day of February 2024 at Miami, Florida.

*/s Frank S. Hedin*
Frank S. Hedin

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIA HALL,

                       Plaintiff,                        Case Number 21-11811

v.                                           Honorable David M. Lawson

FARM JOURNAL, INC.,

                       Defendant.

_____/

## ORDER DENYING MOTION TO DISMISS

This matter is before the Court on the defendant's motion to dismiss.  After reviewing the parties' submissions and hearing oral argument on April 5, 2022, the Court announced its decision from the bench and denied the defendant's motion.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss (ECF No. 11) is **DENIED** for the reasons stated on the record.

                                       s/David M. Lawson
                                       DAVID M. LAWSON
                                       United States District Judge

Dated:   April 5, 2022

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3     Tia Hall, individually and on behalf
       of all others similarly situated,
 4
                              Plaintiff,
 5
       -v-                                   Case No. 21-11811
 6
       Farm Journal, Inc., d/b/a
 7     Farm Journal Media,

 8                            Defendant.
       _____/
 9
                            MOTION TO DISMISS
10                            April 5, 2022

11           BEFORE THE HONORABLE DAVID M. LAWSON
                    United States District Judge
12
           Theodore Levin United States District Courthouse
13                  231 West Lafayette Boulevard
                          Detroit, Michigan
14
       APPEARANCES:
15
       FOR THE PLAINTIFF:    FRANK S. HEDIN
16                           Hedin Hall LLP
                             1395 Brickell Avenue, Suite 900
17                           Miami, Florida  33131
                                and
18                           E. Powell Miller
                             The Miller Law Firm
19                           950 W. University Drive, Suite 300
                             Rochester, Michigan  48307
20                                and
                             Philip L. Fraietta
21                           Bursor & Fisher, P.A.
                             888 Seventh Avenue
22                           New York, New York  10019

23     (Appearances Continued to Following Page)

24           To Obtain a Certified Transcript Contact:
              Rene L. Twedt, CSR-2907, RDR, CRR, CRC
25                     www.transcriptorders.com
```

2

```
 1    APPEARANCES CONTINUED:

 2
       FOR THE DEFENDANT:    J. Michael Huget
 3                          Honigman LLP
                            315 East Eisenhower Parkway
 4                          Suite 100
                            Ann Arbor, Michigan  48108
 5                             and
                            Robert M. Riley
 6                          Honigman LLP
                            2290 First National Building
 7                          660 Woodward Avenue
                            Detroit, Michigan  48226
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      TABLE OF CONTENTS

 2   MATTER _____ _PAGE

 3   MOTION TO DISMISS

 4   Argument by Mr. Huget...................................   5
     Argument by Mr. Hedin...................................   9
 5   Further Argument by Mr. Huget..........................  14
     Ruling by the Court....................................  14
 6

 7   CERTIFICATE OF COURT REPORTER..........................  21

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Motion to Dismiss - April 5, 2022                                                    4

 1  Detroit, Michigan

 2  April 6, 2022

 3  2:46 p.m.

 4                              *      *      *

 5          THE CLERK:  All rise.  The United States District

 6  Court for the Eastern District of Michigan is now in session,

 7  the Honorable David M. Lawson presiding.

 8          THE COURT:  You may be seated.

 9          THE CLERK:  Now calling the case of Hall v. Farm

10  Journal, Inc., Case Number 21-11811.

11          THE COURT:  Good afternoon, counsel.  May I have an

12  appearance for the plaintiff?

13          MR. HEDIN:  Good afternoon, your Honor.  Frank Hedin

14  on behalf of the plaintiff.

15          THE COURT:  All right.  You may remain seated when you

16  address the Court, presently, under our COVID protocol.

17          For the defendant, please?

18          MR. HUGET:  Yes.  Good afternoon, your Honor.

19  Michael Huget and Robert Riley.

20          THE COURT:  Which one will be arguing?

21          MR. HUGET:  I will, your Honor.  Michael Huget.

22          THE COURT:  All right, Mr. Huget.

23          Did you read Judge Ludington's opinion?

24          MR. HUGET:  Yes, your Honor.

25          THE COURT:  How is this case different?

1      MR. HUGET:  Honestly, I think Judge Ludington, with

2  all due respect, got it wrong.

3      THE COURT:  Well, okay.  So it's not a matter of

4  trying to distinguish that opinion, you just think that a

5  different result should result?

6      MR. HUGET:  Absolutely.  If Judge Ludington had

7  followed Michigan case law, Michigan Supreme Court, if he had

8  followed other precedent in this court, in the Sixth Circuit,

9  he wouldn't have come to the conclusion -- or shouldn't have

10  come to the conclusion that simply because it's a statutory

11  cause of action a three-year statute or a six-year statute of

12  limitation applies.

13      This Court, in a case we cited, the Herrin v. Dunham

14  case, you held that a three-year statute of limitations applied

15  to a 1983 claim in the absence of any other statute of

16  limitations.

17      THE COURT:  Well, right, but that -- there's plenty of

18  precedent for that.  In fact, there is a Sixth Circuit case

19  that says exactly that, that a 1983 claim is governed by

20  Michigan's three-year statute of limitations.

21      Do we have any Michigan case law that determines which

22  limitation statute applies to Preservation of Personal Privacy

23  Act claims?

24      MR. HEDIN:  None, your Honor, other than

25  Judge Ludington's decision a few weeks ago.

Motion to Dismiss - April 5, 2022                                    6

```
 1              THE COURT:  I meant from a Michigan court.

 2              MR. HUGET:  No.  I don't think there have been

 3     Michigan court -- I think these have all been Federal court

 4     cases, cases in Federal court, I believe, your Honor.  I'm

 5     not aware of any State court.

 6              THE COURT:  Okay.  Anything further then?  Go ahead

 7     with your argument, if you like.

 8              MR. HUGET:  Oh, thank you, your Honor.

 9              No, I just think that -- and the reason, you know,

10     when you look at -- the courts basically indicate, the Michigan

11     courts in particular, that when you're looking in the absence

12     of a statute of limitations that set forth, what do you look

13     at, when you look at the nature and origin of the claim, what

14     does it arise from?

15              And the courts in Michigan have said that courts

16     determine whether the claim is founded on a consensual duty

17     or obligation or the breach of an express promise on the one

18     hand, or, on the other hand, whether the claim is founded on a

19     nonconsensual duty or one imposed by law.

20              If it's the latter, the action is generally governed

21     by the three-year statute of limitations found in MCL 600.50 --

22     sorry -- 5805(2).

23              So when you turn to this case it's important to look

24     at the nature of the claims being asserted.

25              The closest analogy is really, this is an invasion of
```

Motion to Dismiss - April 5, 2022                                    7

1      privacy claim.  Plaintiff alleges, at various points, various

2      privacy-type injuries.  And it says in paragraph 47 that she

3      complains that Farm Journal's alleged use of her subscriber

4      data discloses customer reading habits and preferences that can

5      reveal intimate facts about our lives or our political and

6      religious beliefs or our health concerns.

7           That's a privacy, that's a personal injury she is

8      alleging, and it's clearly founded on a nonconsensual duty

9      imposed by law.  As such, this should fall within the

10     three-year statute of limitations bucket, not the six-year.

11          The six-year cases that have all been cited where

12     courts have determined that there is a six-year statute of

13     limitations, when you really peel those back, they are cases

14     that sound in contract in some way.

15          For example, the Palmer Park case that they rely on

16     quite a bit is a penalty interest case, I believe, that arose

17     out of a statute that applied penalty interest when insurance

18     claims weren't paid timely enough.  Insurance claims, an

19     underlying insurance contract, not a personal right, not a

20     personal -- invasion of a personal right or personal injury.

21          So when you look at the case law in Michigan, the

22     plaintiff urges this Court to adopt a rule that is simply --

23     if it's a -- if the claim arises out of a statute, you must

24     apply the six-year statute of limitations.

25          But when you look at all the Michigan cases we cited,

1    there are numerous cases that have applied a three-year statute

2    of limitations.  The Garg v. Macomb case, a three-year statute

3    of limitations applied to a retaliation claim brought under the

4    Elliott-Larsen Civil Rights Act.

5            THE COURT:  Well, doesn't the Elliott-Larsen statute

6    have its own statute of limitations?

7            MR. HUGET:  No, it does not.

8            THE COURT:  All right.

9            MR. HUGET:  Same with the Stewart's Estate v.

10   Armstrong case, the Armstrong case that we cited.

11           THE COURT:  Stewart's Estate v. Armstrong?

12           MR. HUGET:  Yes.  I'm sorry.  I'm a little dry.

13           THE COURT:  No, no problem.

14           MR. HUGET:  That was a wrongful death claim.  Wrongful

15   death claims in Michigan arise by statute, not by common law,

16   and yet they applied a three-year statute of limitations there.

17           I could go on, your Honor, but I think that's -- the

18   job that the Court has to do is starting with the nature and

19   origin of the claim and then go from there, not simply decide

20   that because it's a statutory cause of action the six-year must

21   apply.

22           And that's the essence of our argument, your Honor.

23           THE COURT:  Did you take a look at Palmer Park

24   Square v. Scottsdale Insurance?

25           MR. HUGET:  Yes, your Honor.

1       THE COURT:  And tell me why that doesn't govern here.

2   You didn't deal with that very much in your brief.

3       MR. HUGET:  Yes, your Honor.  Palmer Park, when

4   you look at it in the context of the consensual duty or the

5   nonconsensual duty, when you look at the facts of the case, the

6   underlying claims related to the failure to pay on an insurance

7   contract.  The question became the statute of limitations

8   applied to Michigan's penalty interest statute that kicks in

9   when insurance claims aren't paid timely.

10      This case falls cleanly into the bucket of a breach of

11  an express promise bucket and not the injury to -- a personal

12  injury or property.  It arises out of the failure to pay on

13  an insurance contract, your Honor.  That's why it's

14  distinguishable.

15      THE COURT:  Okay.  Thank you.

16      Who is arguing for the plaintiff?

17      MR. HEDIN:  I will be, your Honor.  Frank Hedin on

18  behalf of the plaintiff.

19      THE COURT:  All right.  Did you file an appearance?

20      MR. HEDIN:  I did, your Honor.

21      THE COURT:  All right.  Go ahead, Mr. Hedin.

22      MR. HEDIN:  Your Honor, Judge Ludington, in the

23  Pratt v. KSE Sportsman Group opinion issued recently concerning

24  the statute of limitations for a PPPA claim, considered and

25  rejected all of the arguments, the same exact arguments with

Motion to Dismiss - April 5, 2022

10

1   respect to the same cause of action that the defendant is

2   raising here.

3          THE COURT:  Well, I don't think the defendant disputes

4   that.  I think the defendant acknowledges that this is almost a

5   cookie-cutter-type case, but he says Judge Ludington got to

6   wrong.

7          MR. HEDIN:  Judge Ludington got it right, your Honor.

8          THE COURT:  I'm shocked to hear you say that.

9          MR. HEDIN:  As Judge Ludington's opinion explained,

10  the Sixth Circuit in Palmer Park Square unequivocally held that

11  the residual six-year statute of limitations in Section 5813

12  applies to statutory causes of action.

13         And the Sixth Circuit cited to DiPonio Construction

14  and to Department of Environmental Quality v. Gomez, two

15  Michigan Court of Appeals decisions, both of which hold that

16  statutory claims across the board are subject to the six-year

17  limitation period because those claims do not arise from a

18  breach of a common-law duty, they arise from a statutory duty.

19         Judge, the Sixth Circuit, in Palmer Park Square, noted

20  that there was no controlling authority in Michigan on the

21  question of whether the six-year period applies to a statutory

22  cause of action, but it surveyed decades worth of jurisprudence

23  across Michigan and came to the conclusion that in predicting

24  what the Michigan Supreme Court would ultimately decide on the

25  question, that the six-year period applied to statutory causes

Motion to Dismiss - April 5, 2022                                    11

1    of action.

2              THE COURT:  Well, how do you answer Mr. Huget's

3    attempt to distinguish that on the basis that the claim in

4    that case was for penalty interest that arose out of a breach

5    of an insurance contract?

6              MR. HEDIN:  So the claim in Palmer Park Square did

7    not -- was actually found not to arise from the contract, it

8    was found to arise from the statute.  It was a claim for

9    untimely payment of insurance benefits.

10             THE COURT:  Under a contract.

11             MR. HEDIN:  Correct.  But the Sixth Circuit held that

12   that was not a claim under the contract, it was a claim under

13   the statute.  And notably, the Sixth Circuit in Palmer Park

14   Square applied this consensual duty versus nonconsensual duty

15   test in determining which statute of limitations period to

16   apply.

17             And the Sixth Circuit explained that that's the

18   test that applies when you're distinguishing -- when you're

19   determining whether to apply the breach of contract statute

20   of limitation period or a tort statute of limitation period,

21   either the three-year or the six-year.  It does not apply in

22   a case where there is no contractual basis for the claim

23   whatsoever, such as in this case.

24             For example, another case that applies the consensual

25   versus nonconsensual breach standard is -- excuse me,

1    your Honor -- Miller Davis.  And this is actually where the

2    test comes from.  That was another contract case where the

3    Court said, well, if it's a consent -- if it's a breach of a

4    consensual duty, in other words, one imposed by a contract,

5    then the contract statute of limitations period applies, the

6    six-year period, and if it's breach of a nonconsensual duty,

7    that is, one imposed by law, whether it be common law or

8    statutory, you have to -- then at that point you have to

9    determine which of those two applies, the three-year or the

10   six-year.

11         But where it's not a contract case, the test has no

12   application.  If that were the test in a -- in determining

13   whether a statutory cause of action is subject to the

14   three-year or the six-year period, every duty imposed by

15   statute is nonconsensual.  So under the defendant's logic,

16   every statutory cause of action would be subject to a

17   three-year period.

18         But we know that's not the case.  Palmer Park Square

19   says the exact opposite, that statutory causes of action are

20   subject to the six-year period, full stop.

21         That's what Judge Ludington held.  That's what the

22   Michigan Court of Appeals held in DiPonio.  That's what the

23   Michigan Court of Appeals held in Gomez.  It's what the

24   Michigan Supreme Court held in Goldfarb.

25         And the list goes on, including, recently, a Court in

1    this District in 2009, in Purnell v. Arrow Financial Services,

2    the Court actually addressed head on the same type of

3    common-law analog or resemblance to common-law argument that

4    the defendant is making here saying, well, it's -- you know, it

5    resembles a breach or an invasion of privacy claim at common

6    law, so it's subject to the three-year period.

7            The Court in Purnell specifically --

8            THE COURT:  You acknowledge, do you not, that except

9    for Pratt, none of those cases dealt with the PPPA; correct?

10           MR. HEDIN:  That's correct, your Honor.

11           THE COURT:  All right.  Continue.

12           MR. HEDIN:  In Purnell the Court addressed the

13   argument, the common-law analog argument and said the mere fact

14   that plaintiff's allegations may in some manner be shoe-horned

15   into a common-law tort cannot control in light of the clear

16   directive that where a claim is for a statutory violation the

17   six-year period in Section 5813 applies.

18           That is exactly what we have here.  This is a claim

19   not for personal -- for damages for injury to a person or a

20   property.  This is a claim for violation of a statute, a breach

21   of a statutorily imposed duty not to disseminate this type of

22   personal information without consent.  That's what the claim

23   arises from.  It does not arise at common law.

24           And for those reasons, we believe that Palmer Park

25   Square controls and that the Court should apply that holding

Motion to Dismiss - April 5, 2022

14

1    faithfully.

2              THE COURT:  Thank you.

3              Mr. Huget, any further argument?

4              MR. HUGET:  Your Honor, the only point I will make is

5    that we don't take the position that every claim should apply a

6    three-year statute of limitations.

7              THE COURT:  No, I don't think he is saying that you

8    do.  I think he is saying that if we follow your logic, that's

9    where it leads us.

10             MR. HUGET:  Well, the only -- well, and I would

11    disagree with that logic.

12             The only logic here is that their position is that

13    every statutory claim should now be subject to a six-year

14    statute of limitation.  They are saying that's the effect of

15    Judge Ludington's opinion, your Honor.  This just can't be the

16    case.  That would be inconsistent with numerous cases that we

17    cited earlier.  I won't repeat those, but they are in our

18    brief, and I talked about those earlier.

19             THE COURT:  All right.

20             MR. HUGET:  Thank you, your Honor.

21             THE COURT:  Thank you.

22             It's kind of a rarity that an issue that's been teed

23    up in motion papers is directly decided by another court only

24    weeks before the oral argument is scheduled, and that's what

25    we have here with the decision by Judge Ludington in the

Motion to Dismiss - April 5, 2022                                                15

1    Pratt case.

2              The issues are very clear, and that is, which statute

3    of limitations governs this dispute under this particular

4    statute.

5              There is no significant litigation history under the

6    PPPA in Michigan courts, Michigan appellate courts, and there

7    are no cases decided by the Michigan Supreme Court or the

8    Michigan Court of Appeals that continue -- that considers

9    which period of limitations applies under which statute.

10             The Pratt case held that Section 600.5813 applies,

11   which establishes a six-year period of limitations.  And the

12   significance of that -- the significance of that has to do with

13   another -- oh, I suppose -- anomalous situation, and that is

14   the fact that the Michigan Legislature amended the PPPA to

15   eliminate the mandatory statutory damage award of $5,000 per

16   incident for events that occurred before 2016.

17             And it is obvious to me that the plaintiff attempts

18   to take advantage of the now-superseded statute which was not

19   repealed, it was just amended, by claiming that the statutory

20   violation took place prior to the amendment so that that

21   statutory damage award would apply if liability is considered.

22             Now, as we have discussed, the Sixth Circuit recently

23   considered, in Palmer Park, the statute of limitations that's

24   applied to claims brought under Michigan statutes that do not

25   specify a limitation period, and that Court relied on the

Motion to Dismiss - April 5, 2022                                    16

1    Michigan Court of Appeals decision in Gomez and also DiPonio

2    and distinguishing actions for statutory violations with

3    actions to redress injuries resulting from traditional torts.

4    The Court held that Section 5813's catch-all provision applies

5    to statutory causes of action, including those for civil fines.

6              How do we deal with 1983 cases, then?

7              Under 1983, the Supreme Court has held that the

8    analogous statute of limitations in the particular state is

9    the one that applies.

10             Well, 1983, Section 1983 of Title 42 of the United

11   States Code does not create a substantive cause of action.  It

12   is essentially an enabling act that allows a litigant deprived

13   by someone acting under color of law of rights established by

14   other provisions of law, that is, the Constitution or laws of

15   the United States, to bring a claim.

16             And the Sixth Circuit had determined that

17   constitutional torts, that is, torts that -- or I should say,

18   wrongs that occur in violation of a duty imposed by the

19   operation of law as opposed to operation of contract are the

20   most analogous types of causes of action that trigger the

21   three-year statute of limitations under those rules that govern

22   Michigan tort claims.

23             Frequently, 1983 claims are referred to as

24   constitutional torts.  And so I don't believe that an analogy

25   drawn to Section 1983 is particularly helpful in determining

1    the statute of limitation that applies here.

2          The defendant really does not acknowledge or attempt

3    to distinguish Palmer Park much in its brief and it really

4    tends to mischaracterize the DiPonio decision on which Palmer

5    Park relies.

6          DiPonio did not limit the applicability of the

7    six-year catch-all statute of limitations in Section 5813 to

8    statutory violations having no common-law analog, as the

9    defendant asserts.  Instead, DiPonio recognized that Michigan

10   courts consistently have applied Section 5813 to cases where,

11   and I'm quoting, "The right to recovery arose from a statute

12   rather than a common-law right," not a statutory right that had

13   some analog in the common law, such as an invasion of privacy,

14   but a right that arose from the statute itself.

15         The DiPonio Court then explicitly held that a civil

16   cause of action arising from a statutory violation is subject

17   to the six-year limitation period in Section 5813 if the

18   statute itself does not provide a limitation period.

19         The authority that Farm Journal does cite is not

20   particularly apposite.  Several of the cases it cites where the

21   Court applied a three-year statute of limitations deal with

22   common-law invasion of privacy claims.

23         The plaintiff has not brought a common-law claim here.

24   Instead, she seeks to vindicate her statutorily conferred

25   rights.

Motion to Dismiss - April 5, 2022                                          18

 1          Farm Journal also cites several cases for the

 2  unremarkable proposition that the PPPA claims implicate privacy

 3  concerns, but the defendant has not cited any authority holding

 4  that under Michigan law courts must view every privacy-related

 5  claim as a tort for the purposes of determining the relevant

 6  statute of limitations or limitation period.

 7          In fact, all of the cases described by the PP --

 8  describe the PPPA as creating a privacy right in the respective

 9  matter.

10          Michigan courts have rejected the common-law analog

11  argument holding that Section 5813's catch-all six-year statute

12  of limitations governs statutory claims notwithstanding the

13  similarity of such claims to common-law torts, such as in the

14  Estes matter.

15          The Miller-Davis case, a Michigan Supreme Court case

16  from 2011 cited by the defendant, also is distinguishable.  In

17  that case the Michigan Supreme Court considered whether the

18  statute of limitations for tort or contract claims applies in a

19  dispute regarding building defects.

20          Although the Court noted that the actions founded on a

21  nonconsensual duty or one imposed by law are generally governed

22  by a three-year statute of limitations, it did so only in the

23  context of comparing tortious and contractual duties.  It did

24  not hold that every action involving nonconsensual duties is

25  governed by Section 5805's three-year statute of limitations

```
 1        and there were no statutory claims in that case.

 2               If anything, the logic of Miller-Davis favors the

 3        plaintiff's position because the plaintiff there did not rely

 4        on any duty implied in law, but brought her claims solely under

 5        the PPPA -- that is, in this case -- and Miller-Davis suggests

 6        that the statute of limitations described in tort actions does

 7        not apply here.

 8               The plaintiff's claim is governed by Section 5813, and

 9        therefore, the claim appears to be timely for the purpose of

10        this motion.

11               The defendant also contends that the plaintiff lacks

12        Article III standing because it basically sets up a catch-22

13        for the plaintiff, stating that if the six-year statute governs

14        then the plaintiff cannot establish that she suffered a

15        concrete and particularized harm under the Supreme Court

16        decisions that deal with statutory causes of action, most

17        particularly, Spokeo v. Robins.

18               The argument regarding statute of limitations, of

19        course, is not jurisdictional, and I don't take the defendant

20        to state that if the claim is voided by the statute of

21        limitations that dispenses with the Article III standing

22        argument.  I think everyone agrees that statutes of limitations

23        are essentially claims-processing rules absent legislative

24        language to the contrary.

25               Second, though, it is well established that a properly
```

Motion to Dismiss - April 5, 2022

1    pleaded PPPA claim confers Article III standing, and the Sixth

2    Circuit addressed that precise issue in Coulter-Owens, another

3    decision that was not discussed by the defendant.

4         The Court of Appeals in that case held that Spokeo

5    does not apply where the plaintiff alleges a violation of the

6    PPPA's most basic substantive provision, and that is, the

7    privacy in one's reading materials.  A substantive violation

8    occurs when a person's information is disclosed in violation of

9    the statute.

10        The plaintiff alleged that Farm Journal knowingly

11   disclosed her subscriber and other demographic data, and

12   therefore, she pleaded a cognizable injury in fact for the

13   purpose of Article III standing.

14        So there is no jurisdictional deficit here, subject

15   matter jurisdictional deficit, and the statute of limitations

16   does not bar this claim at this stage of the case.

17        I don't know that I have -- have I given you a

18   scheduling order in this case yet?

19        MR. HEDIN:  I do not believe so, your Honor.

20        THE COURT:  And are you seeking to certify a class?

21        MR. HEDIN:  Yes.

22        THE COURT:  All right.  I think what I will do, if you

23   have a few minutes, if you're prepared to do that, is conduct a

24   case management conference so we can get a scheduling order on

25   the books.

1          Do you have some time to do that this afternoon?

2          MR. HUGET:  Sure, your Honor.

3          MR. HEDIN:  Certainly, your Honor.

4          THE COURT:  We can do that in the courtroom if you'd

5    like, off the record, or we can do it in chambers.  Are you

6    comfortable meeting in chambers or would you rather not?

7          MR. HUGET:  I'm comfortable with that.

8          MR. HEDIN:  Yes, plaintiff is comfortable with that.

9          THE COURT:  All right.  I'll just see you in chambers

10   and I'll recess court.

11         THE CLERK:  All rise.  Court is now in recess.

12              (Proceedings adjourned at 3:12 p.m.)

13                    *       *       *

14

15

16              CERTIFICATE OF COURT REPORTER

17

18      I certify that the foregoing is a correct transcript

19   from the record of proceedings in the above-entitled matter.

20

21      ___*s/ Rene L. Twedt*_____          **April 6, 2022**
     RENE L. TWEDT, CSR-2907, RDR, CRR, CRC       Date
22      Federal Official Court Reporter

23

24

25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIA HALL,

                    Plaintiff,                          Case Number 21-11811
v.                                                      Honorable David M. Lawson

FARM JOURNAL, INC.,

                    Defendant.
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

This matter is before the Court on the defendant's motion for reconsideration of the order denying its motion to dismiss. The defendant asks the Court to reconsider its dismissal ruling under Eastern District of Michigan Local Rule 7.1(h). However, the defendant's motion does not cite language from the current version of the Local Rule 7.1(h). Under the current standard, reconsideration of non-final orders may be granted only on limited grounds:

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B) An intervening change in controlling law warrants a different outcome; or
>
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2) (effective Dec. 1, 2021).

The defendant argues that the plaintiff's complaint is untimely because her claims are governed by the three-year statute of limitations provided by Mich. Comp. Laws § 600.5805, not the six-year statute of limitations found in Mich. Comp. Laws § 600.5813. Its argument on this point is not based on any new authority or existing caselaw that the Court overlooked. It amounts to little more than a rehash of the issues already raised and litigated in the original motion to

dismiss the plaintiff's amended complaint.  That is why "[m]otions for reconsideration of non-final orders are disfavored."  E.D. Mich. LR 7.1(h)(2).  The Court fully addressed the applicability of sections 5805 and 5813 on the record, and the defendant has not identified any mistake in that ruling.  Old arguments re-presented will not justify reconsideration.  The defendant's motion for reconsideration therefore will be denied.

Accordingly, it is **ORDERED** that the defendant's motion for reconsideration (ECF No. 27) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  April 21, 2022

# Exhibit 2



<u>**FIRM RÉSUMÉ**</u>

Based in Miami, Florida, Hedin LLP represents consumers in class actions in state and federal courts nationwide. Our firm prosecutes difficult cases aimed at redressing injuries suffered by large, diverse groups of people.  Over the past five alone, we have recovered hundreds of millions of dollars in relief for consumers and investors and facilitated important changes in business practices across a wide range of industries.

**Representative Matters**

Notable examples of our work include:

- *Rivera, et al. v. Google LLC*, Case No. 2019-CH-00990 (Cir. Ct. Cook Cnty.) (class counsel in action alleging defendant's collection of "scans of face geometry" in violation of Illinois's Biometric Information Privacy Act, $100 million settlement)

- *Olsen, et al. v. ContextLogic Inc.,* No. 2019CH06737 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging violation of Telephone Consumer Protection Act ("TCPA"), $16 million settlement)

- *In re Maxar Technologies Inc. Shareholder Litigation*, Case No. No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in class action on behalf of investors, $36.5 million settlement)

- *In re Everi Holdings, Inc. FACTA Litigation*, No. 18CH15419 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in 14 related actions alleging violations of Fair and Accurate Credit Transactions Act against various casino entities and common payment processor, $14 million global settlement)

- *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-CV-20614-MGC (S.D. Fla.) (class counsel in overdraft fee class action, $4.95 million settlement)

- *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in overdraft fee class action, $2.7 million settlement)

- *Kokoszki v. Playboy Enterpises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich.) (class counsel in action alleging violation of Michigan's Personal Privacy Preservation Act ("PPPA"), $3.8 million settlement)

- *Pratt et al. v. KSE Sportsman Media, Inc.*, No. 21-cv-11404- TLL-PTM (E.D. Mich.) (class counsel in action alleging violation of Michigan's PPPA, $9.5 million settlement)

# HEDIN L.L.P.

- *Chimeno-Buzzi v. Hollister Co.* (S.D. Fla.) (class counsel in action alleging violation of TCPA, $10 million settlement)

- *Farnham v. Caribou Coffee Co., Inc.* (W.D. Wisc.) (class counsel in action alleging violation of TCPA, $8.5 million settlement)