# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>　　　　　Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## PLAINTIFFS' UNOPPOSED MOTION
## <u>FOR SERVICE AWARDS AND FEE AWARD</u>

Pursuant to the Court's Order Granting Plaintiffs' Motion for Preliminary Approval (ECF No. 68 at 4, PageID.3770), Plaintiffs respectfully submit this motion for approval of Service Awards to Class Representatives and a Fee Award to Class Counsel (the "Motion").[1]

The undersigned counsel certifies that Class Counsel communicated with Counsel for Defendant on April 25 and 26, 2024, telephonically and via email, explaining the nature of the relief to be sought by way of this Motion and seeking Defendant's position as to the relief; Defendant's Counsel advised that Defendant does not oppose the relief requested in this Motion.

Dated: April 29, 2024                  Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinllp.com
aravindran@hedinllp.com

---

[1]     Unless otherwise defined, all capitalized terms appearing herein and in the accompanying brief have the meanings ascribed to them in the Settlement Agreement.

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

*Class Counsel*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>        Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED <u>MOTION FOR SERVICE AWARDS AND FEE AWARD</u>

## STATEMENT OF ISSUES PRESENTED

1.    Whether the Court should approve Service Awards of $3,500 to Mr. Schreiber, $2,500 to Mr. Colony, $2,500 to Ms. Vredeveld, and $1,000 to Mr. Surnow.

**Plaintiffs' Answer: Yes.**

2.    Whether the Court should approve a Fee Award (inclusive of both attorneys' fees and out-of-pocket litigation expenses) of 35% of the Settlement Fund to Class Counsel.

**Plaintiffs' Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Fed. R. Civ. P. 23(h)

- *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

- *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

- *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

- *Pratt v. KSE Sportsman Media, Inc.*, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024)

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ............................................................................................. 1

BACKGROUND .............................................................................................. 5

I.     Michigan's Preservation of personal Privacy Act ............................................. 5

II.    Pre-Filing Investigation .................................................................................. 6

III.   History of the Litigation and Settlement Negotiations .................................... 8

IV.   Class Counsel's History Litigating Michigan PPPA Claims ....................... 12

ARGUMENT ................................................................................................. 16

I.     The Requested Service Awards are Fair and Reasonable and Should be
Approved ....................................................................................................... 16

II.    The Requested Fee Award is Fair and Reasonable and Should be Approved
............................................................................................................... 19

      A.   The Percentage-of-the-Settlement Fund Method Should be Used ..... 20
      B.   A Fee and Cost Award of Thirty-Five Percent of the Settlement Fund
          is Fair and Reasonable .......................................................................... 26
          1.  Class Counsel Secured a Valuable Benefit for the Class in a Case
              Fraught with Risk ........................................................................... 29
          2.  Societal Stake in Complex Consumer Privacy Litigation ............. 33
          3.  Counsel Took the Case on a Contingent Basis, Assuming
              Significant Risk of Nonpayment .................................................... 35
          4.  The Complexity of the Litigation Supports the Requested Fee
              Award ............................................................................................. 38
          5.  The Parties Are Both Represented by Skilled Counsel ................. 40
          6.  The Value of the Legal Services Provided by Class Counsel Far
              Exceeds the "Lodestar" They Incurred Solely on the Instant Matter
              ....................................................................................................... 41

CONCLUSION ............................................................................................. 47

# TABLE OF AUTHORITIES

## Cases

*Armijo v. Bronson Methodist Hospital*,
  991 N.W.2d 593 (Mich. 2023) ................................................................ 32

*Arp v. Hohla & Wyss Enterprises, LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ......................................... 44, 45, 46

*Barnes v. Winking Lizard, Inc.*,
  2019 WL 1614822 (N.D. Ohio Mar. 19, 2019) ....................................... 37, 42

*Blasi v. United Debt Servs., LLC*,
  2019 WL 6050963 (S.D. Ohio Nov. 15, 2019) ........................................ 42

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................ 22

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................ 19, 26

*Boelter v. Advance Magazine Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016) .................................................... 13

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) .................................................... 6, 13

*Boelter v. Hearst Commc'ns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) .................................................... 13, 14

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................... 36

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................ 21

*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014) ........................................................... 30

*Dillow v. Home Care Network, Inc.*,
  2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) ......................................... 42

*Edwards v. Hearst Commc'ns, Inc.*,
  2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) .......................................... 3, 14

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................ 34

*Feiertag v. DDP Holdings, LLC*,
  2016 WL 4721208 (S.D. Ohio Sep. 9, 2016) ......................................... 42

*Fournier v. PFS Invs., Inc.*,
  997 F. Supp. 828 (E.D. Mich. 1998) ...................................................... 23

*Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) .................................................................. 20, 26, 28, 33

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998)...................................................................... 21, 22

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000).................................................................................30

*Goodell v. Charter Communications, LLC*,
  2010 WL 3259349 (W.D. Wis. Aug. 17, 2010).................................................30

*Gottsleben v. Informa Media, Inc.*,
  2023 WL 4397226 (W.D. Mich. July 7, 2023)..................................................32

*Halaburda v. Bauer Pub. Co., LP*,
  No. 12-cv-12831 (E.D. Mich.)...........................................................................3

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003).............................................................................16

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................. 19, 29

*Higgins v. TV Guide Magazine, LLC*,
  No. 15-cv-13769-SJM (E.D. Mich. Dec. 19, 2018).................................. 3, 25, 28

*Hillson v. Kelly Servs. Inc.*,
  2017 WL 3446596 (E.D. Mich. Aug. 11, 2017).................................................23

*Horton v. GameStop, Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) .............................................. 4, 6, 13, 14

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ..................................................................22

*In re Cardinal Health Inc. Sec. Litigations*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................................................... 28, 45

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................... passim

*In re Cardizem CD Antitrust Litig.*,
  No. 99-md-1278 (E.D. Mich. Nov, 26, 2002).....................................................24

*In re CMS Energy ERISA Litig.*,
  2006 WL 2109499 (E.D. Mich. June 27, 2006)..................................................18

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2009 WL 5184352 (W.D. Ky. Dec. 22, 2009).....................................................27

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ............................................................ passim

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) .....................................................................18

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
  No. 16-md-02744 (E.D. Mich.)..........................................................................36

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (C.D. Cal. 2008) .............................................................33

*In re Packaged Ice Antitrust Litig.*,
 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ..................................................37
*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ....................................... 27, 35, 41
*In re Se. Milk Antitrust Litig.*,
 2013 WL 2155387 (E.D. Tenn. May 17, 2013).......................................... 25, 27
*In re Synthroid Mktg. Litig.*,
 325 F.3d 974 (7th Cir. 2003)..............................................................................31
*In re Telectronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................38
*Isabel v. City of Memphis*,
 404 F.3d 404 (6th Cir. 2005)..............................................................................41
*Kelly v. Corrigan*,
 890 F. Supp. 2d 778 (E.D. Mich. 2012)..............................................................24
*Kain v. The Economist Newspaper NA, Inc.*,
 No. 4:21-cv-11807 (E.D. Mich. Mar. 16, 2023)......................................... passim
*Kinder v. Meredith Corp.*,
 No. 14-cv-11284 (E.D. Mich. May 18, 2016) .................................... 3, 25, 28, 29
*Kirchoff v. Flynn*,
 786 F.2d 320 (7th Cir. 2006)..............................................................................21
*Kogan v. AIMCO Fox Chase L.P.*,
 193 F.R.D. 496 (E.D. Mich. 2000).....................................................................38
*Kokoszki v. Playboy Enterprises, Inc.*,
 2:19-cv-10302 (E.D. Mich. Aug. 19, 2020)........................................ 3, 17, 25, 28
*Kolinek v. Walgreen Co.*,
 311 F.R.D. 483 (N.D. Ill. 2015)..........................................................................21
*Kotila v. Charter Financial Publishing Network, Inc.*,
 No. 1:22-cv-00704 (W.D. Mich.) .......................................................................17
*Krassick v. Archaeological Inst. of Am.*,
 2022 WL 2071730 (W.D. Mich. June 9, 2022) ..................................................15
*Kritzer v. Safelite Solutions, LLC*,
 2012 WL 1945144 (S.D. Ohio May 30, 2012) ...................................................37
*Lasalle Town Houses Coop Assoc. v. City of Detroit*,
 2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) .................................................16
*Loftus v. Outside Integrated Media, LLC*,
 No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022)........................................... passim
*Lyngaas v. Curaden AG*,
 2020 WL 5249203 (E.D. Mich. Sept. 3, 2020).....................................................20
*Manners v. Am. Gen. Life Ins. Co.*,
 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ........................................ 23, 34

*Mathias v. Accor Econ. Lodging, Inc.*,
  347 F.3d 672 (7th Cir. 2003)..............................................................................27
*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*,
  No. 15-cv-05671 (S.D.N.Y.) ...............................................................................3
*Moeller v. American Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017)..............................................................13
*Moeller v. American Media, Inc.*,
  No. 16-cv-11367 (E.D. Mich. Sept. 28, 2017)................................................3, 28
*Moeller v. The Week Publications, Inc.*,
  No. 1:22-cv-10666 (E.D. Mich.) ................................................................. passim
*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009)..............................................................................29
*N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) ....................................................................23
*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
  234 F.R.D. 627 (W.D. Ky. 2006)........................................................................35
*Nilsen v. York Cnty.*,
  400 F. Supp. 2d 266 (D. Me. 2005) ....................................................................21
*Palmer Park Square, LLC v. Scottsdale Insurance Company*,
  878 F.3d 530 (6th Cir. 2017)..............................................................................14
*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ...........................................................................................24
*Perlin v. Time Inc.*,
  No. 16-cv-10635 (E.D. Mich. Oct. 15, 2018) ...........................................3, 28, 29
*Pratt v. KSE Sportsman Media, Inc.*,
  586 F. Supp. 3d 666 (E.D. Mich. 2022)...........................................4, 15, 17, 24
*Pratt v. KSE Sportsman Media, Inc.*,
  2024 WL 113755 (E.D. Mich. Jan. 10, 2024)................................3, 15, 17, 25, 45
*Raden v. Martha Stewart Living OmniMedia, Inc.*,
  2017 WL 3085371 (E.D. Mich. July 20, 2017), *reconsideration denied*, 2018 WL
  460072 (E.D. Mich. Jan. 18, 2018).....................................................................14
*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974)..................................................................... passim
*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993)..................................................................................20
*Rikos v. Proctor & Gamble Co.*,
  2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ....................................................42
*Ruppel v. Consumers Union of United States, Inc.*,
  No. 7:16-cv-02444 (S.D.N.Y.)..............................................................................3

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
   2019 WL 4746744 (E.D. Mich. Sept. 30, 2019), *aff'd sub nom. Shane Grp. Inc v. Blue Cross Blue Shield of Michigan*, 833 F. App'x 430 (6th Cir. 2021)..............26
*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013).................................................................31
*Stanley v. U.S. Steel Co.*,
   2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ....................................35
*Strano v. Kiplinger Washington Editors, Inc.*,
   No. 1:21-cv-12987 (E.D. Mich.)................................................. passim
*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007)......................................................... 19, 20
*Taylor v. Trusted Media Brands, Inc.* ,
   No. 16-cv-01812 (S.D.N.Y.) .....................................................................3
*Worthington v. CDW Corp.*,
   2006 WL 8411650 (S.D. Ohio May 22, 2006) ....................................27

## Statutes

M.C.L. § 445.1712 ....................................................................................6
M.C.L. § 445.1715 ....................................................................................6
Michigan Preservation of Personal Privacy Act......................................1

## Other Authorities

*Newberg on Class Actions* § 12.55 ........................................................23

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................8
Fed. R. Civ. P. 15(a)(1)............................................................................8
Fed. R. Civ. P. 23 ...................................................................................13
Fed. R. Civ. P. 23(h) ..............................................................................19
Fed. R. Civ. P. 26 ...................................................................................10
M.C.R. 3.501(A)(5)................................................................................13

## INTRODUCTION

In this putative class action, Plaintiffs allege that Defendant disclosed to third parties records reflecting Plaintiffs' and other Michigan-based consumers' purchases of subscriptions to *Mayo Clinic Health Letter*, in violation of Michigan's Preservation of Personal Privacy Act (the "PPPA"), H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

After extensive litigation and hard-fought settlement negotiations overseen by the Honorable Gerald E. Rosen (Ret.) (formerly the Chief Judge of the Eastern District of Michigan and presently a mediator with JAMS), Class Representatives and Class Counsel negotiated a settlement that, upon final approval by the Court, will require Defendant (and its insurers) to pay $52,500,000.00 (fifty-two million five-hundred thousand dollars) to establish an all-cash, non-reversionary Settlement Fund for the Settlement Class's benefit. Each of the 62,746 Settlement Class Members will automatically receive a *pro rata* cash payment of at least $540.00 from the Settlement Fund. The Settlement is truly a remarkable resolution to an extraordinarily high-risk case, and the substantial monetary relief it provides will have a meaningful impact on Settlement Class Members' lives. Class Representatives and Class Counsel could not be prouder of it.

On February 21, 2024, the Court issued an order granting preliminary approval to the Settlement. Shortly thereafter, the Settlement Administrator successfully disseminated the Class Notice to all Settlement Class Members. The Settlement Class has now responded to the Notice by giving the Settlement a resounding stamp of approval: to date only seven Settlement Class Members have requested exclusion from the Settlement[1], and no Settlement Class Member has objected to the Settlement or to the requested Service Awards or Fee Award (the amounts of which were clearly and conspicuously disclosed to Settlement Class Members in the Class Notice that they each received in the mail).

And that is not surprising. As previously explained in Plaintiffs' motion for preliminary approval, the $52.5 million Settlement presently before the Court for final approval recovers more money—on both a dollar-for-dollar basis and per-class member basis—than any other PPPA class action settlement to date, as reflected in the following chart:

---

[1]    Seven out of 62,746 class members equates to an opt out rate of 0.01%, or 99.99% have chosen not to opt out.

| Case | Class Size | Settlement Fund | Per Class Member Recovery (Net of Fees and Expenses) |
|---|---|---|---|
| *Schreiber v. Mayo Found.* | 62,746 | $52,500,000 | $540-700 |
| *Pratt v. KSE Sportsman Media* | 14,503 | $9,500,000 | $420 |
| *Kain v. The Economist* | 22,987 | $9,500,000 | $261 |
| *Strano v. Kiplinger* | 17,413 | $6,845,670 | $248 |
| *Moeller v. The Week* | 13,025 | $5,082,870 | $248 |
| *Kokoszki v. Playboy* | 22,006 | $3,850,000 | $110 |
| *Ruppel v. Consumers Union* | 560,474 | $16,375,000 | $109* |
| *Moeller v. American Media* | 415,000 | $7,600,000 | $100* |
| *Edwards v. Hearst* | 3,930,421 | $50,000,000 | $98.72* |
| *Moeller v. Conde Nast* | 1,155,538 | $13,750,000 | $75* |
| *Halaburda v. Bauer* | 40,000 | $775,000 | $74* |
| *Higgins v. TV Guide* | 90,000 | $1,700,000 | $60-$80* |
| *Loftus v. Outside* | 12,096 | $998,406.92 | $50 |
| *Kinder v. Meredith* | 966,418 | $7,500,000 | $50* |
| *Taylor v. TMBI* | 1,101,651 | $8,225,000 | $41* |
| *Perlin v. Time* | 719,000 | $7,400,000 | $25-$50* |
| * payment not automatic; claim form required to receive payment | | | |

Class Counsel devoted significant time, money, and other resources to achieve this remarkable result. As explained in detail below, Class Counsel first had to resurrect the PPPA from the dead – twice – to afford Settlement Class Members the ability to bring a claim under the statute at all. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (order obtained by Class Counsel holding that amended version of the PPPA does not apply to claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date); *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022) (order obtained by Class Counsel holding that a six-year limitation period applies to PPPA claims, not a three-year period as litigants and courts had previously assumed). Class Counsel next had to identify possible disclosures of Defendant's customers' subscription purchase records during a narrow window of time prior to July 31, 2016 and then retain plaintiffs capable of adequately representing those customers – all while simultaneously racing against an expiring limitation period. And after retaining clients and initiating this action on their behalf, Class Counsel then had to prevail on numerous motions (including a motion to dismiss) and obtain the complex and nuanced discovery necessary to prove that Defendant disclosed Plaintiffs' and class members' purchase records to third parties during the narrow pre-July 31, 2016 time period. And after all of that, Class Counsel had to successfully

negotiate the Settlement, which took several months of arm's-length mediation between the Parties, including three full-day sessions with Judge Rosen.

Simply put: this case could not have been possible without the tenacity of Class Counsel in laying the groundwork for Plaintiffs' and Settlement Class Members' claims through their extensive litigation of PPPA actions over the past decade, and the instant Settlement could not have been achieved without Class Representatives' and Class Counsel's tireless and high-quality work during this litigation.

The requested Service Awards and Fee Award are eminently reasonable given the breadth of work performed by Class Counsel and their clients, in the face of significant risk, and the outstanding Settlement they ultimately achieved. The Motion should be granted.

## BACKGROUND

### I.    Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Third Amended Complaint (ECF No. 65) ("TAC"). As such, the PPPA (as it existed until July 30, 2016) provides that:

> a person, or an employee or agent of the person, engaged
> in the business of selling at retail . . . books or other written
> materials . . . shall not disclose to any person, other than
> the customer, a record or information concerning the

5

> purchase . . . of those materials by a customer that indicates
> the identity of the customer.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA effective July 31, 2016, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton*, 380 F. Supp. 3d at 683.

## II.    Pre-Filing Investigation

Class Counsel conducted an exhaustive pre-filing investigation, beginning in December 2020, concerning Mayo's (and other defendants') subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period. With respect to the instant matter in particular, prior to filing suit Class Counsel investigated every aspect of the factual and legal issues underlying Plaintiffs' claims, including:

- Researching the nature of Defendant's business, its practices of selling newsletters, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of *Mayo Clinic Health Letter* subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period; and

- Analyzing the arguments for the applicability of tolling pursuant to Michigan Supreme Court's administrative orders issued during the COVID-19 pandemic (the "COVID Orders"), including consulting with appellate lawyers briefing the matter before the Michigan Supreme Court.

*See* **Exhibit A** hereto, Declaration of E. Powell Miller in Support of Plaintiffs'

Unopposed Motion For Preliminary Approval ("Miller Decl.") ¶ 6; **Exhibit B**

hereto, Declaration of Frank S. Hedin in Support of Plaintiffs' Unopposed Motion For Service Awards and Fee Award ("Hedin Decl.") ¶ 17. As a result, Class Counsel developed a viable theory of liability for a PPPA claim against Defendant and prepared a thorough Class Action Complaint to initiate this action. Hedin Decl. ¶ 18; Miller Decl. ¶ 7.

## III.    History of the Litigation and Settlement Negotiations

On September 26, 2022, Plaintiff Schreiber filed the Class Action Complaint against Defendant. ECF No. 1. The material allegations of the complaint centered on Defendant's alleged disclosure of its customers' personal information and reading choices to third parties before July 30, 2016, in violation of the PPPA. On January 3, 2023, Plaintiff Schreiber filed a First Amended Class Acton Complaint pursuant to Fed. R. Civ. P. 15(a)(1). ECF No. 19. Thereafter, the Court entered a Case Management Order (ECF No. 23), and the Parties began conducting significant written and document discovery, which included the exchange of thousands of pages of documents and voluminous electronically stored information, and the issuance of over 30 third-party subpoenas by Plaintiffs. Hedin Decl. ¶ 20; Miller Decl. ¶ 9. On January 17, 2023, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the First Amended Complaint failed to state a claim upon which relief could be granted. ECF Nos. 24-25. On July 13, 2023, after full briefing, the Court issued an opinion and order denying Defendant's motion to

dismiss in its entirety. ECF Nos. 45-46.

On June 26, 2023, Commerce Register, Inc. ("CRI"), one of the third parties subpoenaed by Plaintiffs, produced a document in response to Plaintiffs' subpoena concerning Defendant's transmission of a subscriber list to The Salvation Army that occurred on or about June 20, 2016, squarely within the relevant time period. Hedin Decl. ¶ 25. Thus, on July 27, 2023, Plaintiff Schreiber filed a Second Amended Complaint, which added Plaintiffs Vredeveld and Colony (persons who appeared on the list transmitted to The Salvation Army) as plaintiffs and putative class representatives. ECF No. 49. On August 10, 2023, Defendant filed its Answer to the Second Amended Complaint, which denied the allegations generally and asserted 12 affirmative defenses to liability, including that the claims were time-barred. ECF No. 50.

On October 10, 2023, SFG, LLC ("SFG"), Mayo's agent and another of the third parties subpoenaed by Plaintiffs, produced materials in response to Plaintiffs' subpoena indicating that SFG transmitted, on Mayo's behalf, a Mayo subscriber list to CRI on June 23, 2016, squarely within the applicable class period. Hedin Decl. ¶ 27. This discovery was spurred by SFG's production to Class Counsel of a server log file that reflects the activity on SFG's server housing Mayo's data during the class period. *Id.* Although Plaintiffs requested a copy of this log file in their subpoena issued to SFG on June 1, 2023, SFG consistently denied being in possession of a

9

such a file for several months, including after multiple meet and confer efforts by Class Counsel. *Id.* In response to these denials, Class Counsel served a subpoena for inspection of premises on SFG, setting a date for Class Counsel and a digital forensics firm selected by Class Counsel to inspect the actual server at SFG's headquarters in Big Sandy, Texas to locate the server's log file that reflects the activity on the server during the class period. *Id.* Shortly thereafter, on October 10, 2023, SFG's counsel notified Class Counsel that it had located the log file, which had been in its possession all along, and produced the file to Class Counsel. *Id.* The log file was critical to obtaining the Settlement as it reflects, *inter alia*, a transmission of a Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to CRI on June 23, 2016. *Id.* Thus, on February 9, 2024, Plaintiffs Schrieber, Vredeveld, and Colony filed the operative Third Amended Complaint, which added Plaintiff Surnow (who appears on the July 18, 2013 subscriber list) as a plaintiff and putative class representative. ECF No. 65.

From the start, the Parties engaged in direct communication, and pursuant to their obligations under Fed. R. Civ. P. 26, discussed resolution. *See* Hedin Decl. ¶ 28; Miller Decl. ¶ 15. On April 17, 2023, the Parties participated in an early settlement conference before Magistrate Judge Kent in Grand Rapids, which was unsuccessful. *See* Hedin Decl. ¶ 29; Miller Decl. ¶ 16. Later on, on October 27, 2023,

the parties participated in a full-day mediation with Judge Rosen in Detroit, during which they made substantial progress but failed to reach a settlement. *See* Hedin Decl. ¶ 30; Miller Decl. ¶ 17. Then, on December 11 and 12, 2023, the Parties participated in two additional full-day mediations with Judge Rosen in New York, where further progress was made, and after which the preliminarily-approved settlement was reached. *See* Hedin Decl. ¶ 31; Miller Decl. ¶ 18. In preparation for these mediation sessions, the Parties conducted extensive analysis of the size and parameters of the potential class, which included highly technical work performed by a database management expert hired by Proposed Class Counsel, and of the strengths and weaknesses of their respective cases. *See* Hedin Decl. ¶ 33; Miller Decl. ¶ 20. Class Counsel also prepared comprehensive mediation statements setting forth Plaintiffs' position on the various merits and class-related issues in dispute in advance of each of these sessions of mediation. *See* Hedin Decl. ¶ 32; Miller Decl. ¶ 19. After reaching an agreement in principle to resolve the case, the Parties devoted considerable time over the following several weeks drafting and then executing the Settlement Agreement, attached to the Miller Declaration as Exhibit 1 thereto, retaining (at the conclusion of a competitive bidding process) the now Court-appointed Settlement Administrator (Kroll Settlement Administration LLC ("Kroll")), and working together to finalize the Settlement Class List, which included the assistance of Plaintiffs' retained database management expert. *See*

11

Hedin Decl. ¶ 34; Miller Decl. ¶ 21.

## IV.  Class Counsel's History Litigating Michigan PPPA Claims

The unprecedented result here would not have been possible without the significant investments of time and other resources (monetary and otherwise) expended by Class Counsel identifying, investigating and litigating claims on behalf of Michigan consumers under the PPPA for the better part of the past decade. It was these extensive efforts, in a niche area of law, that afforded Class Counsel the knowledge, experience, and well-developed body of jurisprudence necessary to achieve the Settlement in this case.[2]

Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged PPPA violations. *See* Hedin Decl. ¶ 3; **Exhibit C**, Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 4. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. *Id*. Despite the uncertainty, Class Counsel litigated numerous PPPA issues of first impression, such as: (i) whether an alleged violation of the statute was sufficient to confer Article III

---

[2]    For example, in granting final approval to a similar class in *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809, ECF No. 36 (E.D. Mich. Aug. 13, 2022), the Honorable Mark A. Goldsmith commended the work of the attorneys representing the class – the same counsel here – and noted that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* PageID.3744 (Aug. 9, 2022 *Loftus* Fin. Approv. Hrg. Tr. at 7:13-17).

standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Rule 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. Fraietta Decl. ¶ 5. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016). Class Counsel then conducted vigorous discovery, including in-depth research into data industry practices, such as data appending and data cooperatives, and ultimately third-party discovery from those companies. Fraietta Decl. ¶ 6. Through that discovery, Class Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id*. Class Counsel won a motion for summary judgment in *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). Fraietta Decl. ¶ 7. This summary judgment victory provided a roadmap to liability for publishers based on the above data industry practices. *Id.*

After the Michigan legislature amended the PPPA, effective July 31, 2016, to make "actual damages" a prerequisite to stating a claim and remove a prevailing plaintiff's entitlement to statutory damages, Class Counsel then successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. Hedin Decl. ¶ 5; Fraietta Decl. ¶ 8. *See Horton*, 380 F. Supp. 3d at 683 (holding amended version of the PPPA does not apply to

claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date).[3]

And throughout all of that prior litigation, it was assumed that PPPA cases were governed by a 3-year statute of limitations. Hedin Decl. ¶ 8; Fraietta Decl. ¶ 9; *see, e.g.*, *Hearst*, 269 F. Supp. 3d at 172; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, Class Counsel later recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), and relevant Michigan authority, established a basis for applying a six-year limitation period to PPPA claims, and thus provided an avenue for class recovery under the original PPPA even as long as six years after a defendant's pre-July 31, 2016 disclosure practices. Hedin Decl. ¶ 9; Fraietta Decl. ¶ 9. After conducting extensive pre-suit investigative analysis, Class Counsel initiated litigation with the six-year limitation period as its foundation. Hedin Decl. ¶ 10; Miller Decl. ¶ 5; Fraietta Decl. ¶ 10. Through Class Counsel's advocacy, in *Pratt*, Judge Ludington issued a first-of-its-kind published opinion, finding that a six-year

---

[3]    Notably, Class Counsel obtained this result even though another district court had previously held that the amended version of the statute applied to any claim brought on or after the amendment's July 31, 2016 effective date. *See Raden v. Martha Stewart Living OmniMedia, Inc.*, 2017 WL 3085371, at \*4 (E.D. Mich. July 20, 2017), *reconsideration denied*, 2018 WL 460072 (E.D. Mich. Jan. 18, 2018). For nearly a year after the *Raden* decision, the consensus among the rest of the plaintiff's bar was that the PPPA was officially dead and, as such, no other PPPA cases were filed until Class Counsel filed the *Horton* matter on May 29 2018.

statute of limitations applies to PPPA claims.[4] Hedin Decl. ¶ 12; Miller Decl. ¶ 38; Fraietta Decl. ¶ 11; *see Pratt v. KSE Sportsman, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022). Other Michigan courts soon followed in accord. Hedin Decl. ¶ 13; *see, e.g.*, *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *3 (W.D. Mich. June 9, 2022).

Moreover, for this and many other later-filed PPPA cases, the plaintiffs' and class members' claims relied on Class Counsel's analysis and advocacy in regards to the COVID Orders. Hedin Decl. ¶ 16; Miller Decl. ¶ 30. Originally, Class Counsel determined that the latest that a suit could reasonably be filed was by July 31, 2022. *Id.* But, through extensive research and legal analysis, Class Counsel determined that the 102 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. *Id.* Class Counsel consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in COVID Orders cases which have now been taken up by the Michigan Supreme Court. *Id.* Again, it was through the efforts and advocacy of Class Counsel that even permitted a viable theory of recovery for the Settlement Class. *Id.*

---

[4]    And as discussed *infra*, Judge Ludington recently finally approved the class action settlement in *Pratt*. *See Pratt v. KSE Sportsman Media, Inc.*, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement paying each class member approximately $420).

Simply put: Class Counsel's tireless efforts over the past decade identifying, developing, and pursuing this groundbreaking PPPA litigation paved the way for this and other important cases that otherwise never would have been pursued – and led to the recovery of meaningful relief for hundreds of thousands of consumers in Michigan. *See, supra*, *e.g.*, *Loftus*, *Kain*, *Strano*, *Moeller*.[5]

## ARGUMENT

I. **The Requested Service Awards are Fair and Reasonable and Should be Approved**

First, the Court should approve service awards of $3,500 to Mr. Schreiber, $2,500 to Mr. Colony, $2,500 to Ms. Vredeveld, and $1,000 to Mr. Surnow.

Service awards are often awarded in common-fund cases in the 6th Circuit. *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). The following factors are used in approving such an award: (1) actions to protect the class's interests and if that resulted in a substantial benefit to the class; (2) financial risk the class representative assumed; and (3) time and effort the class representative dedicated. *Lasalle Town Houses Coop Assoc. v. City of Detroit*, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016).

---

[5]     *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich.); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 (E.D. Mich.); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich.); *Moeller v. The Week Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich.).

In this case, each of the Class Representatives spent considerable time protecting the Settlement Class's interests. *See* Hedin Decl. ¶¶ 54-60; Miller Decl. ¶¶ 47-53. Although the extent of each of their work varied, all Class Representatives assisted in Class Counsel's investigation of their claims (and those of other similarly situated persons), including by detailing their *Mayo Clinic Health Letter* subscription histories, and aided in drafting the Complaints. Hedin Decl. ¶¶ 54-57; Miller Decl. ¶¶ 47-50. They searched for and produced to their counsel documents relevant to their claims. Hedin Decl. ¶ 59; Miller Decl. ¶ 52. And they have actively consulted with their counsel throughout the settlement process. Hedin Decl. ¶¶ 54-59; Miller Decl. ¶¶ 48-52.

The amounts of the requested Service Awards were reduced with Plaintiffs' consent following this Court's Order requiring supplemental briefing in a similar PPPA case. *See Kotila v. Charter Financial Publishing Network, Inc.*, Case No. 1:22-cv-00704 PageID.1707-08. Hedin Decl. ¶ 61; Miller Decl. ¶ 58; *see also, e.g.*, *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-cv-11404, 2024 WL 113755, at *3 (E.D. Mich. Jan. 10, 2024) (approving service awards in amounts similar to those requested here).

Notably, the amounts requested for Service Awards in this case are less than the amounts awarded to class representatives in other recently resolved PPPA cases: *see, e.g.*, *Kokoszki v. Playboy Enterprises, Inc.*, 2:19-cv-10302, ECF No. 38 at 7

17

(E.D. Mich. Aug. 19, 2020) (awarding $5,000), *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809, ECF No. 36 at 7 (E.D. Mich. Aug. 13, 2022)[6] (same), and *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807, ECF No. 33 at 1-2 (E.D. Mich. Mar. 16, 2023) (same), and are a fraction of the amounts that courts have awarded in many other consumer class action settlements. *See, e.g.*, *In re CMS Energy ERISA Litig.*, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding class representatives $15,000).

Accordingly, the requested Service Awards (which appropriately vary in amount in light of the nature and extent of the contributions by each of the Plaintiffs) are fair and reasonable and should be approved. *See* Order, ECF No. 68 at 15, PageID.3781 ("The Court preliminarily approves a service award in the amount of $3,500.00 for Jeffrey Schreiber, $2,500.00 for Richard Colony and Kay Vredeveld, and $1,000.00 for Michael Surnow."); *see also In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (noting that "a differentiation among [the amounts of service awards to] class representatives based upon the role each played may be proper in given circumstances," and awarding two class representatives $55,000 each and three class representatives $35,000 each).

---

[6]    *See also* PageID.3745 (Aug. 9, 2022 *Loftus* Fin. Approv. Hrg. Tr. at 8:12-16).

## II.    The Requested Fee Award is Fair and Reasonable and Should be Approved

The Court should also approve a Fee Award (inclusive of attorneys' fees and out-of-pocket litigation expenses) of 35% of the Settlement Fund to Class Counsel, both to compensate them for the work they performed for the Settlement Class on a purely contingent basis, and in recognition of the remarkable result they achieved in the face of significant risks of nonrecovery. *See* Fed. R. Civ. P. 23(h) (providing that district courts may award class counsel "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement").

Courts strongly encourage negotiated fee awards in class action settlements. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."). It is thus well established that attorneys who create a common fund for the benefit of a class are entitled to compensation for their services "from the fund as a whole." *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (explaining that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007).

"In deciding fee levels in common fund cases" such as the instant matter, courts must "'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (quotation omitted). "[D]istrict courts generally have discretion to choose whether to calculate fees based on the lodestar method— multiplying the number of hours reasonably expended by a reasonable hourly rate— or based on the percentage method—awarding class counsel a percentage of the monies recovered." *Lyngaas v. Curaden AG*, 2020 WL 5249203, at *1 (E.D. Mich. Sept. 3, 2020) (citing *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). "As the two methods measure the fairness of the fee . . . , it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*, at *1.

## A.    The Percentage-of-the-Settlement Fund Method Should Be Used

In this case, consistent with the Parties' Settlement Agreement, the Court should use the percentage of the fund method in awarding fees to Class Counsel. *See* Settlement Agreement ¶ 8.1 (providing that Class Counsel may petition the Court for a Fee Award of up to 35% of the Settlement Fund).

In "choosing between the percentage and lodestar approaches," courts "look to the calculation method most commonly used in the marketplace at the time such

a negotiation would have occurred." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500-01 (N.D. Ill. 2015) (citing *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998)); *see also Nilsen v. York Cty.*, 400 F. Supp. 2d 266, 278 (D. Me. 2005) ("There is good reason for using a market-oriented approach. If a consumer wanted to determine a reasonable plumber's, mechanic's or dentist's fee, the consumer would have to look to the market. Why should lawyers be different?").

And in consumer litigation such as the instant matter, where "the normal practice is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery[,]" *Kolinek*, 311 F.R.D. at 501, the federal judiciary is essentially in unanimous agreement that the percentage-of-the-fund approach best yields the fair market price for the services provided by counsel to the class. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 2006) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend[.]"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (explaining that where "a class suit produces a fund for the class," as is the case here, "it is commonplace to award the lawyers for the class a percentage of the fund," and affirming fee award of 38% of $20 million recovery to class) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16

(1984)); *Sutton*, 504 F.3d at 693 (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage of the common fund recovered); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 794 (N.D. Ill. 2015) ("[T]he court agrees with Class Counsel that the fee award . . . should be calculated as a percentage of the money recovered for the class.").

Awarding fees pursuant to the percentage-of-the-fund method is plainly appropriate in this case as well. The percent-of-the-fund method best replicates the *ex ante* market value of the services that Class Counsel provided to the Settlement Class. *See Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 831–32 (E.D. Mich. 1998) ("the percentage of the fund method . . . allows for a more accurate approximation of a reasonable award for fees."). It is not just the typical method used in contingency-fee cases generally, *see Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998), but it is also the means by which an informed Settlement Class and Class Counsel would have established counsel's fee *ex ante*, at the outset of the litigation. *See Kolinek*, 311 F.R.D. at 501 (in consumer class action litigation, "the normal practice [is] to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery"). The percentage-of-the-fund method also better aligns Class Counsel's interests with those of the Settlement Class because it bases the fee on the results the lawyers achieve for their clients rather than on the number of motions they file, documents they review, or hours they work, and it avoids some of the

problems the lodestar-times-multiplier method can foster (such as encouraging counsel to delay resolution of the case when an early resolution may be in their clients' best interests). *See Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999) (noting that the percentage-of-the-fund method provides "a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances"); *N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (explaining that "the percentage of the fund method more accurately reflects the results achieved" than the lodestar-times-multiplier method).[7] And it is also simpler to apply. *See Hillson v. Kelly Servs. Inc.*, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is easy to calculate" and "establishes reasonable expectations on the part of plaintiffs' attorneys.") (citation omitted); *Manners*, 1999 WL 33581944, at *29 (noting that the percentage approach reduces the burden on the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members).

As one court in the Eastern District of Michigan aptly explained:

---

[7]     In this case for example, a lodestar approach would have encouraged Class Counsel to reject or delay entering into the Settlement Agreement merely to bill more hours through more unnecessary, wasteful, and inefficient litigation—an approach that, had it been adopted by Class Counsel, could have resulted in no recovery to the Settlement Class Members. *See Newberg on Class Actions* § 12.55 (noting recent criticisms of the lodestar method of computing fees).

> The lodestar [method] remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class. Moreover, use of the lodestar may result in under compensation of talented attorneys. Experienced practitioners know that a highly qualified and dedicated attorney may do more for a class in an hour than another attorney could do in ten. The lodestar can end up prejudicing lawyers who are more efficient with a less expenditure of time.

*In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 (E.D. Mich. Nov. 26, 2002); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 747 (S.D. Tex. 2008) (explaining the same).[8]

For these reasons, the "trend" among district courts of the Sixth Circuit is to use the percentage-of-the-fund method to award fees to class counsel in cases where, as here, the settlement requires the defendant to establish a non-reversionary settlement fund for the class's benefit. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) (noting that "the Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in common fund cases'"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532 ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend[.]"); *Bowling v. Pfizer*, 922 F. Supp. 1261, 1278–79 (S.D.

---

[8]    The lodestar approach, by contrast, is generally found appropriate in federal fee-shifting cases. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

24

Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996) (citations omitted) (noting that the preferred method in common fund cases has been to award a reasonable percentage of the fund); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (finding the percentage of the fund approach appropriate where "a substantial common fund has been established for the benefit of class members through the efforts of class counsel"). Indeed, in every prior PPPA class action settlement to date, the presiding court has used the percentage-of-the-fund method (rather than the lodestar-times-multiplier method) to calculate class counsel's fee. *See, e.g.*, *Loftus*, No. 2:21-cv-11809, ECF No. 36 at 7 (E.D. Mich. Aug. 13, 2022); *Strano*, No. 1:21-cv-12987, ECF No. 36 at 4 (E.D. Mich. Oct. 11, 2023); *Moeller*, No. 1:22-cv-10666, ECF No. 34 at 4 (E.D. Mich. May 18, 2016); *Kain*, No. 4:21-cv-11807, ECF No. 33 at 1 (E.D. Mich. Mar. 16, 2023); *Pratt*, No. 1:21-cv-11404, ECF No. 85 at 5-6 (E.D. Mich. Jan. 10, 2024); *see also Kinder v. Meredith Corp.*, No. 1:14-cv-11284, ECF No. 81 at 6 (E.D. Mich. May 18, 2016); *Higgins v. TV Guide Magazine, LLC*, No. 2:15-cv-13769, ECF No. 81 at 1 (E.D. Mich. Dec. 19, 2018); and *Kokoszki*, No. 2:19-cv-10302, ECF No. 38 at 7 (E.D. Mich. Aug. 19, 2020).

Accordingly, consistent with the recent trend in the Sixth Circuit, including the fee decisions in the PPPA cases cited above, the Court should use the percentage-of-the-fund method to calculate Class Counsel's Fee Award in this case.

**B.    A Fee and Cost Award of Thirty-Five Percent of the Settlement Fund is Fair and Reasonable**

In terms of the percentage to award, the Court should find that 35% of the Settlement Fund is fair and reasonable in light of the enormous amount of work performed by Class Counsel on behalf of the Settlement Class, the high-risk nature of this litigation, and the outstanding result that Class Counsel achieved for the Settlement Class's benefit.

As a threshold matter, the requested fee in this case – 35% of the Settlement Fund[9] – fits squarely within the "20 to 50 percent" range typically awarded by courts in comparable all-cash, common-fund class action settlements. *See In re Rio Hair Naturalizer Prod. Liab. Litig.*, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (Rosen, J.) (explaining that "fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 2019 WL 4746744, at *6 (E.D. Mich. Sept. 30, 2019), *aff'd sub nom. Shane Grp. Inc v. Blue Cross Blue Shield of Michigan*, 833 F. App'x 430 (6th Cir. 2021) (finding that a "reasonable" fee in all-cash, common-fund cases typically ranges "from 20 to 50 percent" of the

---

[9]    The award is calculated as percentage "from the fund as a whole." *Boeing*, 444 U.S. at 478; *Gascho*, 822 F.3d at 282 (the "[a]ttorney's fees are the numerator" and "the dollar amount of the Total Benefit to the class (which includes the benefit to class members, attorney's fees, and [potentially] the costs of administration)" is the denominator).

common fund); *Westley v. CCK Pizza Co., LLC*, 2019 WL 5653403, at *4 (E.D. Mich. Oct. 31, 2019) (same); *Manners*, 1999 WL 33581944, *29 ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%."); *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (noting the "usual 33-40 percent contingent fee" to plaintiff's lawyers); *see also, e.g.*, *Worthington v. CDW Corp.*, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) ("Counsel's requested percentage of 38 and one-third of the total gross settlement is solidly within the typical 20 to 50 percent range."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at * 11 (W.D. Ky. Dec. 22, 2009) (finding percentage of roughly 50% of settlement fund was reasonable); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (one-third fee from settlements totaling $158.6 million and finding that 33 percent "is certainly within the range of fees often awarded in common fund cases both nationwide and in the Sixth Circuit").

And notably, it is the same percentage that Michigan District Courts have consistently awarded to class counsel in settled PPPA class actions. *See Pratt*, No. 2:21-cv-11809, ECF No. 36 at 7 (E.D. Mich. Aug. 13, 2022) (awarding fee of 35% of common settlement fund); *Strano*, No. 1:21-cv-12987, ECF No. 36 at 4 (E.D. Mich. Oct. 11, 2023) (same); *Moeller*, No. 1:22-cv-10666, ECF No. 34 at 4 (E.D. Mich. May 18, 2016) (same); *Loftus*, No. 2:21-cv-11809, ECF No. 36 at 7 (E.D. Mich. Aug. 13, 2022) (same); *Kain*, No. 4:21-cv-11807, ECF No. 33 at 1 (E.D. Mich.

Mar. 16, 2023) (same); *Kinder*, No. 1:14-cv-11284, ECF No. 81 at 6 (E.D. Mich.

May 18, 2016) (same); *Higgins*, No. 2:15-cv-13769, ECF No. 81 at 1 (E.D. Mich.

Dec. 19, 2018) (same); *Kokoszki*, No. 2:19-cv-10302, ECF No. 38 at 7 (E.D. Mich.

Aug. 19, 2020) (same); *but see Perlin v. Time, Inc.*, No. 2:16-cv-10635, ECF No. 55

at 7 (E.D. Mich. Oct. 15, 2018) (awarding fee of 40% of common settlement fund).[10]

Finally, as explained in detail below, the reasonableness of the requested Fee

Award is firmly supported by each of the additional factors that district courts of the

Sixth Circuit may consider in awarding fees, including: (1) value of benefit to the

class; (2) society's stake in rewarding attorneys who produce the settlement's

benefits, to maintain an incentive to others; (3) whether the work was performed on

a contingent fee basis; (4) complexity of the litigation; (5) skill and standing of

counsel on both sides; and (6) the value of the legal services performed on an hourly

basis. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974);

*Gascho*, 822 F.3d at 280 (describing the *Ramey* factors as "germane" to the fee

inquiry); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

---

[10]    Although "the Sixth Circuit does not have a separate factor for comparing similar awards in other cases, courts in the Sixth Circuit often choose to analyze fees in comparable cases, either in one of the factors, or at the end of their factor analysis." *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 769 n.12 (S.D. Ohio 2007) (considering benchmark cases before synthesizing *Ramey* factors).

### 1.    Class Counsel Secured a Valuable Benefit for the Class in a Case Fraught with Risk

"The primary factor in determining a reasonable fee is the result achieved on behalf of the class." *In re Delphi*, 248 F.R.D. at 503; *Hensley*, 461 U.S. at 436 ("[T]he most critical factor is the degree of success obtained.")

Here, the Settlement recovers $52.5 million on a non-reversionary basis for the benefit of Settlement Class Members. After deducting notice and administration costs and the requested Service Awards and Fee Award, Settlement Class Members will *automatically* be mailed a check for approximately $540.00 to $700.00 – far exceeding the per-class member recovery in every previous PPPA settlement (many of which, unlike the Settlement here, required claim forms and thus resulted in 80-90% of class members receiving no payment). *See, e.g.*, *Perlin v. Time, Inc.*, No. 2:16-cv-10635, ECF No. 51 at 6 (E.D. Mich. July 5, 2018) (approving class settlement and 40% attorneys' fee that paid approximately $25-50 per claimant); *Kinder v. Meredith Corp.*, No. 1:14-cv-11284, ECF No. 81 at 6 (E.D. Mich. May 18, 2016) (approving class settlement and 35% attorneys' fee that paid approximately $50 per claimant); *Moeller v. Am. Media, Inc.*, No. 2:16-cv-11367, ECF No. 42 at 7-8 (E.D. Mich. Sept. 28, 2017) (approving class settlement and 35% attorneys' fee that paid approximately $100 per claimant).

Yet to fully appreciate the Settlement, it must be evaluated in light of the procedural and substantive hurdles that Class Representatives and Class Counsel

faced at the outset of this complex litigation. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *See Goodell v. Charter Commc'ns, LLC*, 2010 WL 3259349, at *1 (W.D. Wis. Aug. 17, 2010) ("The question is not how risky the case looks when it is at an end but how the market would have assessed the risks at the outset."); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014). Class Counsel began their pre-filing investigation in late 2020, when there were no other PPPA actions being prosecuted at all (let alone against Defendant) by any other attorneys in the country. Hedin Decl. ¶ 15; Miller Decl. ¶ 5. The success of this case depended on Class Counsel successfully arguing that the amended version of the PPPA does not apply to claims that accrued prior to July 31, 2016 (even if the action asserting the claims is brought after that date), that a six-year limitation period governs such claims, that the applicable six-year limitation period was tolled for 102 days pursuant to the Michigan Supreme Court's orders issued during the COVID-19 pandemic, and that the presence of Defendant's data card on a data-brokerage warehouse's website today adequately establishes that Defendant was engaged in the same disclosure practices prior to July 31, 2016[11]. Hedin Decl. ¶

---

[11]    On this last issue, courts have dismissed similar actions, premised on similar data cards, for failure to state a claim for relief. *See Nashel v. New York Times Co.*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022); *see also Bozung v. Christianbook, LLC*, 2023 WL 2385004 (W.D. Mich. Mar. 6, 2023), and subsequently *amended* 2023 WL 4540341 (W.D. Mich. July 14, 2023), per Class Counsel's efforts.

16; Miller Decl. ¶ 5. Although Class Counsel nevertheless plowed forward – and prevailed on each of these threshold legal issues, defeated Defendant's motion to dismiss, and ultimately negotiated the $52.5 Settlement presently before the Court for final approval, expending considerable time and resources in the process – in determining whether to meet Class Counsel's fee at the outset of this case, the Settlement Class would have known that no other firm had come forward to offer its services in this matter to the class or individual participants. Moreover, after Class Counsel commenced the litigation, no other counsel came forward to compete with Class Counsel for control of the case, to propose to the Court that it be appointed lead counsel at a lower fee structure, or to offer to share in the case's risk and expense with Class Counsel. Hedin Decl. ¶ 44; Miller Decl. ¶ 23.

The market therefore judged this to be a high-risk case. Competition for control is brisk when lawyers think cases have significant potential to generate large recoveries and significant attorney's fees. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003). Thus, as Judge Easterbrook once observed: "Lack of competition not only implies a higher fee but also suggests that most members of the . . . bar saw this litigation as too risky for their practices." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). That is exactly the circumstance here. Other attorneys and firms chose to pass on offering representation to the Settlement Class in this case because they either failed to identify the existence of

class members' PPPA claims in the first place or found pursuing those claims not worth the risk – in either case firmly establishing that Class Counsel would have been able to obtain the requested fee of 35% of the Settlement Fund in an *ex ante* negotiation with the Settlement Class.

Finally, the risks that continued litigation would have posed absent the Settlement—including the Michigan Supreme Court's resolution of appeals challenging the constitutionality of its COVID-19 tolling orders[12], the potential for a Sixth Circuit decision finding that a three-year (rather than six-year) limitation period applies to PPPA claims (in either this case or any of the numerous other PPPA actions that remain pending), this Court's decisions on dispositive motions (including the issue of whether Defendant "disclosed" subscriber data within the meaning of the statute by uploading it to SFG's server and making it available to RMI), additional fact and expert discovery necessary for trial, and other potential obstacles that could strip the class of any recovery—only further underscore the

---

[12] As explained in Plaintiffs' motion for preliminary approval, the timeliness of the claims alleged in this case on behalf of the Settlement Class depends on the 102 days of tolling afforded by the Michigan Supreme Court's orders issued during the early days of the COVID-19 pandemic. TAC ¶ 1 n.2. And while this Court has held that the Michigan Supreme Court's COVID tolling orders apply to PPPA claims, *see Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *3-4 (W.D. Mich. July 7, 2023), the constitutionality of those orders is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hosp.*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). Absent the Settlement, an adverse decision in the pending appeal in *Armijo* would have deprived the Settlement Class of any recovery whatsoever.

significant value of the relief recovered through the Settlement. *See In re Omnivision Tech*s., 559 F. Supp. 2d 1036, 1046-47 (C.D. Cal. 2008) ("The risk that further litigation might result in plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

Accordingly, the first and most important factor weighs heavily in favor of approving the requested Fee Award.

### 2.    Societal Stake in Complex Consumer Privacy Litigation

Society has a strong stake in rewarding attorneys who produce the type of benefits achieved by the Settlement. *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 ("Consumer class actions . . . have value to society . . . as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources.").

As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Thus, when individual class members seek relatively small statutory damages, as is the case here, "[e]conomic reality dictates that [their] suit proceed as a class action or not at all." *Id.*

Society as a whole benefits when consumer privacy is protected, and thus has a strong interest in incentivizing litigation such as the instant matter. Class actions under the PPPA are the most realistic means of safeguarding Michigan consumers'

privacy with respect to their reading materials, especially given that most remain unaware of the underlying privacy violations (here, it was alleged that Defendant secretly disclosed its customers' personal reading information). The alternative to this litigation would have been no enforcement of the statute at all, leaving the allegedly unlawful conduct unremedied and further violations to continue unabated. *See In re Rio*, 1996 WL 780512, at *17 ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized."); *In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."); *Manners*, 1999 WL 33581944, at *30 ("[A]ttorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.") (citation omitted).

Additionally, the Settlement Class's reaction to the requested Fee Award also confirms its fairness and reasonableness. The Notices here specifically stated that counsel intends to apply for a fee of up to 35% of the Settlement Fund, consistent with the parties' agreement concerning such amount. *See* Settlement Agreement ¶ 8.1 (providing that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses up to 35% of the Settlement Fund); *see also Hensley*, 461 U.S. at 437 (noting that negotiated, agreed upon attorneys' fees are the "ideal"

toward which litigants should strive). Since dissemination, *not one* Settlement Class Member has submitted an objection to the Settlement or the requested Fee Award. While not dispositive, "[t]he lack of objections from the Class supports the reasonableness of the fee request." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *see also In re Delphi*, 248 F.R.D. at 504 ("The Class's overwhelming favorable response lends further support to the conclusion that the requested fee award is fair and reasonable.").

Accordingly, the second factor weighs heavily in favor of approving the requested Fee Award.

### 3. Counsel Took the Case on a Contingent Basis, Assuming Significant Risk of Nonpayment

Class Counsel's willingness to undertake this litigation on a contingency basis further supports the reasonableness of the requested Fee Award. *See In re Cardizem*, 218 F.R.D. at 533; *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). Indeed, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974)).

Class Counsel pursued this action on a purely contingent basis, and as such, invested significant time, effort, money, and other resources without any guarantee of compensation or reimbursement. Hedin Decl. ¶ 43; Miller Decl. ¶ 24. And given the significant litigation risks faced by Plaintiffs and class members in this case, as previously discussed (*see supra* Section II, Part B.1), success on the merits was far from certain. *See* Hedin Decl. ¶ 45; Miller Decl. ¶ 28. Cognizant of the risks of nonrecovery and thus nonpayment for their services, Class Counsel nonetheless embarked on a fact-intensive investigation of Defendant's practices, filed the case, and engaged in dispositive motion practice and discovery (including the issuance of dozens of subpoenas to third parties).[13] Hedin Decl. ¶ 46; Miller Decl. ¶ 25. Class Counsel paid for and participated in several full-day mediations with Chief Judge Rosen and Judge Andersen. Hedin Decl. ¶ 47; Miller Decl. ¶ 27. Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. Hedin Decl. ¶ 47; Miller Decl. ¶ 28.

And due to the extensive investment of time required to properly prosecute this matter, Class Counsel were forced to forgo representing clients in other matters

---

[13]    These risks are very real. As described in the Miller Declaration, a recent class action case resulted in zero recovery to date after eight years of litigation followed by a trial, with losses in excess of $10,000,000.00 in attorney fee time. Miller Decl. ¶ 26. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-md-02744 (E.D. Mich.). Further, this court is aware of *Nashel*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022), which resulted in zero recovery in a PPPA case and thus a total loss for the plaintiff's attorneys in that case.

they otherwise would have taken on. *See* Hedin Decl. ¶ 48; Miller Decl. ¶ 29; Fraietta Decl. ¶ 13.

Simply put, this litigation presented numerous risks of non-recovery to the Settlement Class and thus non-payment to Class Counsel at the outset. The requested Fee Award, if approved, would reasonably compensate Class Counsel for assuming such risks by embarking on lengthy, time-consuming, and expensive litigation for the Settlement Class's benefit. *See In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (explaining that attorneys who take cases with "a significant risk of nonpayment . . . should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case"); *In re Cardinal Health*, 528 F. Supp. 2d at 766 (contingency factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case"); *see also, e.g.*, *Barnes v. Winking Lizard, Inc.*, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless there was a recovery, and should be compensated for that risk."); *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("Plaintiffs' counsel undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant fee[.]).

Accordingly, the third factor weighs heavily in favor of approving the

requested Fee Award.

### 4.    The Complexity of the Litigation Supports the Requested Fee Award

The complexity of the litigation also confirms the reasonableness of the requested fee award. *In re Cardizem*, 218 F.R.D. at 533. "[M]ost class actions are inherently complex[.]" *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). And this case is no exception.

This litigation involved multiple layers of factual complexity, much of which was obscured at the outset due to Defendant's alleged concealment of its practices from consumers. Hedin Decl. ¶ 23; Miller Decl. ¶ 6. This required extensive preliminary investigation into Defendant's business practices, its methods of data collection and aggregation, and the nature of its relationships with various third-party data companies, and then lengthy and tedious work in discovery to locate, obtain, and analyze the several-years-old materials needed to establish Defendant's liability and to identify class members. Hedin Decl. ¶ 24; Miller Decl. ¶ 6.

For instance, on June 26, 2023, as a result of Class Counsel's subpoena efforts, Commerce Register, Inc. ("CRI"), one of the over 30 third parties subpoenaed by Class Counsel, produced a document in response to Plaintiffs' subpoena concerning Defendant's transmission of a subscriber list to The Salvation Army that occurred on or about June 20, 2016, squarely within the relevant time period, thus, further bolstering the claims here. Hedin Decl. ¶ 25. Then, on October 10, 2023, SFG, LLC

("SFG"), Mayo's agent and another of the third parties subpoenaed by Plaintiffs, produced materials in response to Plaintiffs' subpoena indicating that SFG transmitted, on Mayo's behalf, a Mayo subscriber list to CRI on June 23, 2016, squarely within the applicable class period. Hedin Decl. ¶ 27. This discovery was spurred by SFG's production to Class Counsel of a server log file that reflects the activity on SFG's server housing Mayo's data during the class period. *Id.* Although Plaintiffs requested a copy of this log file in their subpoena issued to SFG on June 1, 2023, SFG consistently denied being in possession of a such a file for several months, including after multiple meet and confer efforts by Class Counsel. *Id.* In response to these denials, Class Counsel served a subpoena for inspection of premises on SFG, setting a date for Class Counsel and a digital forensics firm selected by Class Counsel to inspect the actual server at SFG's headquarters in Big Sandy, Texas to locate the server's log file that reflects the activity on the server during the class period. *Id.* Shortly thereafter, on October 10, 2023, SFG's counsel notified Class Counsel that it had located the log file, which had been in its possession all along, and produced the file to Class Counsel. *Id.* The log file was critical to obtaining the Settlement as it reflects, *inter alia*, a transmission of a Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to CRI on June 23, 2016. *Id.* As a result of these efforts, Plaintiffs filed the Second and Third

39

Amended Complaints, which added Plaintiffs (who appear on either the July 18, 2013 subscriber list or the Salvation Army list) as putative class representatives. ECF Nos. 49, 65. It was through efforts like these by Class Counsel in uncovering the critical facts underpinning Plaintiffs' claims that made the Settlement possible.

The case also involved complex legal issues. As explained above, this case presented multiple legal hurdles right out the gate – including demonstrating that the applicable limitation period was 6 years and that COVID-19 tolling applied to Plaintiffs' claims. Additionally, Defendant raised various defenses to the merits of the claims and were also prepared to assert numerous challenges to the propriety of class certification, before this Court and the Sixth Circuit if necessary, absent the Settlement. Hedin Decl. ¶ 26; Miller Decl. ¶ 45.

Accordingly, the fourth factor weighs heavily in favor of approving the requested Fee Award.

### 5. The Parties Are Both Represented by Skilled Counsel

The skill of both Class Counsel and Defendant's counsel also validates the reasonableness of the requested fee award. *In re Rio*, 1996 WL 780512, at *18; *In re Delphi*, 248 F.R.D. at 504 ("The quality of opposing counsel also is important to evaluate.").

Class Counsel have significant experience litigating class actions of similar size, scope, and complexity as here. Hedin Decl. ¶ 63; Miller Decl. ¶ 40; Fraietta

Decl. ¶ 16. They regularly engage in complex litigation involving consumer privacy, including PPPA cases. *See* Hedin Decl. ¶ 62; Miller Decl. ¶¶ 39-40; Fraietta Decl. ¶¶ 16-19.

Class Counsel also faced highly experienced and skilled defense counsel, who made clear that, but for the Settlement, Defendant would dispute its liability and assert multiple defenses. Hedin Decl. ¶ 41; Miller Decl. ¶ 45. "The ability of [counsel] to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504.

Accordingly, the fifth factor weighs heavily in favor of approving the requested Fee Award.

### 6. The Value of the Legal Services Provided by Class Counsel Far Exceeds the "Lodestar" they Incurred Solely on the Instant Matter

The final factor considers the value of the legal services performed on an hourly basis, also known as counsel's "lodestar." *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).

However, as previously discussed, *see supra* Section II, Part A, in this case the percentage-of-the-fund method, not the lodestar method, is the appropriate method for computing a Fee Award to Class Counsel for achieving the all-case, common-fund Settlement, rendering this factor immaterial to the analysis. *See Rikos*

41

*v. Proctor & Gamble Co.*, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) (noting that "a lodestar cross-check" is "unnecessary" in determining percentage of the fund to award class counsel for achieving common-fund settlement); *Feiertag v. DDP Holdings, LLC*, 2016 WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016) ("Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional"); *Dillow v. Home Care Network, Inc.*, 2018 WL 4776977, at *6 (S.D. Ohio Oct. 3, 2018) (lodestar cross-check of percentage of the fund fee award is "unnecessary").

Indeed, district courts of the Sixth Circuit typically find no need to consider counsel's lodestar when using the percentage-of-the-fund method to award fees in common-fund class action settlements. *See, e.g.*, *Blasi v. United Debt Servs., LLC*, 2019 WL 6050963, at *9 n.2 (S.D. Ohio Nov. 15, 2019) ("Performing the lodestar cross-check is optional. The Court deems that analysis unnecessary here."); *Barnes*, 2019 WL 1614822, at *5 (using the percentage of the fund method without considering the lodestar method); *In re Delphi*, 248 F.R.D. at 503 (applying percentage-of-the-fund-method in awarding fees in common-fund settlement, without addressing *Ramey* factor related to "the value of the services on an hourly basis").

The unique circumstances giving rise to this case further illustrate why the hourly value of Class Counsel's time expended solely on the prosecution of the

instant matter has little to no bearing on the reasonableness of the requested Fee Award. As previously explained, the non-reversionary $52.5 million common-fund Settlement achieved is a direct result of Class Counsel's multi-year investigation into certain disclosure practices in effect in segments of the publishing industry in 2015-16, Class Counsel's extensive analysis of the applicable statute of limitations (and other threshold issues), and the significant time (thousands of hours) and other resources Class Counsel expended prosecuting related litigations and developing favorable bodies of PPPA jurisprudence on issues of critical importance to the claims alleged in this case. *See* Hedin Decl. ¶ 49; Fraietta Decl. ¶¶ 4-11. This included methodically reviewing historical data cards found in cached Internet archives to identify companies whose practices violated the PPPA, Hedin Decl. ¶ 50; Fraietta Decl. ¶ 6, and litigating (and prevailing on) critically important issues such as the retroactivity of the Michigan legislature's amendment to the PPPA that became effective on July 31, 2016 and the applicability of the catch-all six-year limitation period to these claims. Hedin Decl. ¶ 50; Fraietta Decl. ¶ 8. Thus, neither this case nor this Settlement should be viewed in a vacuum, but rather as part of a multi-year project in which counsel devoted substantial time, money, and resources for the benefit of Michigan consumers (i.e., the Settlement Class Members), all on a contingency basis without any guarantee of recovering fees for their work or reimbursement for out-of-pocket expenses. *See* Hedin Decl. ¶ 51; Fraietta Decl. ¶ 12

43

("[T]he excellent result we obtained in this case, and the efficiency with which we obtained it, would not have been possible without the significant investments of time and other resources that we made towards the prosecution of the PPPA actions outlined above over the better part of the past decade, which provided us with the knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve this Settlement.").

Instructive on this point is the decision in *Arp v. Hohla & Wyss Enterprises, LLC*, where a district court of the Sixth Circuit awarded counsel a percentage of a common settlement fund as a fee, regardless of counsel's lodestar, in a case involving circumstances strikingly similar to those here. The court in *Arp* explained:

> What the lodestar . . . does not reflect is Class Counsel's work in other [similar] cases that directly benefited the class . . . A firm's expertise in a niche area provides important context when analyzing the reasonableness of fees. For example, Class Counsel's success on a specific type of case or specific issue augments their ability to obtain a favorable result in cases of the same type.

> It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work in other cases raising the same or similar issues. That work may . . . substantially enhance the result Class Counsel is able to achieve . . . [because] (1) successfully litigating a particular issue may improve the settlement prospects of cases raising the same issue, (2) developing expertise in a specific niche improves the firm's ability to effectively litigate within that niche, and (3) the work product from one case can be used in a case raising the same issue, resulting in value that is not adequately reflected in a lodestar calculation.

> . . . the percentage-of-the-fund approach automatically factors into the award any enhancement to the settlement derived from Class Counsel's work in similar cases . . . [and] encourages efficiency, judicial economy, and aligns interests of the lawyers with the class.

*Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956, at *7-8 (S.D. Ohio Nov. 5, 2020) (citing *In re Cardinal Health*, 528 F. Supp. 2d at 766) (quotations omitted).

And in *Loftus*, another PPPA class action, Judge Goldsmith adopted the same reasoning in approving Class Counsel's request for 35% of the fund without undertaking a lodestar cross-check:

> [T]he request for 35 percent is in line with what other courts have approved and especially in this context where the lawyers did produce significant results for the class in very short order . . . they should be rewarded appropriately for having done a very effective job as class counsel.

ECF No. 66-5, PageID.3744-45 (Aug. 9, 2022 *Loftus* Fin. Approv. Hrg. Tr., 7:21-8:1). In fact, every court presiding over a PPPA class action settlement in recent memory has awarded class counsel a percentage of the settlement fund as a fee award, without considering the hourly value of the legal services expended (i.e., the "lodestar"). *See Pratt*, No. 1:21-cv-11404, ECF No. 85 at 5-6 (E.D. Mich. Jan. 10, 2024) (approving fee award of 35% of common fund without considering lodestar); *Strano*, No. 1:21-cv-12987, ECF No. 36 at 4 (E.D. Mich. Oct. 11, 2023) (same); *Moeller*, No. 1:22-cv-10666, ECF No. 34 at 4 (E.D. Mich. May 18, 2016) (same); *Kain*, No. 4:21-cv-11807, ECF No. 33 at 1 (E.D. Mich. Mar. 16, 2023) (same).

Class Counsel's request for a Fee Award of 35% of the Settlement Fund in this case rests on the same set of circumstances that supported the approved fee awards of 35% of the settlement funds in *Pratt*, *Strano*, *Moeller*, *Arp*, *Loftus*, and *Kain*. Class Counsel should be rewarded for overcoming significant litigation risks and efficiently achieving the best per-class member settlement ever in a PPPA case, on a non-reversionary basis and with an automatic payment structure. This result would not have been possible without the thousands of hours of time Class Counsel devoted, over several years, investigating the publishing industry's disclosure practices and developing law on each of the critically important issues that paved the way for future claims under the statute, including the claims alleged in this case. *See* Hedin Decl. ¶¶ 49-52; Miller Decl. ¶¶ 54-57; Fraietta Decl. ¶¶ 4-12. *See Arp*, 2020 WL 6498956, at *7 ("A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fee").

Against this backdrop, the "lodestar" value of the work Class Counsel performed solely on the prosecution of this case – the focus of the sixth and final *Ramsey* factor – is an unhelpful metric for assessing the reasonableness of the requested Fee Award. Rather, in light of the $52.5 million Settlement that Class Counsel achieved – in a case that no other counsel was interested in pursuing, which alleged claims that no other counsel had even identified, for violation of a statute that no other counsel even believed was still prosecutable – Class Counsel

46

respectfully submit that the value of the services they provided to the Settlement Class actually exceeds the amount of the requested Fee Award.

## CONCLUSION

For the foregoing reasons, the Court should approve service awards to Class Representatives in the amounts of $3,500 to Mr. Schreiber, $2,500 to Mr. Colony, $2,500 to Ms. Vredeveld, and $1,000 to Mr. Surnow, and approve a Fee Award to Class Counsel in the amount of 35% of the Settlement Fund.

Dated: April 29, 2024                        Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Frank S. Hedin
Arun G. Ravindran
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinllp.com
aravindran@hedinllp.com

Joseph I. Marchese (P85862)
Philip L. Fraietta (P85228)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

jmarchese@bursor.com
pfraietta@bursor.com

*Class Counsel*

## CERTIFICATE REGARDING WORD COUNT

Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow, pursuant to W.D. Mich. LCivR 7.2(b)(ii) & 7.3 (b)(ii), by and through counsel, certify that Plaintiffs' Brief in Support of Plaintiffs' Unopposed Motion for Service Awards and Fee Award contains 11,585 words, as indicated by Microsoft Word for Office 365 Business version 1910, inclusive of any headings, footnotes, citations, and quotations, and exclusive of the caption, cover sheets, table of contents, signature block, any certificate, and any accompanying documents. Concurrent with the filing of this brief, Plaintiffs are filing an Unopposed Motion for Leave to File an Oversized Brief.

Dated: April 29, 2024                         Respectfully Submitted,

                                              /s/ *E. Powell Miller*
                                              E. Powell Miller (P39487)
                                              **THE MILLER LAW FIRM, P.C.**
                                              950 W. University Drive, Suite 300
                                              Rochester, MI 48307
                                              Tel: 248-841-2200
                                              epm@millerlawpc.com

                                              *Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on April 29, 2024, I served

the above and foregoing ***Plaintiffs' Unopposed Motion for Service Awards and Fee***

***Award*** on all counsel of record by filing it electronically with the Clerk of the Court

using the CM/ECF filing system.

<u>*/s/ E. Powell Miller*</u>
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200