# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, <br><br> Defendant. | Case No. 22-cv-00188-HYJ-RSK <br><br> Hon. Hala Y. Jarbou <br><br> Mag. Judge Ray S. Kent |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

The undersigned counsel certifies that Plaintiffs' counsel communicated with counsel for Defendant, via email on May 14, 2024, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; counsel for Defendant has communicated that Defendant does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiffs' Brief in Support of their Unopposed Motion for Final Approval of Class Action Settlement, Plaintiffs respectfully request that the Court grant final approval to the Class Action Settlement[1] and enter final judgment.[2]

Dated: May 15, 2024                    Respectfully submitted,

                                       By: */s/ E. Powell Miller*
                                       One of Plaintiffs' Attorneys

                                       E. Powell Miller (P39487)
                                       **THE MILLER LAW FIRM, P.C.**
                                       950 W. University Drive, Suite 300
                                       Rochester, MI 48307
                                       Tel: 248.841.2200
                                       epm@millerlawpc.com

                                       Joseph I. Marchese (P85862)
                                       jmarchese@bursor.com
                                       Philip L. Fraietta (P85228)
                                       pfraietta@bursor.com
                                       **BURSOR & FISHER, P.A.**

---

[1]    The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

[2]    A proposed Final Judgment and Order of Dismissal with Prejudice is attached to the Supporting Brief as **Exhibit E**.

1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JEFFREY SCHREIBER, RICHARD COLONY, KAY VREDEVELD, and MICHAEL SURNOW, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH,<br><br>    Defendant. | Case No. 22-cv-00188-HYJ-RSK<br><br>Hon. Hala Y. Jarbou<br><br>Mag. Judge Ray S. Kent |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## STATEMENT OF ISSUES PRESENTED

1.    Whether this Court should find that notice to the Settlement Class satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, when direct notice—detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or automatically receiving payment—was transmitted via postcard notice or e-mail and reached 93.02% of the Settlement Class Members?

**Plaintiffs' Answer: Yes.**

2.    Whether this Court should grant final approval to the Settlement Agreement under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("PPPA"), finding it fair, reasonable, and adequate, when it delivers meaningful monetary relief to the Settlement Class?

**Plaintiffs' Answer: Yes.**

3.    Whether the Settlement Class should be finally certified under Federal Rule of Civil Procedure 23(a) and 23(b)(3) where this Court has conditionally certified the Class for settlement purposes and nothing has changed to alter the propriety of this Court's certification?

**Plaintiffs' Answer: Yes.**

## <u>**CONTROLLING AND MOST APPROPRIATE AUTHORITIES**</u>

- Fed. R. Civ. P. 23

- *Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)

- *In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003)

- *Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008)

- *UAW v. Gen. Motors Corp.*,
  2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

- *UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)

- *Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983)

- Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
  Checklist and Plain Language Guide (2010)

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND ....................................................................................2

        A.    Michigan's Preservation of Personal Privacy Act.................................2

        B.    Pre-Filing Investigation .........................................................3

        C.    History of the Litigation and Settlement Negotiations..........................5

        D.    Class Counsel's History Litigating Michigan PPPA Claims ................9

III.    KEY TERMS OF THE SETTLEMENT....................................................13

IV.     THE NOTICE PLAN COMPORTS WITH DUE PROCESS .......................16

V.      THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................18

        A.    The Rule 23(e)(2) Factors Weigh in Favor of Final Approval ...........19

        B.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.20

              1.    There Is No Risk of Fraud or Collusion. ...........................................20

              2.    Litigation Through Trial Would Be Complex, Costly, and Long....21

              3.    Discovery Allowed Plaintiffs to Intelligently Negotiate the Settlement. ....................................................................22

              4.    Plaintiffs Would Face Real Risks if the Case Proceeded.................23

              5.    Proposed Class Counsel and Class Representative Support the Settlement. ....................................................................24

              6.    The Reaction of Absent Class Members. .........................................24

              7.    The Settlement Serves the Public Interest. .....................................25

VI.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED.........27

VII.    CONCLUSION ..............................................................................28

# TABLE OF AUTHORITIES

## Cases

*Armijo v. Bronson Methodist Hospital*,
991 N.W.2d 593 (Mich. 2023)....................................................24

*Boelter v. Advance Magazine Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016)...................................10

*Boelter v. Hearst Communications, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016)..............................3, 10

*Boelter v. Hearst Communications, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017).......................... 10, 11

*Dick v. Sprint Commc'ns Co. L.P.*,
297 F.R.D. 283 (W.D. Ky. 2014)..........................................16

*Edwards v. Hearst Commc'ns, Inc.*,
2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016).......................11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ............................................... 16, 26

*Fidel v. Farley*,
534 F.3d 508 (6th Cir. 2008).................................................16

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016)..............................................17

*Gottsleben v. Informa Media, Inc.*,
2023 WL 4397226 (W.D. Mich. July 7, 2023)....................24

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
2013 WL 692856 (E.D. Mich. Feb. 26, 2013)....................18

*Hanlon v. Chrysler*,
150 F.3d 1011 (9th Cir. 1998)..............................................25

*Horton v. GameStop, Corp.*,
380 F. Supp. 3d 679 (W.D. Mich. 2018) ........................3, 11

*In re Cardizem CD Antitrust Litigation*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................25

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)......................17

*Kain v. The Economist Newspaper NA, Inc.*,
No. 4:21-cv-11807 (E.D. Mich.).........................................13

*Krassick v. Archaeological Inst. of Am.*,
2022 WL 2071730 (W.D. Mich. June 9, 2022) ..................12

*Leonhardt v. AvrinMeritor, Inc.*,
581 F. Supp. 2d 818 (E.D. Mich. 2008)......................... 18, 20

*Loftus v. Outside Integrated Media*, *LLC*,
    No. 2:21-cv-11809 (E.D. Mich. Aug. 9, 2022) .................................................9, 13

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .....................................................25

*Moeller v. American Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017) ...............................................................10

*Moeller v. The Week Publications, Inc.*,
    No. 1:22-cv-10666 (E.D. Mich.) ..........................................................................13

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) .........................................................................25

*Palmer Park Square, LLC v. Scottsdale Insurance Company*,
    878 F.3d 530 (6th Cir. 2017) ................................................................................11

*Raden v. Martha Stewart Living OmniMedia, Inc.*,
    2017 WL 3085371 (E.D. Mich. July 20, 2017), *reconsideration denied*, 2018 WL
    460072 (E.D. Mich. Jan. 18, 2018) ......................................................................11

*Sheick v. Auto. Component Carrier, LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ....................................................21

*Sims v. Pfizer, Inc.*,
    2016 WL 772545 (E.D. Mich. Feb. 24, 2016) .....................................................26

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ....................................................16

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ........................................................................ passim

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ................................................................................18

## Statutes

M.C.L. § 445.1712 .................................................................................3
M.C.L. § 445.1715 .................................................................................3
Michigan Preservation of Personal Privacy Act ......................................................1

## Rules

Fed. R. Civ. P. 12(b)(6) ...........................................................................5
Fed. R. Civ. P. 15(a)(1) ...........................................................................5
Fed. R. Civ. P. 23 ........................................................................... passim
Fed. R. Civ. P. 23(c)(2)(B) .......................................................................16
Fed. R. Civ. P. 23(e) .............................................................................18
Fed. R. Civ. P. 23(e)(2) ....................................................................... 18, 19
Fed. R. Civ. P. 23(f) ............................................................................23
Fed. R. Civ. P. 26 ...............................................................................7
MCR 3.501(A)(5) ...............................................................................10

## I.    INTRODUCTION

In this putative class action, Plaintiffs allege that Defendant disclosed records reflecting that Plaintiffs and Defendant's other Michigan-based customers had purchased subscriptions to *Mayo Clinic Health Letter* to third parties, in violation of Michigan's Preservation of Personal Privacy Act (the "PPPA"), H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

After extensive litigation and hard-fought settlement negotiations overseen by the Honorable Gerald E. Rosen (Ret.) (formerly the Chief Judge of the Eastern District of Michigan and presently a mediator with JAMS), the Class Representatives and Class Counsel negotiated a settlement that, upon final approval by the Court, will require Defendant (and its insurers) to pay $52,500,000.00 (fifty-two million five-hundred thousand dollars) to establish an all-cash, non-reversionary Settlement Fund for the Settlement Class's benefit.[1] Each of the 62,746 Settlement Class Members will automatically receive a *pro rata* cash payment of approximately $540.00 to $700.00 from the Settlement Fund, without having to file a claim form. On a monetary basis, this Settlement amount recovered for each class member outperforms every other PPPA settlement by a wide margin. *See* Plaintiffs'

---

[1]    Unless otherwise defined herein, all capitalized terms appearing herein have the meanings ascribed to them in the Settlement Agreement.

Unopposed Motion for Service Awards and Fee Award (ECF No. 72) at PageID.3804 (chart listing other PPPA settlements).

On February 21, 2024, the Court issued an order granting preliminary approval to the Settlement. ECF No. 68. Shortly thereafter, the Settlement Administrator successfully implemented the Court-approved Notice Plan and direct notice has reached 93.02% of the certified Settlement Class. The reaction from the Settlement Class has been overwhelmingly positive, which is not surprising given the strength of the Settlement. Specifically, of the 62,746 Settlement Class Members, <u>zero</u> have objected and only fourteen have requested to be excluded.[2]

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, warranting this Court's final approval.

## II.    BACKGROUND

### A.  Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to preserve personal "privacy with respect to the purchase, rental, or borrowing of written materials." Third Amended Complaint (ECF No. 65) ("TAC"). As such, the PPPA (as it existed until July 30, 2016) provides that:

> a person, or an employee or agent of the person, engaged
> in the business of selling at retail . . . books or other written
> materials . . . shall not disclose to any person, other than
> the customer,  a  record  or  information  concerning  the

---

[2]    The deadline to object to or request exclusion from the Settlement was May 13, 2024. ECF No. 68, PageID.3774, ¶ 15; PageID.3776, ¶ 20.

> purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. It authorizes civil actions and provides for statutory damages of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA effective July 31, 2016, but this does not apply retroactively to claims accruing prior to the effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439-41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (citations omitted herein unless noted). Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

### B.  Pre-Filing Investigation

Class Counsel conducted an exhaustive pre-filing investigation, beginning in December 2020, concerning Mayo's (and other defendants') subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period. With respect to the instant matter in particular, prior to filing suit Class Counsel investigated every aspect of the factual and legal issues underlying Plaintiffs' claims, including:

- Researching the nature of Defendant's business, its practices of selling newsletters, consumer-privacy policies, and public statements concerning the same;

- Interviewing numerous individuals in Michigan who subscribed to Defendant's publications prior to July 31, 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Researching and analyzing Defendant's list rental and other disclosure practices, including years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of *Mayo Clinic Health Letter* subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016;

- Analyzing versions of Defendant's Privacy Policy, Terms of Service, and other public documents on its websites during the relevant time period;

- Researching the relevant law and assessing the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Reviewing caselaw and statutes concerning the applicable limitation period for a PPPA claim, analyzing the arguments regarding a six-year period; and

- Analyzing the arguments for the applicability of tolling pursuant to Michigan Supreme Court's administrative orders issued during the COVID-19 pandemic (the "COVID Orders"), including consulting with appellate lawyers briefing the matter before the Michigan Supreme Court.

*See* **Exhibit A** hereto, Declaration of E. Powell Miller in Support of Plaintiffs' Unopposed Motion For Final Approval ("Miller Decl.") ¶ 6; **Exhibit B** hereto, Declaration of Frank S. Hedin in Support of Plaintiffs' Unopposed Motion For Final Approval ("Hedin Decl.") ¶ 17. As a result, Class Counsel developed a viable theory of liability for a PPPA claim against Defendant and prepared a thorough Class Action Complaint to initiate this action. Hedin Decl. ¶ 18; Miller Decl. ¶ 7.

### C.  History of the Litigation and Settlement Negotiations

On September 26, 2022, Plaintiff Schreiber filed the Class Action Complaint against Defendant. ECF No. 1. The material allegations of the complaint centered on Defendant's alleged disclosure of its customers' personal information and reading choices to third parties before July 30, 2016, in violation of the PPPA. On January 3, 2023, Plaintiff Schreiber filed a First Amended Class Acton Complaint pursuant to Fed. R. Civ. P. 15(a)(1). ECF No. 19. Thereafter, the Court entered a Case Management Order (ECF No. 23), and the Parties began conducting significant written and document discovery, which included the exchange of thousands of pages of documents and voluminous electronically stored information, and the issuance of over 30 third-party subpoenas by Plaintiffs. Hedin Decl. ¶ 20; Miller Decl. ¶ 9. On January 17, 2023, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the First Amended Complaint failed to state a claim upon which relief could be granted. ECF Nos. 24-25. On July 13, 2023, after full

5

briefing, the Court issued an opinion and order denying Defendant's motion to dismiss in its entirety. ECF Nos. 45-46.

On June 26, 2023, Commerce Register, Inc. ("CRI"), one of the third parties subpoenaed by Plaintiffs, produced a document in response to Plaintiffs' subpoena concerning Defendant's transmission of a subscriber list to The Salvation Army that occurred on or about June 20, 2016, squarely within the relevant time period. Hedin Decl. ¶ 25. Thus, on July 27, 2023, Plaintiff Schreiber filed a Second Amended Complaint, which added Plaintiffs Vredeveld and Colony (persons who appeared on the list transmitted to The Salvation Army) as plaintiffs and putative class representatives. ECF No. 49. On August 10, 2023, Defendant filed its Answer to the Second Amended Complaint, which denied the allegations generally and asserted 12 affirmative defenses to liability, including that the claims were time-barred. ECF No. 50.

On October 10, 2023, SFG, LLC ("SFG"), Mayo's agent and another of the third parties subpoenaed by Plaintiffs, produced materials in response to Plaintiffs' subpoena indicating that SFG transmitted, on Mayo's behalf, a Mayo subscriber list to CRI on June 23, 2016, squarely within the applicable class period. Hedin Decl. ¶ 27. This discovery was spurred by SFG's production to Class Counsel of a server log file that reflects the activity on SFG's server housing Mayo's data during the class period. *Id.* Although Plaintiffs requested a copy of this log file in their subpoena

issued to SFG on June 1, 2023, SFG consistently denied being in possession of a such a file for several months, including after multiple meet and confer efforts by Class Counsel. *Id.* In response to these denials, Class Counsel served a subpoena for inspection of premises on SFG, setting a date for Class Counsel and a digital forensics firm selected by Class Counsel to inspect the actual server at SFG's headquarters in Big Sandy, Texas to locate the server's log file that reflects the activity on the server during the class period. *Id.* Shortly thereafter, on October 10, 2023, SFG's counsel notified Class Counsel that it had located the log file, which had been in its possession all along, and produced the file to Class Counsel. *Id.* The log file was critical to obtaining the Settlement as it reflects, *inter alia*, a transmission of a Mayo subscriber list (containing the names and addresses of all persons who had purchased *Mayo Clinic Health Letter* subscriptions that were active as of July 18, 2013) to CRI on June 23, 2016. *Id.* Thus, on February 9, 2024, Plaintiffs Schrieber, Vredeveld, and Colony filed the operative Third Amended Complaint, which added Plaintiff Surnow (who appears on the July 18, 2013 subscriber list) as a plaintiff and putative class representative. ECF No. 65.

From the start, the Parties engaged in direct communication, and pursuant to their obligations under Fed. R. Civ. P. 26, discussed resolution. *See* Hedin Decl. ¶ 28; Miller Decl. ¶ 15. On April 17, 2023, the Parties participated in an early settlement conference before Magistrate Judge Kent in Grand Rapids, which was

unsuccessful. *See* Hedin Decl. ¶ 29; Miller Decl. ¶ 16. Later on, on October 27, 2023, the parties participated in a full-day mediation with Judge Rosen in Detroit, during which they made substantial progress but failed to reach a settlement. *See* Hedin Decl. ¶ 30; Miller Decl. ¶ 17. Then, on December 11 and 12, 2023, the Parties participated in two additional full-day mediations with Judge Rosen in New York, where further progress was made, and after which the preliminarily-approved settlement was reached. *See* Hedin Decl. ¶ 31; Miller Decl. ¶ 18. In preparation for these mediation sessions, the Parties conducted extensive analysis of the size and parameters of the potential class, which included highly technical work performed by a database management expert hired by Proposed Class Counsel, and of the strengths and weaknesses of their respective cases. *See* Hedin Decl. ¶ 33; Miller Decl. ¶ 20. Class Counsel also prepared comprehensive mediation statements setting forth Plaintiffs' position on the various merits and class-related issues in dispute in advance of each of these sessions of mediation. *See* Hedin Decl. ¶ 32; Miller Decl. ¶ 19. After reaching an agreement in principle to resolve the case, the Parties devoted considerable time over the following several weeks drafting and then executing the Settlement Agreement, attached to the Miller Declaration as Exhibit 1 thereto, retaining (at the conclusion of a competitive bidding process) the now Court-appointed Settlement Administrator, Kroll Settlement Administration LLC ("Kroll"), and working together to finalize the Settlement Class List, which included

the assistance of Plaintiffs' retained database management expert. *See* Hedin Decl. ¶ 34; Miller Decl. ¶ 21.

### D.  Class Counsel's History Litigating Michigan PPPA Claims

The unprecedented result here would not have been possible without the significant investments of time and other resources (monetary and otherwise) expended by Class Counsel identifying, investigating and litigating claims on behalf of Michigan consumers under the PPPA for the better part of the past decade. It was these extensive efforts, in a niche area of law, that afforded Class Counsel the knowledge, experience, and well-developed body of jurisprudence necessary to achieve the Settlement in this case.[3]

Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged PPPA violations. *See* Hedin Decl. ¶ 3; **Exhibit C**, Declaration of Philip L. Fraietta in Support of Plaintiffs' Unopposed Motion for Final Approval ("Fraietta Decl.") ¶ 4. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. *Id*. Despite the uncertainty, Class Counsel

---

[3]    For example, in granting final approval to a similar class in *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809, ECF No. 36 (E.D. Mich. Aug. 13, 2022), the Honorable Mark A. Goldsmith commended the work of the attorneys representing the class – the same counsel here – and noted that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* PageID.3744 (Aug. 9, 2022 *Loftus* Fin. Approv. Hrg. Tr. at 7:13-17).

litigated numerous PPPA issues of first impression, such as: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Rule 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. Fraietta Decl. ¶ 5. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016). Class Counsel then conducted vigorous discovery, including in-depth research into data industry practices, such as data appending and data cooperatives, and ultimately third-party discovery from those companies. Fraietta Decl. ¶ 6. Through that discovery, Class Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id*. Class Counsel won a motion for summary judgment in *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). Fraietta Decl. ¶ 7. This summary judgment victory provided a roadmap to liability for publishers based on the above data industry practices. *Id.*

After the Michigan legislature amended the PPPA, effective July 31, 2016, to make "actual damages" a prerequisite to stating a claim and remove a prevailing plaintiff's entitlement to statutory damages, Class Counsel then successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to

its effective date of July 31, 2016. Hedin Decl. ¶ 5; Fraietta Decl. ¶ 8. *See Horton*, 380 F. Supp. 3d at 683 (holding amended version of the PPPA does not apply to claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date).[4]

And throughout all of that prior litigation, it was assumed that PPPA cases were governed by a 3-year statute of limitations. Hedin Decl. ¶ 8; Fraietta Decl. ¶ 9; *see, e.g.*, *Hearst*, 269 F. Supp. 3d at 172; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, Class Counsel later recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530 (6th Cir. 2017), and relevant Michigan authority, established a basis for applying a six-year limitation period to PPPA claims, and thus provided an avenue for class recovery under the original PPPA even as long as six years after a defendant's pre-July 31, 2016 disclosure practices. Hedin Decl. ¶ 9; Fraietta Decl. ¶ 9. After conducting extensive pre-suit investigative analysis, Class Counsel initiated litigation with the six-year limitation period as its foundation. Hedin Decl. ¶ 10;

---

[4]    Notably, Class Counsel obtained this result even though another district court had previously held that the amended version of the statute applied to any claim brought on or after the amendment's July 31, 2016 effective date. *See Raden v. Martha Stewart Living OmniMedia, Inc.*, 2017 WL 3085371, at *4 (E.D. Mich. July 20, 2017), *reconsideration denied*, 2018 WL 460072 (E.D. Mich. Jan. 18, 2018). For nearly a year after the *Raden* decision, the consensus among the rest of the plaintiff's bar was that the PPPA was officially dead and, as such, no other PPPA cases were filed until Class Counsel filed the *Horton* matter on May 29 2018.

Miller Decl. ¶ 5; Fraietta Decl. ¶ 10. Through Class Counsel's advocacy, in *Pratt*, Judge Ludington issued a first-of-its-kind published opinion, finding that a six-year statute of limitations applies to PPPA claims.[5] Hedin Decl. ¶ 12; Miller Decl. ¶ 31; Fraietta Decl. ¶ 11; *see Pratt v. KSE Sportsman, Inc.*, 586 F. Supp. 3d 666, 675 (E.D. Mich. 2022). Other Michigan courts soon followed in accord. Hedin Decl. ¶ 13; *see, e.g.*, *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *3 (W.D. Mich. June 9, 2022).

Moreover, for this and many other later-filed PPPA cases, the plaintiffs' and class members' claims relied on Class Counsel's analysis and advocacy in regards to the COVID Orders. Hedin Decl. ¶ 40; Miller Decl. ¶ 23. Originally, Class Counsel determined that the latest that a suit could reasonably be filed was by July 31, 2022. *Id.* But, through extensive research and legal analysis, Class Counsel determined that the 102 days of tolling provided by the COVID Orders would allow a suit to be brought through October 2022. *Id.* Class Counsel consulted with other Michigan litigants who were pursuing this theory, including the appellate counsel in COVID Orders cases which have now been taken up by the Michigan Supreme Court. *Id.* Again, it was through the efforts and advocacy of Class Counsel that even permitted

---

[5]    And as discussed *infra*, Judge Ludington recently finally approved the class action settlement in *Pratt*. *See Pratt v. KSE Sportsman Media, Inc.*, 2024 WL 113755 (E.D. Mich. Jan. 10, 2024) (approving $9.5 million class settlement paying each class member approximately $420).

a viable theory of recovery for the Settlement Class. *Id.*

Simply put: Class Counsel's tireless efforts over the past decade identifying, developing, and pursuing this groundbreaking PPPA litigation paved the way for this and other important cases that otherwise never would have been pursued – and led to the recovery of meaningful relief for hundreds of thousands of consumers in Michigan. *See, supra*, *e.g.*, *Loftus*, *Kain*, *Strano*, *Moeller*.[6]

## III.    KEY TERMS OF THE SETTLEMENT

**Class Definition.** The "Settlement Class" is:

> [A]ll Michigan direct purchasers of *Mayo Clinic Health Letter* whose information was included on the following lists obtained in discovery: MAYO_Schreiber_000533 and MAYO_Schreiber_000519. As revealed in discovery, these lists (MAYO_Schreiber_000533 and MAYO_Schreiber_000519) identify 62,746 Michigan direct purchasers of *Mayo Clinic Health Letter* whose Michigan Subscriber Information was transmitted to third parties between June 16, 2015 and July 30, 2016.[7]

---

[6]      *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809 (E.D. Mich.); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807 (E.D. Mich.); *Strano v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987 (E.D. Mich.); *Moeller v. The Week Publications, Inc.*, No. 1:22-cv-10666 (E.D. Mich.).

[7]      Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

Settlement Agreement ¶ 1.31; Preliminary Approval Order (ECF No. 68) at PageID.3771 ¶ 9. These individuals are reflected on the Class List, attached to the Settlement Agreement as Exhibit A.[8]

**Monetary Relief.** Defendant has agreed to establish a $52,500,000 non-reversionary Settlement Fund from which all Settlement Class Members who do not exclude themselves shall automatically receive a *pro rata* cash payment – expected to be between approximately $540.00 to $700.00[9] after payment of notice, administrative expenses, attorneys' fees, and service awards to the proposed Class Representatives. Settlement Agreement ¶¶ 1.33, 2.1. No portion of the Settlement Fund will revert back to Defendant. *Id.* ¶ 2.1(h).

**Release.** In exchange for providing the monetary relief set forth above, Defendant (and all "Released Parties" — defined in Settlement Agreement ¶ 1.27)

---

[8]    Plaintiffs can submit the full list of Class members for an in-camera review upon request of the Court.

[9]    $540.00 is the minimum amount that each Settlement Class Member will receive from the Settlement. However, given the passage of time between the pre-July 31, 2016 time period and the present, and the medical-focused subject matter of Defendant's publication at issue, Plaintiffs believe that many Settlement Class Members are deceased, and that the many such deceased Class Members may not have estates to which settlement payments may be made. Thus, the number of Settlement Class Members between which the net Settlement Fund will ultimately be split is likely to be significantly less than the 62,746 persons who comprise the entire Settlement Class. And Plaintiffs' counsel estimate that this reduction in the number of Settlement Class Members capable of receiving payment from the Settlement will result in each such Settlement Class Member receiving approximately $540 to $700 each.

will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' subscription information. *See* Settlement Agreement ¶¶ 1.26-1.28 for full release language.

**Notice and Administration Expenses.** The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Settlement Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. Settlement Agreement ¶¶ 1.29, 1.30, 1.33. The Parties selected the now Court-appointed Kroll Settlement Administration LLC to serve as Settlement Administrator. *See* Hedin Decl. ¶ 34 & n.2; Miller Decl. ¶ 21 & n.2.

**Service Awards and Fee Award.** On April 29, 2024, Plaintiffs their Unopposed Motion for Service Awards and Fee Award (ECF No. 72) ("Fee Petition") seeking service awards of $3,500 to Mr. Schreiber, $2,500 to Mr. Colony, $2,500 to Ms. Vredeveld, and $1,000 to Mr. Surnow (PageID.3848). The Fee Petition also seeks a Fee Award for attorneys' fees, costs, and expenses in the amount of 35% of the Settlement Fund (PageID.3848); *see also* Agreement ¶ 8.1. The Fee Petition requesting Service Awards for the Class Representatives and a Fee Award for attorneys' fees, costs, and expenses for Class Counsel is unopposed, and no objections have been filed in response to it to date. Payment of attorneys' fees, costs, and expenses is due within 10 days after entry of Final Judgment. Agreement ¶ 8.2.

## IV.    THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the class members is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated … to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation omitted)

Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re*

*Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members). The notice plan here readily meets these standards, as it provided direct notice via a postcard or email to 93.02% of the Settlement Class. *See* **Exhibit D**, Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Fenwick Decl."), ¶ 12.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 68, PageID.3773-74. That plan has now been fully carried out by professional settlement administrator, Kroll Settlement Administration LLC. Pursuant to the Settlement Agreement, Defendant provided Kroll with a list of 62,746 available names, addresses, and emails of Settlement Class Members. Fenwick Decl. ¶ 5. Kroll successfully delivered the Court-Approved notice via postcard or e-mail (for Settlement Class Members with a valid e-mail address whose Postcard Notice was returned to Kroll as undeliverable and for whom Kroll could not locate an alternative mailing address) to 58,364 Settlement Class Members. *Id.* ¶¶ 10-12. Accordingly,

the Court-approved Notice successfully reached 93.02% of the Settlement Class. Agreement ¶¶ 4.1(b); Fenwick Decl. ¶ 12.[10]

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are met.

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

---

[10]    These Notices also directed Settlement Class Members to the Settlement Website where they were able to submit change of address forms, access important court filings including the Fee Petition, and review deadlines and answers to frequently asked questions. Agreement ¶ 4.1(c); Fenwick Decl. at Ex. C. Kroll also notified the appropriate state and federal officials as per CAFA. Fenwick Decl. ¶ 4.

adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has overlaid its own factors. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A.  The Rule 23(e)(2) Factors Weigh in Favor of Final Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

<u>First</u>, Plaintiffs and Class Counsel have adequately represented the class, securing the best-ever PPPA per-class member recovery. *See* Introduction, *supra*.

<u>Second</u>, the Settlement was negotiated at arm's-length following multiple mediations with former Chief Judge Rosen, as mediator, after exchanging information sufficient to assess the strengths and weaknesses. *See supra*.

<u>Third</u>, the relief is not just adequate, it is exceptional. The Settlement Agreement provides for the automatic payment of approximately $540.00 to $700.00 to every Settlement Class Member, without the need for any of them to submit a claim form. Settlement Agreement ¶¶ 2.1-2.2. The percentage of the Settlement Fund that Class Counsel requested as attorneys' fees (inclusive of costs) is consistent with the percentage of the funds sought by plaintiff's counsel and approved by courts in numerous prior PPPA settlements. *See supra*.

<u>Fourth</u>, the proposed Settlement treats Settlement Class Members equitably to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Settlement Agreement ¶ 2.1.

<u>Finally</u>, all terms affecting the Settlement Class are contained within the Settlement Agreement.

## B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval

All seven *UAW* factors favor approval or, at least, are neutral.

### 1.  There Is No Risk of Fraud or Collusion.

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements." *Leonhardt*, 581 F. Supp. 2d at 838. Here, a non-collusive settlement was reached through arm's-length negotiations via multiple mediations with a neutral. *See Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2,

2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

## 2. Litigation Through Trial Would Be Complex, Costly, and Long.

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

Here, the Parties engaged in dispositive motion practice, discovery, and held multiple private mediations. Hedin Decl. ¶¶ 20-22, 33, 30-31; Miller Decl. ¶¶ 9, 10, 17-18, 20, 27. Absent a settlement, further discovery, dispositive motions, and depositions would follow. Defendant indicated that it would continue to assert numerous defenses to both class certification and the merits, including that the PPPA does not prohibit its conduct as alleged and that the claim is time-barred. Hedin Decl. ¶ 26; Miller Decl. ¶ 36. Class Counsel is also aware that Defendant would prepare a competent defense at trial and would appeal any adverse result at trial (and any order certifying a class). *Id.* Absent the Settlement, this would be lengthy and very expensive litigation.

Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated a Settlement Agreement that provides immediate, certain, and

*meaningful* relief to all Settlement Class Members, in a streamlined manner. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

### 3. Discovery Allowed Plaintiffs to Intelligently Negotiate the Settlement.

The third factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Prior to filing, Class Counsel conducted a wide-ranging investigation into Defendant's practices, described *supra*, and obtained several key documents evidencing those practices. *See* Hedin Decl. ¶¶ 15-17, 24; Miller Decl. ¶¶ 5-6, 27; *see also* Hedin Decl. ¶ 19 (Class Counsel's further investigation prior to filing First Amended Complaint uncovering additional supporting documents). Moreover, during formal discovery and in settlement negotiations, Plaintiffs obtained wide-ranging discovery from Defendant and third parties on issues pertaining to class certification and the merits of the case. Hedin Decl. ¶¶ 25, 27, 33, 36; Miller Decl. ¶¶ 9, 22, 27.

This information and material enabled Plaintiffs and their counsel to properly assess the strengths and weaknesses of the claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. Hedin Decl. ¶ 33; Miller Decl. ¶ 20. Class Counsel's experience in similar cases, and the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts here and the viability of their respective cases to make an intelligent analysis of the proposed

settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded.

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Although Plaintiffs believe their case is strong, it is not without risk. Defendant has made clear that, absent a settlement, it will defend the case vigorously and move for summary judgment and contest class certification. *See* § VI.B.2, *supra*. The Court has not yet certified the Settlement Class for litigation purposes and the Parties anticipate that such a determination would only be reached after lengthy briefing. Defendant would likely argue that individual questions preclude class certification, that a class action is not a superior method, and that a trial would not be manageable. And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify.

Moreover, even if Plaintiffs survived all of those obstacles, they faced significant risk in recovering a classwide judgment. Indeed, this case presents a unique risk on statute of limitations questions, because its timeliness depends on the applicability of the Michigan Supreme Court's orders tolling the statute of limitations during the early days of the COVID-19 pandemic. TAC ¶ 1 n.2; *see also* Hedin Decl. ¶ 40; Miller Decl. ¶ 23. And while this Court has held that the Michigan Supreme Court's COVID tolling orders are applicable to a PPPA case, *see*

*Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at \*3-4 (W.D. Mich. July 7, 2023), the constitutionality of those orders is currently being addressed by the Michigan Supreme Court. *See Armijo v. Bronson Methodist Hospital*, 991 N.W.2d 593 (Mich. 2023) (setting briefing schedule and directing the scheduling of oral argument). An adverse decision could have deprived the Settlement Class of any recovery whatsoever.

The risks of losing on the merits, of losing class certification, of maintaining certification through trial, and of collecting on any classwide judgment, were all significant hurdles to obtaining classwide relief in this case. Because the Settlement eliminates these risks of non-recovery, this factor also favors final approval.

### 5. Proposed Class Counsel and Class Representative Support the Settlement.

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at \*26. Here, both Class Counsel and the Class Representatives support the Settlement. *See* Hedin Decl. ¶ 43; Miller Decl. ¶¶ 37, 41. This *UAW* factor, therefore, favors final approval.

### 6. The Reaction of Absent Class Members.

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class action settlements, a small number of opt-outs and

objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, in a class of 62,746 persons, **zero** class members objected and only fourteen class members opted out. Fenwick Decl. ¶ 14. The lack of objections and minimal number of exclusions is even more impressive when considering that 93.02% of the Settlement Class received direct notice of the Settlement. Fenwick Decl. ¶ 12. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.").

### 7.  The Settlement Serves the Public Interest.

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530. The Settlement here accomplishes both.

25

First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen*, 417 U.S. at 161. Here, if the Settlement does not receive the Court's final approval, the Parties anticipate a complex and lengthy litigation that would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation"). Thus, by avoiding complex class action litigation that can consume a court's time and resources and would lead to uncertainty and delayed payment for Settlement Class Members, the Settlement furthers the public interest.

Second, the Settlement also serves the public interest by furthering the objectives of the Michigan legislature in enacting the PPPA. The PPPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. Class action litigation in this area is a means of safeguarding the privacy of readers under the PPPA, especially because some consumers may be unaware of the data sharing practices alleged here

26

(i.e., that Defendant disclosed its customers' personal reading information without their consent). This factor therefore supports final approval.

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion, the Court should grant final approval.

## VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

This Court's preliminary approval order conditionally certified a class, for settlement purposes, of: "[a]ll Michigan direct purchasers of *Mayo Clinic Health Letter* whose information was included on the following lists obtained in discovery: MAYO_Schreiber_000533 and MAYO_Schreiber_000519. As revealed in discovery, these lists (MAYO_Schreiber_000533 and MAYO_Schreiber_000519) identify 62,746 Michigan direct purchasers of *Mayo Clinic Health Letter* whose Michigan Subscriber Information was transmitted to third parties between June 16, 2015 and July 30, 2016." ECF No. 68, PageID.3771. This Court's preliminary approval order also appointed E. Powell Miller of The Miller Law Firm, P.C., Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., and Frank S. Hedin and Arun G. Ravindran of Hedin LLP as Class Counsel, and Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow as Class Representatives, both for settlement purposes only. *Id*. at PageID.3770-71.

In doing the above, this Court set forth an extensive analysis of the propriety

of certification under Rule 23(a) and Rule 23(b)(3) (ECF No. 68), following the argument presented in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 66). This Court was correct in conditionally certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of this Court's certification. This Court should now grant final certification of the Settlement Class.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the Unopposed Motion for Final Approval of Class Action Settlement and enter Final Judgment in the form submitted herewith (attached as **Exhibit E**).

Dated: May 15, 2024                    Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiffs' Attorneys

E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinllp.com
Arun G. Ravindran
aravindran@hedinllp.com
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Class Counsel*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs Jeffrey Schreiber, Richard Colony, Kay Vredeveld, and Michael Surnow, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii), used 6,738 words in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated:  May 15, 2024                    Respectfully Submitted,

                                        /s/ *E. Powell Miller*
                                        E. Powell Miller (P39487)
                                        **THE MILLER LAW FIRM, P.C.**
                                        950 W. University Drive, Suite 300
                                        Rochester, MI 48307
                                        Tel: 248-841-2200
                                        epm@millerlawpc.com

                                        *Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on May 15, 2024, I served

the above and foregoing ***Plaintiffs' Unopposed Motion for Final Approval of Class***

***Action Settlement*** on all counsel of record by filing it electronically with the Clerk

of the Court using the CM/ECF filing system.

*/s/ E. Powell Miller*
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200
